# EXHIBIT E



**Loudoun County Public Schools**
**Department of Human Resources and Talent Development**
**Title IX Office**
**21000 Education Court**
**Ashburn, VA 20148**

**Wednesday, September 10, 2025**

**Delivered VIA Email**



Dear S.W.:

On March 27, 2025, the Title IX office for Loudoun County Public Schools ("LCPS") received a formal complaint filed on behalf of ▓▓▓▓▓▓ (the "Complainant") by one of Complainant's parents. This complaint alleged that, throughout the 2024-2025 school year, S.W. ▓▓▓ and J.S. ▓▓▓ (collectively, the "Respondents") engaged in conduct that constituted Sexual Harassment (Hostile Environment). Specifically, Respondents were alleged to have, in the male locker room, "constantly" referred to Complainant, who is a transgender male, by terms such as "girl-boy" and "it." Respondents were also alleged to have, on March 21, 2025, "threatened" Complainant by "getting in [Complainant's] face and saying, 'If you ever come in here again, we're gonna beat your ass.'" Cumulatively, Respondents' conduct was alleged to have violated Title IX of the Education Amendments Act of 1972 ("Title IX") and LCPS Regulation 8035-REG: Title IX: Sex-Based Discrimination, Sexual Harassment (the "Policy"). At the time the complaint was filed, Complainant and Respondents (collectively, the "Parties") were all 10th-grade students at Stone Bridge High School, which is part of the LCPS system.

A Notice of Investigation was sent to the Parties on March 28, 2025. Three Respondents were included in the Notice of Investigation: the two Respondents who have filed this appeal and a third student K.C. ("Respondent 3"), for whom the charges were later dismissed. The Notice of Investigation appointed Dr. Danyelle Reese, Deputy Title IX Coordinator for LCPS, as the Investigator. As part of her investigation, Dr. Reese interviewed 5 staff members and over 15 student witnesses. Dr. Reese also contacted more than 20 additional student witnesses who declined to participate in the investigation. Dr. Reese's final Confidential Investigative Report was submitted on July 21, 2025.

In the intervening time, the Title IX office appointed a panel of three decision-makers—Kimberly A. Pacelli, Saundra K. Schuster, and Joseph Vincent (collectively, the "Decision-Makers")—who would ultimately decide whether the available evidence supported finding Respondents responsible for the alleged conduct. On July 21, 2025, Respondents, through their joint attorney-

1

advisor, objected to the appointment of the Decision-Makers due to alleged bias. Those objections mirror several of the claims Respondents raise in this appeal. The Title IX Coordinator found that the evidence provided by Respondents "does not establish actual bias or a conflict of interest sufficient to warrant removal under the governing regulations." The Title IX Coordinator therefore denied Respondents' request to have new decision-makers appointed.

On August 15, 2025, the Decision-Makers released their Notice of Determination. This notice found that the available evidence supported a finding, by a preponderance, that Respondents engaged in conduct toward Complainant that constituted Sexual Harassment (Hostile Environment) in violation of the Policy.

On August 19, 2025, Respondents, through their attorney-advisor, timely filed an "Appeal of Title IX Decision Maker's Determination of Responsibility" (the "Request for Appeal"). The Policy provides that appeals from a decision-maker's determination are limited to three grounds, one of which Respondents argue applies here: "bias or conflict of interest from the Title IX Coordinator, Title IX investigator, or Title IX Decision-maker."[1] LCPS notified Complainant of the Request for Appeal, and Complainant elected not to provide a response to the appeal. The determination that follows addresses the arguments raised in Respondents' Request for Appeal.

I emphasize that my role as Appellate Decision-Maker is much narrower than that of the original Decision-Makers. I do not rehear the case or re-weigh evidence. Although parties often disagree with a decision-maker's findings or reasoning, such disagreements are not cognizable grounds for appeal. My role is limited to reviewing the case file and determining whether it is more likely than not that one of the permitted grounds for appeal applies to this matter.

I have carefully reviewed Respondents' Request for Appeal, the Decision-Makers' determination, the Confidential Investigative Report, and other materials in the file. In light of my review, I am upholding the determination of the Decision-Makers and dismissing Respondents' appeal. I do not do so lightly. I acknowledge that the Title IX process is not an easy one. These matters frequently involve sensitive interactions, difficult situations, and conflicting points of view. The process often has a significant impact on the parties, their families, the witnesses, and the many others who participated. Arriving at this point in the process has undoubtedly been challenging for all involved.

