

# Model Policies on Ensuring Privacy, Dignity, and Respect for All Students and Parents in Virginia's Public Schools

# MODEL POLICIES ON ENSURING PRIVACY, DIGNITY, AND RESPECT FOR ALL STUDENTS AND PARENTS IN VIRGINIA'S PUBLIC SCHOOLS

## Table of Contents

I. Purpose ........................................................................................................................ 1

II. Guiding Principles ...................................................................................................... 2

III. Statutory Authority and Requirements ...................................................................... 4

IV. Terminology ............................................................................................................... 4

V. Development .............................................................................................................. 5

VI. Additional Related Laws ........................................................................................... 6

VII. Resources ................................................................................................................... 9

Appendix 1 ......................................................................................................................... 12

   Sample Policy ................................................................................................................. 12
      I. Purpose ............................................................................................................. 12
      II. Definitions ........................................................................................................ 12
      III. Model Policies ................................................................................................. 12

# I. PURPOSE

Every day throughout the Commonwealth of Virginia, educators and school leaders work to ensure that all students have an opportunity to receive a high-quality education. As a part of that work, educators strive to meet the individual needs of all students entrusted to their care, and teachers work to create educational environments where all students thrive. The Virginia Department of Education (the "**Department**") recognizes that each child is a unique individual with distinctive abilities and characteristics that should be valued and respected. *All* students have the right to attend school in an environment free from discrimination, harassment, or bullying.

The Department supports efforts to protect and encourage respect for all students. Thus, we have a collective responsibility to address topics such as the treatment of transgender students with necessary compassion and respect for all students.

The Department also fully acknowledges the rights of parents to exercise their fundamental rights protected by the Fourteenth Amendment of the U.S. Constitution to direct the care, upbringing, and education of their children. The *Code of Virginia* reaffirms the rights of parents to determine how their children will be raised and educated. Empowering parents is not only a fundamental right, but it is also essential to improving outcomes for all children in Virginia.

The Department is mindful of constitutional protections that prohibit governmental entities from requiring individuals to adhere to or adopt a particular ideological belief. The First Amendment of the U.S. Constitution guarantees religious freedom and prohibits the government from compelling speech in some contexts.

The Department embarked on a thorough review of the Model Policies for the Treatment of Transgender Students in Virginia's Public Schools (the "**2021 Model Policies**"), adopted on March 4, 2021. The 2021 Model Policies promoted a specific viewpoint aimed at achieving cultural and social transformation in schools. The 2021 Model Policies also disregarded the rights of parents and ignored other legal and constitutional principles that significantly impact how schools educate students, including transgender students. With the publication of these 2023 Model Policies on Ensuring Privacy, Dignity, and Respect for All Students and Parents in Virginia's Public Schools (the "**2023 Model Policies**"), the Department hereby withdraws the 2021 Model Policies, which shall have no further force and effect.

The Department issues the 2023 Model Policies to provide clear, accurate, and useful guidance to Virginia school boards that align with statutory provisions (*Code of Virginia* § 22.1-23.3 or the "**Act**"). The 2023 Model Policies also consider the more than 70,000 comments submitted to the Department during the public comment period for the 2023 Model Policies, as well as the over 9,000 comments submitted to the Department during the public comment period for the 2021

Model Policies. The 2023 Model Policies are a guidance document issued pursuant to §§ 2.2-4002.1 and 2.2-4101 of the *Code of Virginia* which provide information on interpreting and implementing the Act.

## II. GUIDING PRINCIPLES

A. **Schools shall respect all students**: All children in Virginia have a right to learn, free from unlawful discrimination and harassment. School division policies shall therefore implement the requirements of the Act in a manner that ensures no student is discriminated against or harassed on the basis of his or her sex. To this end, local school division policies shall implement the requirements of the Act in a manner that demonstrates respect for each student.

B. **Parents have the right to make decisions with respect to their children**: Policies shall be drafted to safeguard parents' rights with respect to their child, and to facilitate the exercise of those rights. Policies shall reflect the following commitments:

   1. **Schools shall respect parents' values and beliefs**: Parents have the right to instill and nurture values and beliefs for their own children and make decisions concerning their children's education and upbringing in accordance with their customs, faith, and family culture.

