**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

S.W., by his parents and next friends SETH
WOLFE and AMANDA WOLFE, *et al.*,

        Plaintiffs,

v.

LOUDOUN COUNTY SCHOOL BOARD,

        Defendant.

Case No. 1:25-cv-1536

---

**BRIEF OF THE COMMONWEALTH OF VIRGINIA**
**AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS**

Jason S. Miyares
   *Attorney General*

Kevin M. Gallagher (VSB #87548)
   *Solicitor General*

Michael Dingman (VSB #95762)
   *Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile
KGallagher@oag.state.va.us

*Counsel for* Amicus Curiae *Commonwealth of*
*Virginia*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

IDENTITY AND INTERESTS OF *AMICUS CURIAE* ................................................... 2

BACKGROUND ................................................................................................................. 2

ARGUMENT ....................................................................................................................... 6

    I.    Plaintiffs are likely to succeed on their religious discrimination claims ............................. 7

    II.    Plaintiffs are likely to succeed on their free speech claims ................................................. 9

        A.    Plaintiffs are likely to succeed on their retaliation claim ................................................9

        B.    Plaintiffs are likely to succeed on their viewpoint discrimination claim ...............11

    III.    The remaining equitable factors also favor granting the motion ..................................... 12

CONCLUSION ................................................................................................................... 13

CERTIFICATE OF SERVICE ........................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams by and through Kasper v. School Bd. of St. Johns Cnty.*,
  57 F.4th 791 (11th Cir. 2022) ................................................................................................1

*Ashaheed v. Currington*,
  7 F.4th 1236 (10th Cir. 2021) ...............................................................................................7

*Beard v. Whitmore Lake Sch. Dist.*,
  402 F.3d 598 (6th Cir. 2005) .................................................................................................3

*Bhattacharya v. Murray*,
  515 F. Supp. 3d 436 (W.D. Va. 2021) .................................................................................10

*Brannum v. Overton Cnty. Sch. Bd.*,
  516 F.3d 489 (6th Cir. 2008) .................................................................................................3

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993).......................................................................................................7, 8, 9

*Colorado Christian Univ. v. Weaver*,
  534 F.3d 1245 (10th Cir. 2008) .............................................................................................7

*Constantine v. Rectors & Visitors of George Mason Univ.*,
  411 F.3d 474 (4th Cir. 2005) ...............................................................................................10

*Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v.
  Amos*,
  483 U.S. 327 (1987)................................................................................................................7

*Doe by & through Doe v. Boyertown Area Sch. Dist.*,
  897 F.3d 518 (3d Cir. 2018)...................................................................................................1

*Doe v. Pennsylvania State Univ.*,
  276 F. Supp. 3d 300 (M.D. Pa. 2017) ..................................................................................13

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
  82 F.4th 664 (9th Cir. 2023) ..................................................................................................9

*Fowler v. Rhode Island*,
  345 U.S. 67 (1953)..................................................................................................................8

*Giovani Carandola, Ltd. v. Bason*,
  303 F.3d 507 (4th Cir. 2002) ...............................................................................................13

*Iancu v. Brunetti*,
    588 U.S. 388 (2019) ...................................................................................................11

*Janus v. American Fed'n of State, Cnty., and Mun. Emps., Council 31*,
    585 U.S. 878 (2018) ...................................................................................................10

*Larson v. Valente*,
    456 U.S. 228 (1982) .....................................................................................................7

*Leaders of a Beautiful Struggle v. Baltimore Police Dep't*,
    2 F.4th 330 (4th Cir. 2021) ...................................................................................12, 13

*Martin v. Duffy*,
    977 F.3d 294 (4th Cir. 2020) ....................................................................................10

*Missouri Dep't of Corr. v. Finney*,
    601 U.S. —, 2024 WL 674657 (Feb. 20, 2024) ..........................................................7

*Moore v. Kempthorne*,
    464 F. Supp. 2d 519 (E.D. Va. 2006) .........................................................................6

*Morrison v. Garraghty*,
    239 F.3d 648 (4th Cir. 2001) ......................................................................................8