**<u>Summary of Findings</u>**

Respondents' Request for Appeal presents two arguments, both premised on claims of bias. Respondents first allege that the Decision-Makers were influenced by bias against Respondents' political and religious beliefs. Second, Respondents allege that the Title IX Coordinator exhibited similar bias. My findings with respect to each claim are detailed below.

---

[1] The Policy and the "Appeal Request Form" contain slightly different language for the permitted bases of appeal. On the Appeal Request Form, the ground for appeal invoked by Respondents is listed as "The Title IX Coordinator, Investigator(s), or Decision-maker(s) had a conflict of interest or bias for or against Complainants or Respondents generally or the specific Complainant or Respondent that affected the outcome of the matter." The Policy lists the ground for appeal as "bias or conflict of interest from the Title IX Coordinator, Title IX investigator, or Title IX Decision-maker." My analysis is structured around the language of the Policy.

1. <u>Alleged Bias of the Decision-Makers</u>

The Policy permits an appeal if there was "bias or conflict of interest" from the decision-maker. Respondents' first argument on appeal is that all three Decision-Makers in this case are biased against conservative, Christian students. Respondents rely on two pieces of evidence when making this claim. For Decision-Makers Saundra K. Schuster and Joseph Vincent, Respondents cite information gained from the LinkedIn profiles of these two Decision-Makers. For Decision-Maker Kimberly A. Pacelli, Respondents rely on information presented about Ms. Pacelli's political donations. None of the information provided, however, is sufficient to find that the Decision-Makers were biased.

*Alleged Bias of Decision-Makers Saundra K. Schuster and Joseph Vincent*

To support the claim that Ms. Schuster and Mr. Vincent were biased, Respondents provide screenshots of these two Decision-Makers' LinkedIn profiles. Both profiles include preferred pronouns next to the Decision-Maker's name. Respondents describe this practice as "hyper-politicized" and "designed to virtual signal adherence to a particular set of beliefs about a highly controversial topic—namely, gender identity ideology." Respondents thus allege that Ms. Schuster and Mr. Vincent, by including preferred pronouns in their profiles, have made "overtly clear" their views on "the very issue that is at stake in this adjudicatory matter." The evidence provided by Respondents, however, is insufficient to support this claim.

The Decision-Makers' listing of preferred pronouns on their professional LinkedIn profiles, without substantially more, does not indicate the presence of bias. A person's use of such pronouns could be driven by any number of factors, which may or may not even reflect their personal beliefs. For many organizations, listing pronouns has become commonplace.

Respondents present the use of preferred pronouns as an inference into the profile owner's political views generally and their views on gender specifically. Respondents do not provide support for this conclusion. Accepting Respondents' argument also requires concluding that each of the Decision-Maker's political views would prevent that person from serving as an impartial adjudicator. Put another way, Respondents' argument is that a person who has agreed to accept the responsibility of serving as an impartial decision-maker in their professional capacity could not have satisfied that responsibility—all because their (assumed) personal beliefs about one purportedly political issue would get in the way. At best, Respondents' allegation in the first instance about the Decision-Makers' personal political beliefs is speculative and without support. And furthermore, there is no support for the conclusion that any purported beliefs would have interfered with the Decision-Makers' ability to remain impartial.

The Department of Education has provided helpful guidance on this issue as well. When the Department's Office of Civil Rights responded to comments on the then-proposed (and now promulgated) Title IX regulations, it wrote:

> Whether bias exists requires examination of the particular facts of a situation and the Department encourages recipients to apply an objective (whether a reasonable

3

> person would believe bias exists), common sense approach to evaluating whether a particular person serving in a Title IX role is biased, exercising caution not to apply generalizations that might unreasonably conclude that bias exists (for example, assuming that all self-professed feminists, or self-described survivors, are biased against men, or that a male is incapable of being sensitive to women, or that prior work as a victim advocate, or as a defense attorney, renders the person biased for or against complainants or respondents)

85 *Fed. Reg.* 30252 (May 19, 2020). Put simply, claims of bias are evaluated on a fact-specific basis; generalizations are not dispositive.