      The Fourteenth Amendment to the United States Constitution recognizes that parents have a fundamental right to direct the upbringing and education of their children, as the U.S. Supreme Court has repeatedly explained. *See Troxel v. Granville*, 530 U.S. 57, 65 (2000) (this right is "perhaps the oldest of the fundamental liberty interests recognized by this Court."); *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972) ("This primary role of the parents in the upbringing of their children is now established beyond debate."); *Pierce v. Society of Sisters*, 268 U.S. 510, 534–35 (1925) (the state may not interfere with "the liberty of parents and guardians to direct the upbringing and education of children under their control.").

      Virginia law recognizes this fundamental right as well. *Code of Virginia* § 1-240.1 provides that a "parent has a fundamental right to make decisions concerning the upbringing, education, and care of the parent's child." *See Williams v. Williams*, 256 Va. 19, 21 (1998) ("[T]he right of parents in raising their child is a fundamental right protected by the Fourteenth Amendment."); *Hawkins v. Grese*, 68 Va. App. 462, 471 (2018) ("[T]his Court has held that 'the parents' right to autonomy in child rearing is a fundamental right protected by the Fourteenth Amendment of the United States Constitution and that state interference with that right must be justified by a compelling state interest.'" (quoting *Williams v. Williams*, 24 Va. App. 778, 780 (1997))).

2. **Schools shall defer to parents to make the best decisions with respect to their children**: Parents are in the best position to work with their children and, where appropriate, their children's health care providers to determine (a) what names, nicknames, and/or pronouns, if any, shall be used for their child by teachers and school staff while their child is at school, (b) whether their child engages in any counseling or social transition at school that encourages a gender that differs from their child's sex, or (c) whether their child expresses a gender that differs with their child's sex while at school.

3. **Schools shall keep parents informed about their children's well-being**: To ensure parents are able to make the best decisions with respect to their child, school personnel shall keep parents fully informed about all matters that may be reasonably expected to be important to a parent, including, and without limitation, matters related to their child's health, and social and psychological development. Parents' rights are affirmed by the United States Supreme Court that characterized a parent's right to raise his or her child as "perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). This requirement is, of course, subject to laws that prohibit disclosure of information to parents in certain circumstances including, for example, *Code of Virginia* § [22.1-272.1(B)](#) (prohibiting parental contact where student is at imminent risk of suicide related to parental abuse or neglect).

C. **Schools shall serve the needs of all students**: The Department is committed to working with school divisions to ensure a positive, safe, and nurturing learning environment for all students. Each student's individual needs should be taken into consideration by his or her school, and divisions should develop policies that encourage schools to account for these individual needs, with due sensitivity to the needs of other students and the practical requirements of the teaching and learning environment. Schools should attempt to accommodate students with distinctive needs, including transgender students. A team of appropriate school staff and other caregivers should collaborate with the student's parents or with an eligible student to identify and implement such reasonable accommodations or modifications (if any), considering the resources and staff available in the school and school divisions, as well as the rights and needs of other students and of school staff. Single-user bathrooms and facilities should be made available in accessible areas and provided with appropriate signage, indicating accessibility for all students. To ensure that all students have access to a learning environment in which they feel comfortable and safe, where state or federal law requires schools to permit transgender students to share otherwise sex-segregated facilities (such as bathrooms or locker rooms) with students of the opposite sex, parents should be given the right to opt their child out of using such facilities, and the child should be given access to alternative facilities that promote the child's privacy and safety. Eligible students should be given the same right to opt out.

D.  **Schools shall partner with parents**: Parents are a child's primary and most important educator. In partnership with parents, public schools, teachers, counselors, and administrators also play an essential role in the education of children in Virginia.

## III. STATUTORY AUTHORITY AND REQUIREMENTS

Section 22.1-23.3 of the *Code of Virginia* (the "**Act**") provides:

> "§ 22.1-23.3. Treatment of transgender students; policies.
>
> A.  The Department of Education shall develop and make available to each school board model policies concerning the treatment of transgender students in public elementary and secondary schools that address common issues regarding transgender students in accordance with evidence-based best practices and include information, guidance, procedures, and standards relating to:
>
>    1. Compliance with applicable nondiscrimination laws;
>    2. Maintenance of a safe and supportive learning environment free from discrimination and harassment for all students;
>    3. Prevention of and response to bullying and harassment;
>    4. Maintenance of student records;
>    5. Identification of students;
>    6. Protection of student privacy and the confidentiality of sensitive information;
>    7. Enforcement of sex-based dress codes; and
>    8. Student participation in sex-specific school activities, events, and use of school facilities. Activities and events do not include athletics.
>
> B.  Each school board shall adopt policies that are consistent with but may be more comprehensive, than the model policies developed by the Virginia Department of Education (VDOE) pursuant to subsection A."