*National Rifle Ass'n of Am. v. Vullo*,
    602 U.S. 175 (2024) ...................................................................................................12

*Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*,
    354 F.3d 249 (4th Cir. 2003) ....................................................................................12

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992) ...................................................................................................12

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) .....................................................................................................9

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
    515 U.S. 819 (1995) .............................................................................................11, 12

*Sarsour v. Trump*,
    245 F. Supp. 3d 719 (E.D. Va. 2017) .........................................................................6

*Scott v. Commonwealth*,
    247 Va. 379 (1994) ...................................................................................................12

*Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*,
    309 F.3d 144 (3d Cir. 2002)........................................................................................8

*Tennessee v. Cardona*,
    737 F. Supp. 3d 510 (E.D. Ky. 2024) ....................................................................12

*Turner Broad. Sys., Inc. v. FCC*,
    512 U.S. 622 (1994) ..............................................................................................11

*Veronia Sch. Dist. 47J v. Acton*,
    515 U.S. 646 (1995) ................................................................................................1

*Vlaming v. West Point Sch. Bd.*,
    302 Va. 504 (2023) ............................................................................................2, 10

*West Va. State Bd. of Educ. v. Barnette*,
    319 U.S. 624 (1943) ..............................................................................................11

*Winter v. National Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ....................................................................................................7

**Other Authorities**

U.S. Dep't of Educ., *U.S. Department of Education Concludes Loudoun County*
    *Public Schools Violated Title IX and Retaliated Against Male Students Amid*
    *Sexual Harassment Claims*, https://tinyurl.com/jtdb6rzb ........................................6

Virginia Office of the Attorney General, *Attorney General Miyares Announces*
    *Results of Title IX Investigation into LCPS*, https://tinyurl.com/5aw3ed7x ...........4

Virginia Office of the Attorney General, *Governor Youngkin and Attorney*
    *General Miyares Announce Investigation into Loudoun County Public*
    *Schools*, https://tinyurl.com/3uv22hys ....................................................................4

## INTRODUCTION

It is "not difficult" to understand why schools have long provided sex-separated locker rooms: students have a legitimate interest in "shielding their bodies from the opposite sex." *Adams by and through Kasper v. School Bd. of St. Johns Cnty.*, 57 F.4th 791, 804 (11th Cir. 2022) (en banc). "Public school locker rooms" are "not notable for the privacy they afford." *Veronia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 657 (1995). And school "locker rooms and restrooms are spaces where it is not only common to encounter others in various stages of undress, it is expected." *Doe by & through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 531 (3d Cir. 2018).

Thus, it is natural for high school boys to experience and express discomfort when a female student repeatedly enters the boys' locker room—especially when that female student is *filming* the encounter. But rather than investigate the female student, Loudoun County Public Schools investigated *the boys*. And, undeterred by both the Virginia Office of Attorney General and U.S. Department of Education raising significant concerns about its investigation, the School Board suspended the boys for sexual harassment and sex discrimination, removing them from school for two weeks (despite one of the students not even attending a Loudoun school anymore).

This Court has correctly found this case to be "troubling." Order at 2 (ECF No. 10). It has already entered a temporary restraining order because the "loss of 10 days of in-person school early in the school year could have serious negative effects on" the students. *Ibid.* It has already found irreparable harm and determined that "the public interest is best served by ensuring high school students remain in school and receive adequate process before being suspended." *Ibid.* This Court should now enter a preliminary injunction. Plaintiffs are likely to succeed on their religious discrimination and free speech claims, as the School Board's actions constitute textbook violations of the First and Fourteenth Amendments. And the very factors that caused this Court to quickly enter a temporary restraining order apply with full force in this preliminary injunction proceeding.