Here, a fact-specific inquiry suggests that Ms. Schuster and Mr. Vincent did not exhibit bias. Respondents' allegations against Ms. Schuster and Mr. Vincent are based entirely on the provided LinkedIn screenshots. Respondents cite no details from the written determination itself or the case file to support their claim. In other words, Respondents have not identified a single specific instance when political views impacted Ms. Schuster's and Mr. Vincent's performance as decision-makers; the case file strongly suggests otherwise. The appeal could be denied for this reason alone. But I also recognize the importance of this process in the broader educational context and want to ensure that Respondents understand that their appeal has been carefully and full considered.

Beyond the absence of evidence to support the appeal arguments, there is significant information demonstrating the opposite conclusion. Ms. Schuster and Mr. Vincent (along with Ms. Pacelli) produced a written determination that carefully explained the reasoning behind their findings. This determination extensively and accurately detailed how the available material evidence was weighed—for example, by identifying trends in the witness accounts and comparing that information with the video evidence. The Decision-Makers then explained how the available evidence applied to each required element of a sexual harassment claim. The thorough reasoning provided in the determination does not suggest that political or religious views played any role in the Decision-Makers' analysis. Neither the religious views nor the political leanings of Respondents were even mentioned. In short, the case file provides extensive evidence suggesting the absence of bias. Respondents' unsupported conclusion impugning the integrity of the Decision-Makers is not persuasive.

As such, the available information is insufficient to support a finding that Ms. Schuster or Mr. Vincent were more likely than not (or at all) influenced by bias or a conflict of interest.

*Alleged Bias of Decision-Maker Kimberly A. Pacelli*

Respondents also allege that Decision-Maker Kimberly A. Pacelli exhibited bias. To support this claim, Respondents point to Ms. Pacelli's political donations. Respondents provided screenshots from the Federal Election Commission's website that appear to show a $25 donation from Ms. Pacelli to Kamala Harris's presidential campaign in September 2024. Respondents also provided screenshots that appear to show three undated donations of unknown amounts made by Ms. Pacelli to an organization called "ACTBLUE." According to Respondents, these donations "demonstrate

4

a clear bias against the position and worldview of [Respondents] on the central issues of this Title IX investigation." The evidence Respondents provide is insufficient to support this claim.

First, generalized political donations do not reveal a person's view on specific issues. Someone who donates to a particular candidate's political campaign does not necessarily agree with that candidate on all issues. Indeed, party opponents are often quick to point out the inconsistency of a political party's positions across all issues. More importantly though, as explained in the previous section, simply having political views—even views that are contrary to a party's in this process—does not preclude impartiality. The inquiry is instead fact specific. And here, the case file does not support a finding that Ms. Pacelli acted with bias. Ms. Pacelli jointly authored the written determination described above that thoroughly analyzed the case without referencing Respondents' religious or political beliefs. In raising claims against Ms. Pacelli, Respondents again rely entirely on one piece of external evidence. Respondents do not point to any details from the case file that suggest Ms. Pacelli has a political view on transgender or cisgender students, and that her alleged political views impacted, much less impaired, her performance as a decision-maker. Thus, as before, the case file provides extensive evidence suggesting the absence of bias that is not outweighed by Respondents' arguments to the contrary.

Accepting the appeal's logic would require the assumption that every characteristic is a potentially defining and preclusive characteristic (including but not limited to political beliefs and donations, gender, and religion as argued here, among many others) that would vitiate a decision-maker's (or Title IX Coordinator's) ability to be objective and perform their assigned duties. Were this stereotyping the standard, it would impractical if not impossible for LCPS to staff a grievance process for any formal complaint. This is surely not what the Title IX Regulations or the Policy provide.

Finally, in all the claims discussed above, Respondents argue that politics pre-determined the Decision-Makers' views on the central issue of this matter. This claim, however, mischaracterizes the matter's central issue. The Decision-Makers were tasked with deciding whether Respondents' actions violated LCPS policy. Their job was not to decide what LCPS policy *should* be. The Decision-Makers' political views do not change the language of LCPS Policy 8040, which states that students are able to use the locker room "that corresponds to their consistently asserted gender identity" so that they "can comfortably and fully engage in their school programs and activities." The Decision-Makers were obligated to use LCPS's policies when deciding whether Respondents' actions constituted "conduct on the basis of sex" that was "unwelcome" and "determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to LCPS's education program or activity." The available information suggests that the Decision-Makers satisfied their duty of applying the language of current LCPS Policy—which they were required to do, regardless of any particular belief or the entirety of all of their political beliefs.