## IV. TERMINOLOGY

A.  The phrase **"2023 Model Policies"** means the entirety of this document.

B.  For the purposes of implementing the Act, terms and phrases used herein are defined as follows:

1. As set forth in *Code of Virginia* § [22.1-1](), the term "**parent**" or "**parents**" shall mean "any parent, guardian, legal custodian, or other person having control or charge of a child."

2. The word "**sex**" means biological sex.

3. The phrase "**transgender student**" shall mean a public school student whose parent has stated in writing that the student's gender differs from the student's sex, or an eligible student who states in writing that his or her gender differs from his or her sex.

4. An "**eligible student**" is a student or former student who is 18 years of age or older or a student under the age of 18 who is emancipated.

## V. DEVELOPMENT

A. As required under the Act, the Department developed and issued the guidance that took effect on March 4, 2021. The Department hereby withdraws the 2021 Model Policies, which have no further force and effect, and hereby provides these 2023 Model Policies, which take effect on July 19, 2023.

B. These 2023 Model Policies reflect the Department's confidence in parents to prudently exercise their fundamental right under the Fourteenth Amendment and Virginia law to direct the upbringing, education, and control of their children. This primary role of parents is well established.

C. These 2023 Model Policies adhere to the First Amendment. The First Amendment forbids government actors to require individuals to adhere to or adopt any particular ideological beliefs. Practices such as compelling others to use preferred pronouns is premised on the ideological belief that gender is a matter of personal choice or subjective experience, not sex. Many Virginians reject this belief. Additionally, the First Amendment guarantees religious freedom and prohibits compelling others to affirm ideas that may be contrary to their personal religious beliefs.

D. These 2023 Model Policies seek to provide clear and useful guidance to Virginia School Boards under the Act's requirements.

E. These 2023 Model Policies are the result of consultation with educational leaders within the Department and stakeholders throughout the Commonwealth, including the over 70,000 comments submitted on the initial draft of the 2023 Model Policies, taking into account the over 9,000 comments received during the public comment period for the draft 2021 Model Policies, and, most importantly, parents of children in our public schools. They

are in accord with evidence-based best practices drawing from scholarly evidence and empirical research.

F.     To comply with the express requirements of the Act:

     1.     Local school boards must adopt policies that are, at a minimum, consistent with these 2023 Model Policies;

     2.     Local school boards may adopt policies that are more comprehensive than these 2023 Model Policies so long as they are still consistent with the 2023 Model Policies; and

     3.     Local school board policies shall comply with all applicable Virginia and federal laws.

## VI.    ADDITIONAL RELATED LAWS

A.     The following federal and state laws, as well as case law, serve as additional evidence base for this document.

     1.     *First Amendment of the United States Constitution*: Forbids government actors from requiring individuals, including children in public schools, to adhere to or adopt particular ideological beliefs.

     2.     *Fourteenth Amendment of the United States Constitution*: Guarantees persons within the jurisdiction of any U.S. state equal protection of the laws, including protecting students and other individuals from invidious discrimination. The Fourteenth Amendment also protects the rights of parents to direct the upbringing of their children. The U.S. Supreme Court has characterized a parent's right to raise his or her child as "perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville,* 530 U.S. 57, 65 (2000). Schools may not abrogate the rights of parents.

     3.     *Title VII of the Civil Rights Act of 1964* ("**Title VII**"), 42 U.S.C. § 2000e *et seq*.: Prohibits employment discrimination on the basis of race, color, religion, sex and national origin.