1

## IDENTITY AND INTERESTS OF *AMICUS CURIAE*

*Amicus curiae* the Commonwealth of Virginia has a strong interest in protecting the free speech rights of its citizens, including its schoolchildren. It also has an interest in preventing localities from using investigations and suspensions to chill and stifle speech by citizens, including on controversial topics. The Attorney General investigated the Loudoun County School Board's conduct in this exact matter, reaching the conclusion that the Board had potentially violated the First Amendment rights of the two students at issue. The Attorney General referred the matter to the U.S. Department of Education, which concluded that the Board had retaliated against the students. The Attorney General has an interest in ensuring that these students are not unlawfully punished in defiance of the conclusions of both Commonwealth and federal government investigations.

Further, the Commonwealth has a strong interest in ensuring that localities do not discipline students in a manner that discriminates on the basis of religion. Indeed, "constitutional guarantees of religious freedom have no deeper roots than in Virginia, where they originated, and nowhere have they been more scrupulously observed." *Vlaming v. West Point Sch. Bd.*, 302 Va. 504, 528 (2023) (quotation omitted). Virginia therefore "jealously guard[s] and preserve[s] the questions of religious belief and religious worship as questions between each individual man and his Maker." *Ibid*. (quotation omitted). The Commonwealth accordingly finds disturbing the Board's unequal treatment of students who differ not in their conduct, but in their faith.

The Commonwealth therefore files this brief *amicus curiae* in support of Plaintiffs, to argue that Plaintiffs' motion should be granted.

## BACKGROUND

S.W. and J.S. (collectively, Plaintiffs) were students at Stone Bridge High School in Loudoun County, Virginia during the 2024–25 school year. Compl. ¶¶ 21–22 (ECF No. 1). Locker

rooms at Stone Bridge—like locker rooms at every school in the Loudoun County Public School System—are segregated by sex. *Id.* ¶ 37; see also *Brannum v. Overton Cnty. Sch. Bd.*, 516 F.3d 489, 494, 496 (6th Cir. 2008) (students retain "a significant privacy interest in their unclothed bodies" in intimate spaces like locker rooms, including "the right to shield one's body from exposure to viewing by the opposite sex") (quoting *Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 604 (6th Cir. 2005)). Throughout the course of the 2024–25 school year, however, Plaintiffs realized that a female student would routinely share the locker room with them. See Compl. ¶ 46. This female student had "the physical characteristics of a young woman" but "preferred male pronouns." *Id.* ¶¶ 48, 85.

In the fall semester of 2024, several boys—including Plaintiffs—raised concerns with school officials about the female student using the boys' locker room. Compl. ¶¶ 51, 56. School administrators sternly directed the boys not to ask such questions or to make any comments about the fact that a female student was in their locker room. *Id.* ¶ 57. Plaintiffs followed this directive and kept their discomfort and privacy concerns to themselves for the rest of the semester. *Id.* ¶ 58.

In March 2025, Plaintiffs were once again in the boys' locker room when the female student entered. Compl. ¶¶ 63–64. They began "speaking among themselves and questioning why there was a girl in the boys' locker room." *Id.* ¶ 67. This time, however, the female student was secretly using a cell phone to video record the boys in the locker room. *Id.* ¶ 68. The video records various boys—including Plaintiffs—questioning why a female student was in the locker room. *Ibid.* No male student—including Plaintiffs—spoke to the female student directly or had any physical contact with the female student. *Id.* ¶ 73. In fact, "[n]either Plaintiff has ever spoken to the Female Student." *Id.* ¶ 74. Whenever Plaintiffs expressed distress, discomfort, and disagreement with

having the female student in the boys' locker room, they "asked questions or shared opinions among each other"—no altercations, fights, or verbal confrontations ensued. *Id.* ¶ 75.

The female student submitted the video recording in the boys' locker room to school officials and lodged a complaint against Plaintiffs and a Muslim student. Compl. ¶ 81. School officials informed Plaintiffs and the Muslim student that they had initiated formal investigations against them for sexual harassment and sex-based discrimination. *Id.* ¶¶ 82, 89. In the meantime, J.S. unenrolled from Loudoun County Public Schools, but the Board refused to end its investigation into him. *Id.* ¶¶ 90, 92.