As such, the available information is insufficient to support a finding that Ms. Pacelli was more likely than not (or at all) influenced by bias or a conflict of interest.

5

In light of the above, the available information does not support a finding that the Decision-Makers had a conflict of interest or bias.[2]

2. <u>Alleged Bias of the Title IX Coordinator</u>

The Policy also permits an appeal if there was "bias or conflict of interest" from the Title IX Coordinator. Respondents in this case argue that the LCPS Title IX Coordinator, Christopher Moy, was biased against them based on religion.[3] To support this claim, Respondents cite the dismissal of the charges against Respondent 3. This evidence is insufficient, however, to demonstrate that the Title IX Coordinator was biased.

Respondents are correct when they note that Complainant's *allegations* against Respondent 3 were largely identical to the allegations made against the Respondents here—except that Respondent 3 was alleged to have made an additional comment calling Complainant "a disappointment to humanity." The letter sent indicates that the charges against Respondent 3 were dismissed by the Title IX Coordinator on May 25, 2025, because "the conduct alleged would not constitute sexual harassment as defined in 34 CFR § 106.30 of the Title IX Regulations, even if proved." Respondents argue that their cases "should have been dismissed for the same reason [Respondent 3]'s was dismissed. Not doing so was a blatant act of religious discrimination and a denial of Equal Protection."[4]

Again, Respondents' conclusions are without sufficient evidentiary support to demonstrate their merit. A plain review of the determination reveals that the Title IX Coordinator's decision was made after weighing the available evidence. For example, "the record shows that [Respondent 3] did not make loud comments about the Complainant in the boys' PE locker room." The determination also notes that, regarding "the alleged threat, 'If you ever come in here again, we're gonna beat your ass,'" the record indicates that "the Complainant confirmed that [Respondent 3] was not the Respondent who made that alleged comment." And for the final allegation—that Respondent 3 called Complainant "a disappointment to humanity"—the determination states that Respondent 3 "denied making the comment" and that the "comment was not corroborated by any other student." On the face of the letter, it is manifestly clear that the Title IX Coordinator's conclusions came after evaluating the available evidence. And it is equally apparent that the lack of corroborating evidence related to Respondent 3 was distinguishable from the volume of evidence against the appealing Respondents, which included corroboration of the alleged misconduct by their own statements and the statements of others.

It is not at all unreasonable for Respondents to want to understand why Respondent 3's case was resolved differently. But the mere existence of that difference, by itself, is not evidence of bias. Respondents' own submission on appeal identifies the problem with their argument. They write that their religious affiliation represents "one obvious distinction" between them and Respondent

---

[2] By extension, the available information does not suggest that the Title IX Coordinator was biased in allowing the Decision-Makers to be appointed.
[3] For the purposes of the appeal, I have assumed, for argument's sake, that the assertions about Respondent 3's religion are accurate and that Respondent 3's religion was known to the Title IX Coordinator.
[4] The Decision-Makers played no role in the dismissal of the charges against Respondent 3.

3. But religion is indeed just *one* way to distinguish the three respondents—and that is even presuming a personal characteristic of the respondents impacted the outcomes. There are many reasons why the matters may have turned out differently that have nothing to do with the Respondents themselves or, more specifically, their religion, race, national origin, ability or disability, or any other characteristic or distinction. As with the unsupported allegations of bias by the Decision-Makers, Respondents' argument picks one characteristic about them or of another person and deems it to be the cause of an outcome they believe to be unjustified. But just because Respondents argue that religion was the reason for the different outcomes does not make it so. They must come forward with information to demonstrate it. Without evidence that religion indeed impacted the different outcomes, Respondents have not and cannot support their claim of bias. Arguments that seek to define a party, decision-maker, or a decision by or based upon a single perceived personal characteristic should be advanced with care, must supported by pertinent information, and are to be examined with equal scrutiny. I have fully considered the appeal and conclude that the available information does not support a finding that the Title IX Coordinator was more likely than not (or at all) influenced by bias.

**Determination on Appeal**

As stated, based on my review, I have determined that there is insufficient evidence to support a finding that conflict of interest or bias from the Decision-Makers or the Title IX Coordinator affected the outcome of this matter. Consequently, Respondents' appeal of the Decision-Makers' determination is dismissed. This decision is final and not subject to further appeal.

Sincerely,

Stephen Vaughan

*Appellate Decision-Maker*