     4.     *Title IX of the Education Amendments of 1972* ("**Title IX**"), 20 U.S.C. §§ 1681–1688: Forbids discrimination on the basis of sex by educational institutions receiving federal funds. Title IX permits the separation of students by sex for

assignment to sleeping quarters, 20 U.S.C. § 1686, and its implementing regulations similarly provide for sex-separated toilet, locker room, and shower facilities, 34 C.F.R § 106.33. The *Protection of Pupil Rights Amendment* ("**PPRA**"), 20 U.S.C § 1232H, prohibits the use of certain surveys, including surveys on "sex behaviors and attitudes," without parental consent. The PPRA also provides for the right of a parent of a student to inspect, upon the request of the parent, any instructional material used as part of the educational curriculum for the student.

5. *Title II of the Americans with Disabilities Act* ("**ADA**"), 42 U.S.C. §§ 12131 *et seq*., and *Section 504 of the Rehabilitation Act*, 29 U.S.C. § 794: Forbids discrimination on the basis of disability in the provision of educational services, and requires public schools to provide reasonable modifications of school policies to accommodate students' disabilities.

6. *Family Educational Rights and Privacy Act* ("**FERPA**"), 20 U.S.C. § 1232g: Prohibits the improper disclosure of personally identifiable information from student records. Information related to sex or gender may constitute personally identifiable information. Significantly, FERPA grants rights to parents to inspect and access their child's educational records, to have records amended, and to have some control over the disclosure of personally identifiable information. Schools may not abrogate parental rights granted by FERPA.

7. *Article I, Section 11 of the Virginia Constitution*: States in part "[t]hat no person shall be deprived of his life, liberty, or property without due process of law; that the General Assembly shall not pass any law impairing the obligation of contracts; and that the right to be free from any governmental discrimination upon the basis of religious conviction, race, color, sex, or national origin shall not be abridged, except that the mere separation of the sexes shall not be considered discrimination."

8. *Code of Virginia* § 1-240.1: Provides that a "parent has a fundamental right to make decisions concerning the upbringing, education, and care of the parent's child." Schools may not abrogate the rights of parents.

9. *Code of Virginia* § 2.2-3900, *et seq.*: Prohibits "unlawful discrimination in educational institutions on the basis of race, color, religion, national origin, sex, pregnancy, childbirth, or related medical conditions, age, marital status, sexual orientation, gender identity, military status, or disability."

10. *Code of Virginia* § 22.1-207.2: Provides that parents have the right to review the complete family life curriculum, including all supplemental materials used in any family life education program.

11. *Code of Virginia* § 22.1-201.2:1: Provides that parents shall have the right to review any audio-visual materials that contain graphic sexual or violent content used in anti-bullying or suicide prevention programs.

12. *Code of Virginia* § 22.1-291.4: Provides that bullying and abusive work environments are prohibited.

13. *Code of Virginia* § 8.01-217: Requires that a minor with both parents living can only change his or her name upon the application of a parent, and the other parent must receive notice and have an opportunity to be heard if he or she objects to the change.

14. *Code of Virginia* § 22.1-279.6: Provides that the Board of Education shall establish guidelines and model policies for codes of student conduct and school board regulations. School boards are expected to include bullying as prohibited behavior in student codes of conduct.

15. *Code of Virginia* § 22.1-208.01: Requires each school board to establish character education within its existing programs or as a separate program, and that such program shall also address the inappropriateness of bullying and bullying prevention, as defined in § 22.1-276.01.

16. *Code of Virginia* § 22.1-287.1: Directs how student data in directory information as defined by FERPA may and may not be shared.

17. *The Virginia Board of Education's regulations governing instructional materials*, 8 VAC 20-720-160: Provide that local school board policies and criteria for the selection of instructional materials shall include "[t]he rights of parents to inspect, upon request, any instructional materials used as part of the educational curriculum for students, and the procedure for granting a request by a parent for such access, in accordance with the Protection of Pupil Rights Amendment, 20 U.S.C § 1232H, and its implementing regulation, 34 C.F.R Part 9 which provides that any survey, analysis, or evaluation shall be available for inspection by parents."

18. *Code of Virginia* § 22.1-272.1: Requires "[a]ny person licensed as administrative or instructional personnel by the Board of Education and employed by a local school board who, in the scope of his employment, has reason to believe, as a result of direct communication from a student, that such student is at imminent risk of suicide, shall, as soon as practicable, contact at least one of such student's parents to ask whether such parent is aware of the student's mental state and whether the parent wishes to obtain or has already obtained counseling for such student." However, "[i]f the student has indicated that the reason for being at imminent risk of suicide relates to parental abuse or neglect, this contact shall not be made with the parent. Instead, the person shall, as soon as practicable, notify the local department of social services of the county or city wherein the child resides or wherein the abuse or neglect is believed to have occurred or the state Department of Social Services' toll-free child abuse and neglect hotline, as required by § 63.2-1509."