In May 2025, Governor Glenn Youngkin and Attorney General Jason Miyares announced an investigation into Loudoun County Public Schools over its treatment of Plaintiffs and the Muslim student. See Virginia Office of the Attorney General, *Governor Youngkin and Attorney General Miyares Announce Investigation into Loudoun County Public Schools*, https://tinyurl.com/3uv22hys. The next month, Attorney General Miyares announced "significant concerns regarding potential violations of Title IX, unlawful retaliation, and viewpoint discrimination" with the Board's handling of the investigation into Plaintiffs and the Muslim student and referred the matter to the U.S. Department of Education Office for Civil Rights and the U.S. Department of Justice Civil Rights Division for further investigation and appropriate action. See Virginia Office of the Attorney General, *Attorney General Miyares Announces Results of Title IX Investigation into LCPS*, https://tinyurl.com/5aw3ed7x.

In the meantime, the Board informed the Muslim student that it was investigating him not only for the same conduct as Plaintiffs, but also regarding additional accusations to which Plaintiffs were not subject. Compl. ¶¶ 83–85. After an outcry from the local Muslim community, the Board dismissed its complaint against the Muslim student, believing that it "must" do so because the

alleged conduct did not violate the applicable regulations, "*even if proved*." *Id*. ¶¶ 86–87 (emphasis added). Nevertheless, the Board continued to investigate Plaintiffs, who are Christian, notwithstanding that they were subject to even fewer accusations than the Muslim student. *Id*. ¶¶ 83–85, 88.

Undeterred by the Attorney General's findings and its own admission that identical allegations did not violate Title IX, the Board concluded in August 2025 that both Plaintiffs had conducted impermissible sexual harassment and sex-based discrimination because of their statements in the boys' locker room. Compl. ¶ 95. The Board suspended both Plaintiffs for ten school days (two weeks of class time), with J.S.'s suspension contingent on his return to Loudoun County Public Schools. *Id*. ¶ 100. Plaintiffs pursued an administrative appeal, but the Board affirmed its decision. *Id*. ¶¶ 101–02. Plaintiffs' counsel requested that any suspension be held in abeyance to allow a federal court to consider an emergency motion to enjoin the suspension. See ECF No. 3-2. The Board denied that request and informed Plaintiffs that S.W.'s ten-day suspension would begin *the next day*. See ECF Nos. 3-1, 3-3. The Board's refusal to stay the suspension— indeed, its insistence on imposing the suspension *immediately*—necessitated Plaintiffs' emergency motion for a temporary restraining order. See ECF Nos. 3, 4.

This Court, noting that the allegations in the Complaint were "troubling," granted S.W.'s motion for a temporary restraining order. See Order at 2. The Court explained that "[t]he loss of 10 days of in-person school early in the school year could have serious negative effects on S.W." and thus "the balance of equities tips in S.W.'s favor, given that S.W. is likely to suffer irreparable harm in the absence of a temporary restraining order holding S.W.'s 10-day suspension in abeyance." *Ibid*. This Court also found that "the public interest is best served by ensuring high school students remain in school and receive adequate process before being suspended." *Ibid.* The

Court ordered that the Board immediately place the remainder of the suspension in abeyance, permit S.W. back into school the next day, and "allow him to continue with in-person education until the issues raised in this Complaint are resolved." *Ibid.* Finally, this Court set a hearing to determine whether a preliminary injunction should be entered. *Id.* at 3.

That same day, the U.S. Department of Education concluded that Loudoun County Public Schools violated Title IX and retaliated against Plaintiffs. See U.S. Dep't of Educ., *U.S. Department of Education Concludes Loudoun County Public Schools Violated Title IX and Retaliated Against Male Students Amid Sexual Harassment Claims*, https://tinyurl.com/jtdb6rzb. The Department of Education allowed the Board ten days to, among other things, (1) rescind Plaintiffs' suspensions, (2) issue letters apologizing for Loudoun County's failure to properly investigate Title IX complaints, and (3) notify Plaintiffs and their parents that Loudoun County Public Schools will promptly investigate Plaintiffs' Title IX complaints in a manner that is compliant with the requirements of the statute. *Ibid.* As of this writing, Loudoun County Public Schools have not returned to compliance with Title IX.