The summaries of law provided in this section do not constitute legal interpretation or advice.

## VII. RESOURCES

The U.S. Constitution, the Virginia Constitution, federal law, state law, and relevant case law place beyond debate the rights of parents to be informed about their children and the limitations of government to usurp parents' rightful role. Additionally, decades of research conducted worldwide has consistently concluded that parental involvement in a child's education and development is paramount. A 2021 study[1] noted that, "[t]he effect of parental involvement on the well-being of children and adolescents is so important that it can attenuate the influence of social class and material resources (Cho, 2018)." Additionally, authors for the *Global Family Research Project* (known as the *Harvard Family Research Project* until 2017) concluded in 2007,[2] that "[e]ducators in middle and high schools, as well as practitioners in programs that serve young adults, must acknowledge that families play a critical role in helping youth succeed in high school and beyond."

There are numerous resources available to help parents and teachers understand the important role and responsibility of parents in their child's education and well-being.

- **School Connectedness: Strategies for Increasing Protective Factors Among Youth, Centers for Disease Control and Prevention, U.S. Department of Health and Human Services.**

---

[1] Salgado M, González L, Yáñez A. Parental Involvement and Life Satisfaction in Early Adolescence. Front Psychol. 2021 Feb 17;12:628720. doi: 10.3389/fpsyg.2021.628720. PMID: 33679549; PMCID: PMC7925622.
[2] https://archive.globalfrp.org/family-involvement/publications-resources/family-involvement-in-middle-and-high-school-students-education

- School connectedness—the belief held by students that adults and peers in the school care about their learning as well as about them as individuals—is an important protective factor. This webpage contains fact sheets and training materials on strategies for increasing school connectedness for school administrators, teachers, and families. (https://www.cdc.gov/healthyyouth/protective/school_connectedness.htm)

- **Parent Engagement in Schools, Centers for Disease Control and Prevention, U.S. Department of Health and Human Services.**
    - Parent engagement in schools is defined as parents and school staff working together to support and improve the learning, development, and health of children and adolescents. Parent engagement in schools is a shared responsibility in which schools and other community agencies and organizations are committed to reaching out to engage parents in meaningful ways, and parents are committed to actively supporting their children's and adolescents' learning and development. Engaging parents in their children's school life is a promising protective factor. This webpage includes strategies and fact sheets for increasing parent engagement in schools. (https://www.cdc.gov/healthyyouth/protective/parent_engagement.htm)

- **Creating and Sustaining a Positive and Communal School Climate: Contemporary Research, Present Obstacles, and Future Directions, National Institute of Justice, Office of Justice Programs, U.S. Department of Justice.**
    - This report advances four recommendations for creating and sustaining a positive and communal school environment. (https://www.ncjrs.gov/pdffiles1/nij/250209.pdf)

- **KnowBullying app, Substance Abuse and Mental Health Services Administration, U.S. Department of Health and Human Services**.
    - This SAMHSA-developed app helps parents and educators start conversations with children; provides tips and strategies for children, youth, and teens; and teaches the warning signs of bullying or being bullied. (https://store.samhsa.gov/product/knowbullying)

- **Prevent Bullying, Centers for Disease Control and Prevention, U.S. Department of Health and Human Services.**
    - This website provides general information on bullying, such as definitions of bullying and tools to prevent bullying in schools. (http://www.cdc.gov/features/prevent-bullying/)

- **Stopbullying.gov, U.S. Department of Health and Human Services.**
    - This website contains resources for youth, parents, schools, and others to better understand bullying and cyberbullying, including the warning signs, those particularly at risk, and prevention tips. (https://www.stopbullying.gov/)
    - Take Action Today: How Families and Students Can Take the Lead in Creating Safer School Environments (https://www.stopbullying.gov/blog/2014/09/16/take-action-today-how-families-and-students-can-take-leadcreating-safer-school.html)

- **Bullying Prevention for Parents, Centers for Disease Control and Prevention, U.S. Department of Health and Human Services.**
    - This podcast discusses the crucial role parents play in bullying prevention. (https://tools.cdc.gov/medialibrary/ index.aspx#/media/id/304116)