## ARGUMENT

"The standard for granting either a TRO or a preliminary injunction is the same." *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) (quotation marks omitted). For Plaintiffs to show that they are entitled to a preliminary injunction, they must establish that "(1) they are likely to succeed on the merits of their case; (2) they are likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of the equities tips in their favor; and (4) an injunction would be in the public interest." *Sarsour v. Trump*, 245 F. Supp. 3d 719, 728 (E.D. Va. 2017)

(citing *Winter v. National Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). Plaintiffs have met each of the four factors.

## I.    Plaintiffs are likely to succeed on their religious discrimination claims

This Court has already found "troubling" Plaintiffs' allegations concerning the Board's "dismissal of the accusations against a Muslim student who seems to have engaged in similar activity to" Plaintiffs. Order at 2. The Commonwealth agrees. It is a bedrock principle of the U.S. Constitution that our government is one "of denominational neutrality," so it cannot treat citizens differently based on their religious beliefs. *Larson v. Valente*, 456 U.S. 228, 246 (1982); *id.* at 244 (explaining that this principle is the Establishment Clause's "clearest command"). Thus, government action "discriminating among religions" is subject to "strict scrutiny." *Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 339 (1987) (emphasis omitted). Because the allegations establish that the Board engaged in discrimination based on religious belief and because that discrimination cannot survive strict scrutiny, Plaintiffs are likely to succeed on their religious discrimination claims.

Religious discrimination claims under the Equal Protection and Free Exercise Clauses "largely overlap." *Ashaheed v. Currington*, 7 F.4th 1236, 1249 n.11 (10th Cir. 2021); see *Missouri Dep't of Corr. v. Finney*, 601 U.S. —, 2024 WL 674657, at *3 n.* (Feb. 20, 2024) (Alito, J., concurring in denial of certiorari). And because "[v]iolations of the Equal Protection and Free Exercise Clauses are generally analyzed in terms of strict scrutiny," *Colorado Christian Univ. v. Weaver*, 534 F.3d 1245, 1266 (10th Cir. 2008), courts analyzing Free Exercise claims often "find guidance in . . . equal protection cases" and *vice versa*, *Church of Lukumi Babalu Aye, Inc. v. City*

*of Hialeah*, 508 U.S. 520, 540 (1993). Indeed, analyzing whether a law is being neutrally applied "requires an equal protection mode of analysis." *Ibid*. (quotation marks omitted).

Here, Plaintiffs allege that they have "been treated differently from others with whom [they are] similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Both Plaintiffs and the Muslim student were subject to complaints about similar conduct arising from the same event. Compl. ¶¶ 83–85. In fact, the Muslim student was later accused of *additional* conduct which Plaintiffs were not, including direct statements towards the female student. *Id*. ¶¶ 84–85. Nevertheless, the Board not only dismissed the accusations against the Muslim student, but also considered itself *required* to do so because the alleged conduct did not violate Title IX, "even if proved." *Id*. ¶ 87. It did not, however, dismiss the accusations against Plaintiffs, who faced lesser allegations. *Id*. ¶ 88.

That unequal treatment is textbook religious discrimination. When a governmental entity selectively enforces a law against one group but not another, that constitutes "differential treatment of two religions" which is repugnant to the Constitution. *Church of Lukumi Babalu Aye*, 508 U.S. at 536. For instance, in *Church of the Lukumi Babalu Aye*, the Supreme Court held unconstitutional a law restricting the killing of animals that the local government drafted to bar Santeria religious practices while exempting "kosher slaughter." *Ibid*. And in *Fowler v. Rhode Island*, the Supreme Court held unconstitutional the selective enforcement of an ordinance to ban meetings in a park by Jehovah's Witnesses but not other religions. 345 U.S. 67, 69 (1953). Courts of Appeals likewise have held unconstitutional the selective enforcement of laws between religions. See, *e.g.*, *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 167 (3d Cir. 2002) (holding that an ordinance which was "neutral and generally applicable on its face" was being applied unconstitutionally

because the local entity routinely "granted exemptions from the ordinance's unyielding language for various secular and religious—though never Orthodox Jewish—purposes").