- **MedlinePlus, U.S. Department of Health and Human Services.**
    - This website provides resources that inform users of the warning signs of bullying, prevention and risk factors, and how to help children deal with bullying. (https://medlineplus.gov/bullying.html)

- **Impact of Cyberbullying: Addressing the Needs of Children and Youth, Substance Abuse and Mental Health Services Administration, U.S. Department of Health and Human Services**.
    - This YouTube video reviews ways to help parents, caregivers, and educators better understand the issue of cyberbullying and the mental health needs of both the young person being bullied, and the young person initiating the bullying. (https://www.youtube.com/watch?v=IUjxqh0ZC0I&t=3s)

## Publication Information

Questions or inquiries about this document should be directed to:

Virginia Department of Education
Office of Policy: Department of Policy and Communications
Office of the Superintendent: Executive Director, Parental Engagement
P.O. Box 2120
Richmond, Virginia 23218-2120
policy@doe.virginia.gov

# APPENDIX 1

**Sample Policy**

The following Sample Policy is provided for consideration or use by local school boards as they develop and implement their policies in compliance with the Act. Each school board shall adopt policies that are consistent with, but may be more comprehensive than, this Sample Policy.

  I.  *Purpose*

   To establish clear and useful guidance to local school boards to fulfill the requirements of § 22.1-23.3 of the *Code of Virginia* (the "Act") in accordance with the plain meaning of its provisions.

 II.  *Definitions*

   Terms and phrases used herein are defined as follows:

   A. As set forth in *Code of Virginia* § 22.1-1, the term "**parent**" or "**parents**" shall mean "any parent, guardian, legal custodian, or other person having control or charge of a child."

   B. The word "**sex**" means biological sex.

   C. The phrase "**transgender student**" shall mean a public school student whose parent has stated in writing that the student's gender differs from the student's sex, or an eligible student who states in writing that his or her gender differs from his or her sex.

   D. An "**eligible student**" is a student or former student who is 18 years of age or older or a student under the age of 18 who is emancipated. *See Code of Virginia* § 16.1-331 *et seq.*

III.  *Model Policies*

   The [School Division] complies with all applicable federal and state nondiscrimination laws, including Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 and the Virginia Human Rights Act, *Code of Virginia* § 2.2-3900.

   A. Maintenance of a safe and supportive learning environment free from discrimination and harassment for all students:

1. The [School Division] prohibits all discrimination and will comply with all applicable nondiscrimination laws.

2. School personnel shall be trained annually on health and mental wellness support to, and safety of, all students.

3. Each school shall make reasonably available, with available resources, guidance and counseling services to all students as provided in 8 VAC 20-620-10 and pursuant to parental notification requirements therein, including that, "[n]o student shall be required to participate in any counseling program to which the student's parents object." Except with regard to eligible students, parents must be informed and given an opportunity to object before counseling services pertaining to gender are given.

4. At the request of parents, the [School Division] should designate an administrator or counselor to speak, together with the student's parents (except in the case of eligible students), with any student regarding questions pertaining to gender. This provision should not apply with regard to eligible students.

B. Prevention of and response to bullying and harassment:

1. [School Division] provides bullying prevention education in accordance with *Code of Virginia* § 22.1-208.01.

2. Any incident or complaint of discrimination, harassment, or bullying shall be given prompt attention, including investigating the incident and taking appropriate corrective and/or disciplinary action, by the school administrator.

3. Bullying of any student by another student, for any reason, cannot be tolerated in our schools. Intervening immediately to stop bullying on the spot can help ensure a safer school environment for all students.

4. The [School Division's Designated Contact] shall be available to hear concerns from students and parents when complaints are not resolved at the school level.

5. The [School District] shall inform parents of any bullying incidents that involve their child within 24 hours of learning of the allegation of bullying, per the requirements of *Code of Virginia* § 22.1-279.6(D).

C.  Maintenance of student records:

1. [School Division] is required to maintain an official record for each student that includes the student's legal name and sex. [School Division] may be required to use or report a student's legal name or sex in some situations.

2. [School Division] shall change the legal name or sex in a student or former student's official record only if a parent or eligible student submits a legal document, such as a birth certificate, state- or federal-issued identification, passport, or court order substantiating the student or former student's change of legal name or sex.