That the Board dismissed more significant claims against a Muslim student but not lesser claims against the Christian Plaintiffs violates the Constitution. It does not matter if the Board's decisions do not expressly rely on religious grounds. The Constitution prohibits "governmental hostility which is masked, as well as that which is overt." *Church of Lukumi Babalu Aye*, 508 U.S. at 534. And where the differential treatment is as stark as it is here, the Board cannot escape accountability by invoking "simple mistake or inadvertence." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 693 (9th Cir. 2023). Instead, the allegations demonstrate "selective enforcement." *Ibid*. Such enforcement is subject to strict scrutiny, and the Board cannot demonstrate that its selective enforcement was "narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Plaintiffs are therefore likely to succeed on the merits of their religious discrimination claims.

## II. Plaintiffs are likely to succeed on their free speech claims

Among other claims, Plaintiffs bring both a free speech retaliation claim, see Memo. in Supp. of Motion for Prelim. Injunction (Mot.) at 10–13 (ECF No. 30), and a viewpoint discrimination claim, *id.* at 17–18. Plaintiffs are likely to succeed on both.

### A. Plaintiffs are likely to succeed on their retaliation claim

Plaintiffs are likely to succeed on their retaliation claim. "To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the

defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (cleaned up). Plaintiffs have made the requisite showing on each prong.

*First*, Plaintiffs engaged in protected First Amendment activity. As alleged, Plaintiffs "spoke on a matter of significant, public concern" when they "express[ed] distress, discomfort, and disagreement with having the Female Student in the boys' locker room." Compl. ¶ 76. As the Supreme Court of Virginia recently explained, the "concept of 'gender identity' is among many 'controversial subjects' that are rightly perceived as 'sensitive political topics.'" *Vlaming*, 302 Va. at 569 (quoting *Janus v. American Fed'n of State, Cnty., and Mun. Emps., Council 31*, 585 U.S. 878, 913–14 (2018)). "Speech on such matters occupies the highest rung of the hierarchy of First Amendment values and merits special protection." *Ibid.* (cleaned up). Plaintiffs thus plainly engaged in protected First Amendment activity.

*Second*, the School Board took an action that adversely affected Plaintiffs' First Amendment rights when the Board suspended the students. "[A] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely 'deter a person of ordinary firmness' from the exercise of First Amendment rights." *Martin*, 858 F.3d at 249 (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)). "Because a student would be reluctant to express his views if he knew that his school would . . . suspend [him] for doing so," *Bhattacharya v. Murray*, 515 F. Supp. 3d 436, 456–57 (W.D. Va. 2021), Plaintiffs have clearly established an adverse action.

*Third*, there was a clear causal relationship between Plaintiffs' protected activity and the Board's conduct. As the Complaint alleges, the Board concluded that Plaintiffs violated school policy "through impermissible sexual harassment and sex-based discrimination *because of the Plaintiffs' statements made in the Stone Bridge boys' locker room*." Compl. ¶ 95 (emphasis added).

Indeed, the Complaint makes clear that the Board made its determination based on assessments of Plaintiffs' speech alone, as the Board admitted that "most of the statements attributed to Plaintiffs, made in the locker room, 'were made more passively' and 'not [] in a directly confrontational manner." *Id.* ¶ 96; see, *e.g.*, *ibid.* ("LCPS further acknowledged that of the statements attributed to Plaintiffs in the locker room, 'none of [those] statements amounted to a true threat'"). From start to finish, the Board was evaluating Plaintiffs' protected speech and doled out consequences based on that protected speech. Plaintiffs are therefore likely to succeed on the merits of their retaliation claim.