D.  Identification of students:

1. Every effort should be made to ensure that a transgender student wishing to change his or her means of address is treated with respect, compassion, and dignity in the classroom and school environment.

2. [School Division] personnel shall refer to each student using only (i) the name that appears in the student's official record, or (ii) if the student prefers, using any nickname commonly associated with the name that appears in the student's official record. Nothing in this policy shall prevent [School Division] personnel from using a different name for a student when it is necessary for the student's academic instruction, such as using a name more common in a foreign country while in a foreign-language course.

3. [School Division] personnel shall refer to each student using only the pronouns appropriate to the sex appearing in the student's official record - that is, male pronouns for a student whose sex is male, and female pronouns for a student whose sex is female.

4. Notwithstanding the provisions of paragraphs (2) and (3) of this section, [School Division] personnel shall refer to a student by a name other than one in the student's official record, or by pronouns other than those appropriate to the sex appearing in the student's official record, only if an eligible student or a student's parent has instructed [School Division] in writing that such other name or other pronouns be used.

5. Any written instruction from a parent or eligible student under paragraph (4) of this section shall be memorialized in the student's official record and subject to the same retention, disclosure, and confidentiality requirements as the official

record itself. The legal name and sex of a student shall not be changed, even upon the written instruction of a parent or eligible student, except as specified in section (C)(2).

6. Notwithstanding the provisions of paragraph (4) of this section, [School Division] shall not compel [School Division] personnel or other students to address or refer to students in any manner that would violate their constitutionally protected rights.

7. No policy, guidance, training, or other written material issued by the [School Division] may encourage or instruct teachers to conceal material information about a student from the student's parent, including information related to gender. Provided, however, that [School Division] will comply with all laws that prohibit disclosure of information to parents, including but not limited to *Code of Virginia* § 22.1-272.1(B) (prohibiting parental contact where student is at imminent risk of suicide related to parental abuse or neglect).

E. Protection of student privacy and the confidentiality of sensitive information:

1. [School Division] shall comply with the limitations on access to student records provided in *Code of Virginia* §§ 22.1-287 through 289.01;

2. [School Division] shall adhere to legal standards of confidentiality relating to sensitive student information and personally identifiable data covered by the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g; and

3. [School Division] shall disclose sensitive student information (including any survey or evaluation related to the student's gender) only (i) to the student, the student's parents (except in the case of eligible students), and school personnel with a legitimate educational interest, or (ii) when required by law.

F. Enforcement of sex-based dress codes:

1. Students may dress in any manner consistent with maintaining a respectful, distraction-free environment which supports a focus on learning for all students.

2. Students are not required to dress in a gender-neutral manner. However, any dress or grooming code shall provide the same set of rules and standards regardless of gender, as required by the *Code of Virginia* § 22.1-279.6.

G. Student participation in sex-specific school activities and events and use of school facilities.

   1. For any school program, event, or activity (including extracurricular activities) that are separated by sex, the appropriate participation of students shall be determined by sex rather than gender or gender identity. [School Division] shall provide reasonable modifications to this policy only to the extent required by law.

   2. Where state or federal law requires schools to permit transgender students to share otherwise sex-segregated facilities (such as bathrooms or locker rooms) with students of the opposite sex, parents should be given the right to opt their child out of using such facilities, and the child should be given access to alternative facilities that promote the child's privacy and safety. Eligible students should also be given the right to opt out of using such facilities and be given access to alternative facilities.

   3. Overnight travel accommodations, locker rooms, and other intimate spaces used for school-related activities and events shall be based on sex. [School Division] shall provide reasonable modifications to this policy only to the extent required by law.

   4. Students shall use bathrooms that correspond to his or her sex, except to the extent that federal law otherwise requires. See *Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020).

   5. Single-user bathrooms and facilities should be made available in accessible areas and provided with appropriate signage, indicating accessibility for all students.

   6. Students with a diagnosis of gender dysphoria made by a licensed health care provider should consult with their school's ADA coordinator regarding any requested services.

H. Athletics

   For any athletic program or activity that is separated by sex, the appropriate participation of students shall be determined by sex rather than gender or gender identity. [School Division] shall provide reasonable modifications to this policy only to the extent required by law.