**B.      Plaintiffs are likely to succeed on their viewpoint discrimination claim**

Plaintiffs are also likely to succeed on their viewpoint discrimination claim. "At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641 (1994). Under these principles, the "government may not discriminate against speech based on the ideas or opinions it conveys." *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019). "Viewpoint discrimination is . . . an egregious form of content discrimination" and "presumptively unconstitutional." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829–30 (1995).

Plaintiffs have adequately alleged that the Board suspended them because they would not "affirm[] the claimed 'gender identity' of the Female Student." See Mot. 17. But "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). Put simply, the government "may not regulate [speech] based on hostility—or

11

favoritism—towards the underlying message expressed." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 386 (1992). Here, the Board "only suppresses one side of the debate, strangling the marketplace of ideas in a way that is 'uniquely harmful to a free and democratic society.'" *Tennessee v. Cardona*, 737 F. Supp. 3d 510, 547 (E.D. Ky. 2024) (quoting *National Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024)). Indeed, the Supreme Court has found viewpoint discrimination when the government "imposes special prohibitions on those speakers who express views on the disfavored subjects." *R.A.V.*, 505 U.S. at 391. Thus, the Board's actions discriminate based on viewpoint and are "presumptively unconstitutional." *Rosenberger*, 515 U.S. at 830. Plaintiffs are therefore likely to succeed on the merits.

## III. The remaining equitable factors also favor granting the motion

Plaintiffs will suffer irreparable injury in the absence of injunctive relief. The Board is threatening to suspend Plaintiffs—removing S.W. from his education for two school weeks and imposing the same punishment on J.S. if he ever sets foot in a Loudoun County public school again. But Virginia's children enjoy a fundamental right to an education. See *Scott v. Commonwealth*, 247 Va. 379, 386 (1994). And it is well established that the violation of a fundamental right constitutes irreparable harm. *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) (en banc); see also Order at 2 (concluding that S.W. is "likely to suffer irreparable harm" because the "loss of 10 days of in-person school early in the school year could have serious negative effects on S.W."). Courts thus do not hesitate to grant injunctive relief when schools threaten to suspend students. See, *e.g.*, *Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 253, 261 (4th Cir. 2003) (holding that a district court abused its discretion in denying a preliminary injunction to a student who alleged that a school policy was unconstitutional and where failure to follow that policy could result in a suspension);

*Doe v. Pennsylvania State Univ.*, 276 F. Supp. 3d 300 (M.D. Pa. 2017) (holding that a student demonstrated immediate irreparable harm resulting from university's immediate suspension).

Finally, enjoining the Board's constitutional violations serves the public interest. *See Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) (noting that the government "is in no way harmed by issuance of a preliminary injunction which prevents [it] from enforcing restrictions likely to be found unconstitutional" (quotation marks omitted)). Indeed, "the public interest favors protecting constitutional rights." *Leaders of a Beautiful Struggle*, 2 F.4th at 346. As this Court concluded, "the public interest is best served by ensuring high school students remain in school and receive adequate process before being suspended." Order at 2. Accordingly, Plaintiffs have established that the Board will continue to inflict harm on the rights and interests of Plaintiffs in the absence of immediate injunctive relief. The public interest therefore demands immediate recourse.

## CONCLUSION

For the foregoing reasons, this Court should grant the motion.

Dated: October 9, 2025

Respectfully submitted,

**COMMONWEALTH OF VIRGINIA**

By: ___*/s/ Kevin M. Gallagher*___
            Kevin M. Gallagher (VSB #87548)
            *Solicitor General*

Jason S. Miyares            Michael Dingman (VSB #95762)
*Attorney General*         *Deputy Solicitor General*

            Office of the Attorney General
            202 North Ninth Street
            Richmond, Virginia 23219
            (804) 786-2071 – Telephone
            (804) 786-1991 – Facsimile
            KGallagher@oag.state.va.us

            *Counsel for the Commonwealth of Virginia*

**CERTIFICATE OF SERVICE**

THIS IS TO CERTIFY that on October 9, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties of record.

            ___*/s/ Kevin M. Gallagher*___
            Kevin M. Gallagher (VSB #87548)
            *Counsel for the Commonwealth of Virginia*