**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

S.W., by his parents and next friends,         )
      SETH WOLFE and AMANDA WOLFE, et al.,   )
         Plaintiffs,       )
v.          )   Civil Action No. 1:25-cv-1536
         )
LOUDOUN COUNTY SCHOOL BOARD,    )
       Defendant.      )

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

COMES NOW, Defendant Loudoun County School Board ("LCPS"), by counsel, and in support of its Motion to Dismiss Plaintiffs' Amended Complaint, ECF No. 53, states, as follows:

## I.    INTRODUCTION

The court is well-acquainted with the events giving rise to this litigation due to the court hearing and ruling upon Plaintiffs' motion for a preliminary injunction. When that motion was filed, Plaintiffs appended documents, ECF Nos. 29-1 through 29-5, 29-8, 29-9, as exhibits. Those documents are part of the Title IX investigation which led to Plaintiffs being disciplined for sexually harassing a transgender student ("the Complainant"). Although Plaintiffs have not appended the referenced exhibits to the Amended Complaint, Plaintiffs rely heavily on the Title IX investigation and the purported flawed analysis of the Decision Makers as set forth in the exhibits. While a court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs, *see* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c), the court may also consider documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Goines v. Valley Cmty. Services Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Here, because Plaintiffs rely heavily on LCPS's

1

Title IX investigation into Plaintiffs' behavior toward Complainant, including the content of the referenced exhibits, the court may consider the documents in ruling on LCPS's 12(b)(6) motion without converting it to a summary judgment motion.

What becomes readily apparent is that Plaintiffs mischaracterize the factual background which led to discipline being imposed upon them by LCPS. They assert that LCPS disciplined them – in violation of their rights – for speaking out against LCPS's policy on the Rights of Transgender and Gender-Expansive Students: Policy 8040. ECF No. 39-1. Specifically, Plaintiffs maintain that they spoke out against the provision of School Board Policy 8040, which permits students to use restrooms and locker rooms that correspond to their consistently asserted gender identity. *Id.*, p. 2. Plaintiffs did no such thing – nor do they allege any facts suggesting they did so. Instead, what Plaintiffs did was sexually harass a student who was born female, but identifies as male, and subject this student to a hostile environment in violation of School Board Policy 8035: Title IX, Sex-Based Discrimination, Sexual Harassment. ECF 39-2.

Tired of the relentless harassment, which had been ongoing for much of the school year, Complainant recorded a 2 minute 22 second video/audio on March 21, 2025, ECF No. 53, ¶ 94, capturing Plaintiffs' harassment of him, which was submitted to LCPS in connection with a formal Title IX complaint filed on March 27, 2025, against Plaintiffs and a third Respondent ("Respondent 3"), whom Plaintiffs allege is Muslim. The Title IX report resulted in Title IX investigations being opened. Plaintiffs and Respondent 3 were advised of the investigations and the allegations which Complainant lodged against them on March 28, 2025. S.W. was interviewed as part of the Title IX investigation on April 30, 2025, and J.S. was interviewed on May 13, 2025. Both students denied the majority of the allegations raised by Complainant, despite the evidence

(including the video/audio) shared with them during their interviews.[1] Fearing they might face discipline, Plaintiffs lodged a counter-attack, by filing Title IX claims against Complainant on May 13 and 14, 2025, raising concerns about the audio/video that Complainant recorded to substantiate the harassment to which Plaintiffs were subjecting him. LCPS – on May 16, 2025 – advised Plaintiffs that their complaints did not rise to the level of a Title IX violation, and investigations were not opened.

LCPS continued its Title IX investigations into the complaints made against Plaintiffs. Nineteen (19) student witnesses were interviewed,[2] in addition to the Complainant, Plaintiffs, and Respondent 3. Five (5) staff witnesses were also interviewed. At the conclusion of the investigation, LCPS turned the case file(s) over to a panel of three (3) independent decisionmakers ("Decision Makers") to review. In detailed reports, dated August 15, 2025, the Decision Makers found that Plaintiffs each subjected Complainant to hostile environment sexual harassment and discrimination based on sex, in violation of School Board Policy 8035. *See* ECF Nos. 29-2 and 29-3. Plaintiffs each appealed the Title IX Decision Maker's Determination of Responsibility. *See* ECF Nos. 29-4, p. 3; 29-5, p. 3. Those appeals were dismissed as unfounded. *See* ECF Nos. 29-4 and 29-5. A suspension of ten (10) days was imposed on each Plaintiff. They filed petitions for review. Those petitions were considered and denied. *See* ECF Nos. 29-8 and 29-9.

Not satisfied with the outcome of the Title IX investigations, Plaintiffs filed suit in this court raising claims of alleged deprivation of First Amendment rights protected by the United States and Virginia Constitutions, sex-based discrimination, denial of due process, and interference

---

[1] Respondent 3 also denied the allegations and as will be discussed herein below, there was no evidence that he had engaged in harassment of Complainant, which is why the Title IX complaint against Respondent 3 was dismissed.

[2] 21 student witnesses declined to participate in the investigation.

with Plaintiffs' religious beliefs. In their Amended Complaint, Plaintiffs have added a new count – Count XII - which asserts that LCPS conspired with Loudoun4 All, a political action committee, to violate Plaintiffs' constitutional rights to redress grievances to the government and/or retaliated against them for doing so. Because Plaintiffs have failed to state viable claims, even at the 12(b)(6) stage, LCPS asks that the court grant its Motion to Dismiss the Amended Complaint.

## II.    FACTUAL ASSERTIONS – AS SUPPLEMENTED BY EXHIBITS WHICH THE COURT MAY CONSIDER ON THIS 12(b)(6) MOTION

Complainant filed a Title IX complaint, asserting that Plaintiffs and Respondent 3 had been harassing him throughout the 2024-2025 academic school year. ECF No. 29-3, p. 1.[3] He reported that the harassment was based on gender identity. *Id.* Complainant accused Plaintiffs and Respondent 3 of harassing him for using the boys' locker room and referring to Complainant as "it" and "girl-boy." *Id.* Complainant also asserted that Plaintiffs and Respondent 3 threatened to "beat his ass" if he continued to use the boys' locker room. *Id.*

Plaintiffs were provided Notices of Investigation and Allegation ("NOIA") advising of claims which had been asserted against them which might constitute sexual harassment hostile environment under School Board Policy 8035. *Id.*, p. 4. After LCPS completed its investigation, Plaintiffs were provided with an updated NOIA on May 30, 2025, to notify them that LCPS had determined that the allegations also implicated sex-based discrimination under School Board Policy 8035. *Id.* Plaintiffs had an opportunity to review and respond to the initial report. *Id.*, p. 5. They did so, and the report was thereafter finalized. *Id.* Plaintiffs had an opportunity to review and respond to the final report, which they did. *Id.* On July 21, 2025, after the review and response

---

[3] ECF No. 29-3 pertains to S.W. It is identical in most respects to the report pertaining to J.S., ECF No. 29-2. For ease of reference, LCPS will primarily cite to ECF No. 29-3.

periods concluded, LCPS sent the entire file to a panel of Decision Makers for a final determination. The Decision Makers thoroughly reviewed the evidence to make factual findings and a final determination. *Id*., p. 2.

The Decision Makers determined that the investigation revealed that multiple witnesses, some of whom were friends with Plaintiffs, confirmed that Plaintiffs had made statements reported by Complainant as part of his Title IX complaint, in multiple classes over a period of weeks and months. *Id*., pp. 6, 8-11, 14. The audio/video confirmed that, on March 21, 2025, the following statements were made by Plaintiffs in the boys' locker room, not to a small circle of friends and not to protest School Board Policy 8040, but in an effort to harass and embarrass Complainant:

> "Is there a girl in here?"
> "There's a girl."
> "Why is there a girl?"
> "Why is there a girl?"
> "I'm so uncomfortable there's a girl."
> "That's a female bro get out of here."

*Id*., pp. 6, 14.

Another video, 11 seconds in length, was submitted which reflected J.S. in the hallway yelling "girl boy" at Complainant six (6) times during the short video. *Id*., p. 7.

The Decision Makers expressly found:

> [T]he Respondents' statements both inside and outside the locker room regarding Complainant are repetitive (as reflected on both recordings) as well as over weeks and months (as corroborated by witness testimony).[4] If the Respondents' goal was truly to express their discomfort, either with the Complainant being in the locker room or with LCPS Policy 8040 on the Rights of Transgender and Gender Expansive Students, which permits students to use facilities that correspond to their consistently asserted gender identity, then repeating their questions at a loud volume over weeks and months typically outside the presence of any authority

---

[4] Plaintiffs argue vigorously – throughout the Amended Complaint – with conclusions drawn by the Decision Makers. However, the Decision Makers had available to them the entire Title IX investigation file(s), and it was their role to judge credibility and determine the facts.

figure does not align with that description. If, however, the Complainant's allegations regarding the Respondents' motivation – to harass Complainant based on Complainant's sex – was true, one might expect Respondents to engage in precisely the type of conduct in precisely the type of circumstances (repeatedly, loudly, with an audience, out of view of authority figures) portrayed by the recordings and characterized by Complainant's allegations supported by a large volume of staff and student witness testimony.

*Id.*, p. 15.

The investigation did not find corroborating support for Complainant's report that Plaintiffs and/or Respondent 3 had threatened to "beat his ass." *Id.*, pp. 12-13.

After determining that the comments attributed to Plaintiffs – with the exception of "beat his ass" – were in fact made by Plaintiffs and intended to harass Complainant based on sex, the Decision Makers analyzed the other factors necessary to establish hostile environment sexual harassment under School Board Policy 8035. *Id.*, pp. 15-23; ECF No. 29-2, pp. 15-22. There was ample support to establish that each element was met. *Id.* Thus, the Decision Makers found by a preponderance of evidence that Plaintiffs were responsible for violating the hostile environment sexual harassment provision of School Board Policy 8035. ECF No. 29-2, p. 22; ECF No. 29-3, p. 23.

Decision Makers also evaluated whether Plaintiffs' substantiated harassment of Complainant constituted harassment based on sex in violation of School Board Policy 8035. ECF No. 29-2, pp. 22-24; ECF No. 29-3, pp. 23-25. Again, the Decision Makers found ample support to conclude that each Plaintiff harassed Complainant on the basis of sex in violation of School Board Policy 8035. ECF No. 29-2, pp. 22-24; ECF No. 29-3, pp. 23-24.

After Decision Makers issued the final determinations, Plaintiffs appealed the decisions. ECF No. 29-4 and 29-5. In the appeals, Plaintiffs asserted that the Title IX Coordinator was biased

against Plaintiffs "based on religion." ECF No. 29-4, p. 7.[5] Plaintiffs claimed that dismissal of the

charges against Respondent 3 – but not against them – established religious discrimination. *Id.*

There was – and is – no merit to such a contention.

> As Plaintiffs were advised when they first raised this issue:

> Respondents are correct when they note that Complainant's *allegations* against Respondent 3 were largely identical to the allegations made against the Respondents here—except that Respondent 3 was alleged to have made an additional comment calling Complainant "a disappointment to humanity."

> \*\*\*

> [However, a] plain review of the determination reveals that the Title IX Coordinator's decision was made after weighing the available evidence. For example, "the record shows that [Respondent 3] did not make loud comments about the Complainant in the boys' PE locker room." The determination also notes that, regarding "the alleged threat, 'If you ever come in here again, we're gonna beat your ass,'" the record indicates that "the Complainant confirmed that [Respondent 3] was not the Respondent who made that alleged comment." And for the final allegation—that Respondent 3 called Complainant "a disappointment to humanity"—the determination states that Respondent 3 "denied making the comment" and that the "comment was not corroborated by any other student." On the face of the letter, it is manifestly clear that the Title IX Coordinator's conclusions came after evaluating the available evidence. And it is equally apparent that the lack of corroborating evidence related to Respondent 3 was distinguishable from the volume of evidence against the appealing Respondents, which included corroboration of the alleged misconduct by their own statements and the statements of others.

*Id.* (emphasis in original).

Failing to establish bias and a reversal of the final determinations, Plaintiffs appealed the

ten (10) day suspensions that they each received. ECF Nos. 29-8 and 29-9. On September 15, 2025,

the suspensions were upheld as consistent with School Board Policy 8210. ECF No. 39-3. This

lawsuit followed. The following counts are asserted in the Amended Complaint:

> Count I:    First Amendment: Freedom of Speech (42 U.S.C. § 1983)

---

[5] This section of ECF No. 29-4, which pertains to J.S., is identical to ECF No. 29-5, which pertains to S.W. LCPS therefore cites only to ECF No. 29-4..

Count II:        Virginia Constitution: Freedom of Speech (Va. Const. Art. I, § 12)
Count III:       Fourteenth Amendment: Intentional Religious Discrimination (42 U.S.C. § 1983)
Count IV:        Virginia Constitution: Religious Discrimination (Va. Const. Art. I, § 11)
Count V:         Virginia Religious Freedom Restoration Act (Va. Code § 57-2.02)
Count VI:        Virginia Constitution: Free Exercise of Religion (Va. Const. Art. I, § 16)
Count VII:       Fourteenth Amendment: Sex Discrimination (42 U.S.C. § 1983)
Count VIII:[6]   Virginia Constitution: Sex Discrimination (Va. Const. Art. I, § 11)
Count IX:        Title IX: Sex Discrimination (20 U.S.C. ch. 38 § 1681 et seq.)
Count X:         Fourteenth Amendment: Deprivation of Due Process (42 U.S.C. § 1983)
Count XI:        Count XII: Virginia Constitution: Deprivation of Due Process (Va. Const. Art. I, § 1a)
Count XII:       Conspiracy: (42 U.S.C. § 1983)

LCPS submits that Plaintiffs have not stated viable claims, and the court should grant LCPS's 12(b)(6) motion and dismiss this case with prejudice.

### III.    STANDARD OF REVIEW

The court, "in deciding a Rule 12(b)(6) motion, must take all well-pleaded material allegations of a complaint as admitted and review them in the light most favorable to the plaintiff." *De Sole v. United States*, 947 F.2d 1171 (4th Cir. 1991). However, where a court considers documents appended to the complaint or those relied upon by plaintiff for his claims, it is proper for the court to credit the documents over conflicting allegations in the complaint. *See Goines v. Valley Cmty. Services Bd.*, 822 F.3d 159, 167 (4th Cir. 2016).

Additionally, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F. 3d 250, 255 (4th Cir. 2009). Under the standard established by *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), compliance with Fed. R. Civ. P. 8(a)(2) requires more than "labels and conclusions," and a complaint must "state a claim

---

[6] This count is mislabeled as "VII" in the Amended Complaint. ECF No. 53, p. 70.

to relief that is plausible on its face." *Id.* Facts that are merely consistent with a defendant's liability are insufficient to state a plausible claim. *Id.*

In order to survive a motion to dismiss, the "factual allegations must be enough to raise a right to relief above a speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Philips v. Pitt County Mem. Hosp.*, 572 F.3d at 180 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). It is the court's obligation to "determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level." *Monroe v. City of Charlottesville*, 579 F.3d 380, 386 (4th Cir. 2009) (quoting *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (internal quotation marks omitted).

## LAW AND ARGUMENT

### A.    The Amended Complaint Should be Dismissed as it Violates Fed. R. Civ. P. 8.

As an initial matter, the Amended Complaint offends Rule 8 on the most basic grounds: it is neither short, nor plain. Rule 8(a) requires that a complaint contain "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). Rule 8(d) further requires that each allegation "be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). This court has recognized that a "complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive pleading[7] and makes it difficult for the trial court to conduct orderly litigation." *Carter v. Dep't of Game & Inland Fisheries*, 2018 U.S. Dist. LEXIS 126328, *14-15 (E.D. Va. July 27, 2018) (citing *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 675 (9th Cir. 1981) (citations omitted) (affirming dismissal of the plaintiff's amended complaint for failing to satisfy Rule 8(a)); *see also Plumhoff v. Cent. Mortg.*

---

[7] It is especially difficult for LCPS to file a 12(b)(6) motion to dismiss a 78-page complaint where LCPS's briefing is limited to 30 pages by Local Rule 7. While LCPS could seek additional pages for briefing, it should not be required to do so to respond to an unnecessarily verbose complaint that does not comply with Rule 8.

*Co.*, 286 F. Supp. 699, 704 (D. Md. 2017) (citing *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996) (affirming district court's order dismissing 53 page third amended complaint with prejudice because it "mixe[d] allegations of relevant facts, irrelevant facts, political argument, and legal argument in a confusing way" and despite district court's specific instructions in prior orders the complaint remained "argumentative, prolix, replete with redundancy, and largely irrelevant[.]") and *Kuehl v. F.D.I.C.*, 8 F.3d 905, 907-909 (1st Cir. 1993) (affirming district court's dismissal with prejudice of 43 page, 358 paragraph amended complaint for failure to comply with Rule 8 and district court's order)). A motion to dismiss under Rule 12(b)(6) "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

In this case, there is no reasonable explanation for Plaintiffs to have filed an Amended Complaint which is more than twice the length of the initial Complaint (ECF No. 1) and which contains 459 paragraphs. At its core, the factual background leading to this litigation (suspension of Plaintiffs from school due to their sexual harassment of a student) spans a relatively short period of time and is not complex. Rather than providing a short and plain statement of their claims, Plaintiffs have included so much unnecessary information, that it can only be for purposes of taxing LCPS and using this litigation as a platform to express their political views in opposition to transgenderism and School Board Policy 8040 and its accompanying LCPS Regulation 8040. For instance, but certainly not exhaustive, Plaintiffs include a four (4) page introduction. ECF No. 53, pp. 1-4. The 21 paragraphs contained therein are argumentative, redundant of allegations contained elsewhere in the Complaint and are improper. *See, e.g. Sewraz v. Guice*, 2008 U.S. Dist. LEXIS 65910, * 4 (E.D. Va. Aug. 26, 2008) (finding complaint failed to comply with Rule 8 because it contained rhetorical questions, improper argumentative detail, and redundancy). Further,

throughout the Amended Complaint, Plaintiffs launch into legal arguments in violation of Rule 8(a). *See In re NC Swine Farm Nuisance Litig.*, 2015 U.S. Dist. LEXIS 84714, * 15 (E.D. N.C. June 29, 2015) (citing *Black v. UNUMProvident Corp.*, 245 F. Supp. 2d 194, 197-98 (D. Me. 2003) (striking portions of a complaint containing legal arguments); *Barrett v. City of Allentown*, 152 F.R.D. 50, 53 (E.D. Pa. 1992) (same – reasoning "[i]t would be unfair to allow [legal arguments] to remain in the Complaint because Defendants would be compelled to weed through the verbiage and respond to the material contained therein or risk having the material deemed admitted."). Plaintiffs also provide pages of allegations, ECF No. 53, pp. 43-45, detailing purported action taken by the Attorney General against LCPS for its handling of various matters. Thereafter, Plaintiffs include pages of allegations regarding the Department of Education's ("DOE") determination that School Board Policy 8040 and Regulation 8040 allegedly violate Title IX. *Id.*, pp. 45-46.[8] These allegations do nothing to further a single count in the Amended Complaint. Plaintiffs further spend 30 pages, outlining LCPS's Title IX investigation with minutia which serves no conceivable purpose other than to place Plaintiffs' skewed narrative into public view. LCPS should not be burdened with responding to the Amended Complaint, as it clearly is prolix and redundant.

---

[8] Neither the Attorney General, nor DOE, have authority to issue binding decisions on the legality of School Board Policy 8040 and Regulation 8040. As recently as August 15, 2025, in *Doe v. South Carolina*, 2025 U.S. App. LEXIS 20849 (4th Cir. Aug. 15, 2025), the Fourth Circuit made clear that *Grimm v. Gloucester County School Bd.*, 972 F.3d 586 (4th Cir.2020), *cert. denied* 141 S.Ct. 2878, 210 L. Ed. 2d 977 (2021), which held that a public school board's policy of requiring transgender students to use multi-stall "restrooms matching their 'biological gender'" violated Title IX and the Equal Protection Clause, is "***the law of this Circuit and is thus binding on all the district courts within it***." *Doe*, 2025 U.S. App. LEXIS 20849, * 4-5, 18-19 (citations omitted) (emphasis added). School Board Policy 8040 and accompanying LCPS Regulation 8040 are entirely consistent with the ruling in *Grimm*.

**B.**     **Count I (First Amendment Freedom of Speech – 42 U.S.C. § 1983) and Count II (Virginia Constitution – Freedom of Speech) fail to state a claim and should be dismissed.**

Plaintiffs maintain that their constitutional right to free speech has been violated. Specifically, they contend that "[b]y censoring Plaintiffs' speech, punishing Plaintiffs for their speech, and imposing a severe punishment[9] against Plaintiffs' speech, LCPS committed impermissible viewpoint discrimination, censorship of speech, and retaliation against speech…." ECF No. 53, ¶¶ 363, 366. They suggest – without any facts to support the claim – that what they really intended, as they harassed Complainant, was to express their disagreement with School Board Policy 8040. Plaintiffs' Freedom of Speech claims should be dismissed.

i.     **Plaintiffs' speech is not constitutionally protected.**

Plaintiffs maintain – incorrectly – that their speech was protected because, according to them, it related to "issues such as 'sexual orientation and gender identity,' [which are] of 'profound value and concern to the public' occupying 'the highest rung of the hierarchy of First Amendment values' and meriting 'special protection.'" ECF No. 53, ¶ 348. Plaintiffs further contend that because their speech and views purportedly arose out of their religious convictions,[10] their speech deserves additional protection. *Id.*, ¶¶ 349-350. This characterization of what occurred is contrary to the facts before the court. As is apparent, Plaintiffs never sought to discuss the issue of gender

---

[9] As the court is certainly aware, "in school discipline cases, 'it is not [the court's] function . . . to sit as a reviewing court with respect to if or when or what disciplinary sanctions should be imposed on students….' *Graham v. Board of Education, Idabel School District Number Five*, 419 F. Supp. 1214, 1218-19 (E.D.Okla.1976)." *Pegram v. Nelson*, 469 F. Supp. 1134, 1141 (M.D. N.C. 1979) (refusing to "become a judicial school administrator-of-last-resort" in school discipline case).

[10] Notably, the only persons that Plaintiffs (now) claim to have raised religious concerns to are Assistant Principal Lisa Tartaglia and Counselor Catherine Donovan (as to S.W.), ECF No. 53, ¶ 68, and P.E. Teacher Hunter Manspile (as to J.S.), *id.*, ¶ 76. None of these persons are alleged to have been involved in the Title IX investigation(s) or decision-makers related thereto.

12

identity - whether to challenge School Board Policy 8040 or to raise their religious beliefs. Instead, as the Title IX investigation revealed, Plaintiffs targeted the Complainant and harassed him based on his gender and sex. They did so openly, loudly, and repeatedly, in an attempt to intimidate and humiliate Complainant, when no one who had any control over School Board Policy 8040 was even present. Plaintiffs acknowledge this to be the case. *Id.*, ¶ 356.

The First Amendment prohibits Congress and, through the Fourteenth Amendment, the States from "abridging the freedom of speech." U.S. Const. amend. I; *Gitlow v. New York*, 268 U.S. 652, 45 S. Ct. 625, 69 L. Ed. 1138 (1925). It is a "bedrock principle" of the First Amendment that "the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989).

While students retain significant First Amendment rights in the school context, their rights are not coextensive with those of adults. *See Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 506, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969). Because of the "special characteristics of the school environment," *id.* at 505, "school administrators have some latitude in regulating student speech to further educational objectives." *Kowalski v. Berkley County Sch.*, 652 F. 35 565, 571 (4th Cir. 2011). Further, student conduct which "materially disrupts classwork or involves substantial disorder **or the invasion of the rights of others**" is "not immunized by the constitutional guarantee of freedom of speech." *Id*. at 513 (emphasis added).

In *Kowalski*, a student was suspended from high school for five (5) days after she created and posted to MySpace.com a webpage called "S.A.S.H." which stood for "Students Against Sluts Herpes," which was directed at ridiculing a particular, fellow student. *Id.* at 567. She challenged the suspension by filing litigation in federal court raising claims of violation of her free speech

rights and due process under the First and Fourteenth Amendments. *Id*. The district court entered summary judgment in favor of the school district, holding that it was authorized to punish Kowalski because her webpage was "created for the purpose of inviting others to indulge in disruptive and hateful conduct," which caused an "in-school disruption." *Id.* Kowalski appealed, and the Fourth Circuit affirmed. *Id.* In so doing, the Fourth Circuit stated:

> [T]he language of *Tinker* supports the conclusion that public schools have a "compelling interest" in regulating speech that interferes with or disrupts the work and discipline of the school, **including discipline for student harassment and bullying**. See *DeJohn v. Temple Univ*., 537 F.3d 301, 319-20 (3d Cir. 2008).
>
> ***
>
> We are confident that Kowalski's speech caused the interference and disruption described in *Tinker* as being **immune from First Amendment protection**.

*Id*. at 572 (emphasis added).

> The *Kowalski* court went on to hold:
>
> [T]he School District was authorized by *Tinker* to discipline Kowalski, regardless of where her speech originated, because the speech was materially and substantially disruptive in that it "interfer[ed] . . . with the schools' work [and] **colli[ded] with the rights of other students to be secure and to be let alone.**" *See Tinker*, 393 U.S. at 508, 513.
>
> Given the **targeted, defamatory nature of Kowalski's speech, aimed at a fellow classmate, it created "actual or nascent" substantial disorder and disruption in the school**….

*Id.*at 573 (emphasis added).

As in *Kowalski*, the speech which Plaintiffs engaged in here is immune from First Amendment protection. It was not – as they have labeled it – speech aimed at discussing School Board Policy 8040 or transgender issues. They never so much as mentioned the policy or brought concerns to administrators or policy makers who had any control over the policies. Their speech was, instead, as substantiated by multiple witnesses and audio and video, disruptive and hateful

14

conduct, spewed at the Complainant, with the express purpose of harassing him based on his gender identity and sex. This type of speech necessarily collides with the Complainant's right to be secure and let alone, and it has no First Amendment protection.

### ii.    LCPS did not apply Title IX in an unconstitutional manner.

Plaintiffs also assert that LCPS applied Title IX to punish Plaintiffs for speech it disfavored. Plaintiffs argue that LCPS's findings and resulting discipline are blatant misapplications of Title IX that not only unconstitutionally violated the Plaintiffs' rights to speak on a controversial and sensitive issue, but the result of the investigation can only be viewed as retaliation for their exercise of free speech rights that did not conform to LCPS's preferred viewpoint. As set forth above, Plaintiffs never spoke "on a controversial and sensitive issue," protected by the First Amendment. Rather, they harassed and attacked the Complainant because of his sex and gender identification. LCPS – both at the school level and through the Decision Makers – evaluated whether the conduct rose to the level of hostile environment sexual harassment and/or sex-based discrimination. The conclusion was that Plaintiffs' conduct met all the elements. This is laid out, in detail, in the final reports issued by the Decision Makers. ECF Nos. 29-2 and 29-3. There, after determining that Plaintiffs targeted the Complainant and made statements to and about him, which he reported as potential Title IX violations, the Decision Makers considered each element of a hostile environment and sex discrimination claim under School Board Policy 8035. *See* ECF No. 29-3, pp. 16-25. Regarding a hostile environment claim, the Decision Makers noted that a preponderance of the evidence would need to establish sex-based misconduct, meeting the following elements:

1. Unwelcome conduct;
2. Determined by a reasonable person;
3. To be so severe;
4. Pervasive;
5. Objectively offensive; and

6.  That it effectively denies a person equal access to the LCPS education program or
    activity.

*Id.* at p. 16.

The Decision Makers easily found that the conduct by Plaintiffs toward Complainant was based on his sex. *Id.*, p. 16. The constant reference to Complainant with "overt sex-based references", such as "she" and "girl," when Complainant identifies as male, is sex based. *Id.* There is legal support for this conclusion. *See, e.g., Johnson v. Sch. Dist. of Rhinelander Bd. of Educ.*, 2025 U.S. Dist. LEXIS 58935, * 6 (W.D. Wi. March 27, 2025) (recognizing that "based on sex" has been found to include transgender students) (citing *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034 (7th Cir. 2017) (abrogated on other grounds); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020); and *Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110 (9th Cir. 2023)); *see also Bostock v. Clayton Cnty.*, 590 U.S. 644, 140 S.Ct. 1731, 1741, 207 L.Ed. 2d 218 (2020) (stating, "it is impossible to discriminate against a person for being … transgender without discriminating against that individual based on sex."). The *Johnson* court also concluded policies that discriminate against a student based on their nonbinary identity appear to constitute discrimination based on sex under Title IX. *Id.*, * 8.

The Decision Makers also found that the evidence demonstrated the Plaintiffs' conduct was unwelcome. *Id.*, pp. 16-17. Complainant reported as much and had reported the unwelcomeness to a number of people over a period of time. *Id.*, p. 17.

The Decision Makers also considered the severity, pervasiveness, and objective offensiveness of the Plaintiffs' conduct. *Id.*, pp. 16-20. The Decision Makers concluded that each of these elements was met, stating:

> The Decision-Makers conclude, therefore, that under the totality of the
> circumstances, the statements made in the locker room meet the standard of being

severe, pervasive, and objectively offensive. Targeted statements about a teenage student's sex, particularly the use of the disparaging phrases of "it" and "boy/girl" and combined with language like "get out," made with some hostility, and in a repeated manner over a period of weeks and months, satisfies the elements of severity, pervasiveness, and objective offense. The comments would have caused a reasonable student in the Complainant's position to feel distressed, harassed, intimidated, and/or embarrassed, and other students who heard the remarks knew that they were about the Complainant's sex.

*Id.*, p. 20.

The Decision Makers also properly evaluated whether Plaintiffs engaged in discrimination based on sex in violation of School Board Policy 8035. ECF No. 29-3, pp. 23-25. Again, the Decision Makers set forth the elements and referred to the evidence which led to the conclusion that Plaintiffs had engaged in sex discrimination toward the Complainant. *Id.*

Plaintiffs' unsubstantiated assertion that LCPS's investigation can only be viewed as retaliation for their exercise of free speech rights that did not conform to LCPS's preferred viewpoint, has no basis in fact. Plaintiffs did not engage in the exercise of free speech protected by the First Amendment, and LCPS did not impose discipline to retaliate against Plaintiffs. Rather, in response to a Title IX complaint which LCPS was obligated to investigate, where facts clearly established sexual harassment and creation of a hostile environment, LCPS imposed discipline against Plaintiffs. Plaintiffs have asserted no facts to show that LCPS took action to punish them for speech it disfavored. As such, Counts I and II should be dismissed.

**C.    Plaintiffs have not stated a claim for religious discrimination (Counts III, IV, V and VI).**

In Counts III[11] and IV, Plaintiffs contend that they were subjected to religious discrimination because they were disciplined differently from Respondent 3, who they allege is a Muslim student, and Complainant on the basis of religion. Plaintiffs have not stated a viable claim.

First, as to Count IV, Article I, § 11, the Virginia Constitution declares that "no person shall be deprived of his life, liberty, or property without due process of law; … and that the right to be free from any governmental discrimination upon the basis of religious conviction, race, color, sex, or national origin shall not be abridged, …." "[O]nly the provisions of Section 11 'governing the taking or damaging of private property for public use have been held to be self-executing.'" *Chandler v. Routin*, 63 Va. Cir.139, 141 (2003) (citing *Young v. City of Norfolk*, 62 Va. Cir. 307,

---

[11] Count III is brought under 42 U.S.C. § 1983. Claims against school boards under this code section are analyzed under *Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). *See Starbuck v. Williamsburg James City Cty. Sch. Bd.*, 28 F.4th 529, 532-33 (4th Cir. 2022). To establish *Monell* liability:

> [a] policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (alteration in original) (quoting *Carter v. Morris*, 164 F.3d 215, 217-18 (4th Cir. 1999) (first citing *Monell*, 436 U.S. at 690; then citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986); then citing *City of Canton v. Harris*, 489 U.S. 378, 388-89, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); and then quoting *Monell*, 436 U.S. at 691)); *see also Los Angeles Cnty., v. Humphries*, 562 U.S. 29, 36, 131 S. Ct. 447, 178 L. Ed. 2d 460 (2010).

It is far from clear which *Monell* prong Plaintiffs intend to proceed under as it pertains to Count III. Presumably it is prong (2) and/or (3), with focus on School Board Policy 8040. They fail to demonstrate how this policy is unconstitutional in light of *Grimm* or how the action taken against them violated any provision of the Constitution. *See also Polk v. Montgomery Cnty. Pub. Sch.*, 2025 U.S. Dist. LEXIS 8969 (D. Md. Jan. 17, 2025) (which supports the notion that LCPS's Policy 8040, properly analyzed, is constitutional).

312 (Norfolk Cnty. Cir. Ct. 2003)); *see also Ellis v. Kennedy*, Case No. CL19-03, 2020 Va. Cir. LEXIS 244, *33 (Loudoun Cnty. Cir. Ct. May 22, 2020) ("Article I, § 11 ... is only self-executing regarding the takings clause."); *Quigley v. McCabe*, Case No. 2:17-cv-70, 2017 U.S. Dist. LEXIS 141408, *15 (E.D. Va. Aug. 30, 2017) (same). Plaintiffs do not assert a takings' claim under Article I, § 11. Rather they assert a violation of their religious rights under Article I, § 11. As such, they allege violations of a provision that courts have uniformly treated as non-self-executing. The Supreme Court of Virginia has explained that there is no private cause of action under provisions of the Virginia Constitution which are not self-executing. *See, e.g., Robb v. Shockoe Slip Found*., 228 Va. 678, 681, 324 S.E.2d 674 (1985). Accordingly, Count IV must be dismissed.

Additionally, regarding Respondent 3, Plaintiffs remarkably continue to assert that, "Plaintiffs and the Muslim Student were in every way similarly situated, except for the distinction between the Muslim Student and the Christian Plaintiffs' different faiths…." ECF No. 53, ¶ 369. Plaintiffs – who are represented by the same attorney as Respondent 3 – know this representation is false, and the documents which are before the court for consideration reflect as much. As Plaintiffs were clearly advised when they first raised a claim of religious discrimination after the Title IX complaint against Respondent 3 was dismissed, although the ***allegations*** against Respondent 3 originally mirrored the allegations against Plaintiffs, the ***findings*** did not support a claim against Respondent 3. First, in contrast to the vast witness testimony and audio/video supporting Complainant's allegations against Plaintiffs, not a single witness or piece of evidence supported any claim that Respondent 3 made any comment to or about Complainant in the boys' locker room on March 21, 2025, or at any time. To the extent that it was alleged that Respondent 3 made a single comment that Complainant, was "a disappointment to humanity," in a classroom, he denied doing so and not a single corroborating witness was located. The Complainant also later

clarified and confirmed that it was not Respondent 3 who had threatened to "beat his ass." ECF No. 29-4, p. 7. Thus, LCPS determined, and Plaintiffs were so advised, "that the lack of corroborating evidence related to Respondent 3 was distinguishable from the volume of evidence against the appealing Respondents[/Plaintiffs], which included corroboration of the alleged misconduct by their own statements and statements of others." ECF No. 29-4, p. 7.

Regarding Complainant, Plaintiffs provide no facts which plausibly support a claim that LCPS's decision not to open a Title IX investigation as it relates to Complainant capturing a video in the boys' locker room had anything at all to do with any person's religion. As set forth above, Complainant advised the video was taken to substantiate Plaintiffs' harassment of Complainant. The video did not depict any nudity or contain anything which could be considered sexual harassment. As a result, a Title IX investigation was not opened. While Plaintiffs may disagree with LCPS's decision, it is a far and factually unsupported leap to conclude that LCPS's decision was based on the religion of Complainant (which is unknown) or Plaintiffs.

With respect to Counts V and VI, Plaintiffs argue that LCPS's Policy 8040 and the punishment they received for violating Complainant's rights to be free from sexual harassment and a hostile environment impermissibly burdened their religious expression. Again, they fail to state a claim.

First, Count VI is brought under Article 1, § 16 of the Virginia Constitution. As with Count IV, this provision of the constitution is not self-executing, and no private cause of action may be brought under it. *See, e.g., Bayadi v. Clarke*, 2017 U.S. Dist. LEXIS 156356, * 23 (W.D. Va. Sept. 25, 2017) (granting a 12(b)(6) motion to dismiss a claim brought under Article 1, § 16 of the Virginia Constitution because this section is not self-executing and does not provide an independent basis for a private right of action).

20

With regard to Count V, brought under Virginia Code section 57-2.02, that section provides, in relevant part that, "[n]o government entity shall substantially burden a person's free exercise of religion." Va. Code § 57-2.02(B). Virginia law defines a substantial burden as one that "inhibit[s] or curtail[s] religiously motivated practice." Va. § Code 57-2.02(B). Thus, Plaintiffs must allege sufficient facts to show that their religious exercise has been substantially burdened by LCPS. *Gupta v. Northam*, 2021 U.S. Dist. LEXIS 35428, * 8 (W.D. Va. Feb. 24, 2021). This court has recognized that there is little case law applying or interpreting Va. Code § 57-2.02(B). *Lighthouse Fellowship Church v. Northam*, 458 F. Supp. 3d 418, 439 (E.D. Va. May 1, 2020). Thus, this court has looked to caselaw from Oklahoma that identically defines "substantially burden" as "to inhibit or curtail religiously motivated practice." Okla. Stat. tit. 51 § 252(7). This court has noted that the Oklahoma state and federal courts have interpreted this to mean that a governmental entity substantially burdens a religiously motivated practice when it: (1) "significantly inhibits or constrains conduct or expression that manifests some central tenant of a person's individual beliefs"; (2) "meaningfully curtails a person's ability to express adherence to his or her faith"; or (3) "denies reasonable opportunities to engage in those activities that are fundamental to a person's religion." *Id.* (citing *Griffith v. Caney Valley Pub. Schs.*, No. 15cv273, 2015 U.S. Dist. LEXIS 66059, 2015 WL 2451226 at *5 (N.D. Okla. 2015) (alterations omitted) (quoting *Steele v. Guilfoyle*, 2003 OK CIV APP 70, 76 P.3d 99, 102 (Okla. Civ. App. 2003)). "A governmental entity's action does not substantially burden religious activity when it merely has an incidental effect that makes it more difficult to practice the religion." *Id.*

Here, Plaintiffs maintain that they have significant religious objections to being in a state of undress in the presence of the opposite sex. ECF No. 53, ¶ 387. They cite no scripture or facts to demonstrate that this is a "sincerely held religious belief." *Lighthouse*, 458 F. Supp. 3d at 439.

21

Further, what Plaintiffs fail to acknowledge is that LCPS's policies do not require Plaintiffs to be in a state of undress in the presence of the opposite sex – or anyone. *See, e.g., Wailes v. Jefferson Cnty. Pub. Schs.*, 2025 U.S. Dist. LEXIS 173988, * 18 (D. Co. Aug. 7, 2025) (rejecting similar argument made in evaluating a 14th Amendment student right to bodily privacy claim). Plaintiffs also do not allege that they change out for gym in the locker room or that Complainant does so. And, in fact, the video which is part of the Title IX investigation files shows that none of the boys in the locker room were changing for gym. Plaintiffs also fail to allege any requirement that they change clothes for gym class. They further fail to allege that there are not areas within the locker room where they can privately change and avoid being "in a state of undress in the presence of the opposite sex." Additionally, Plaintiffs have affirmatively alleged that they have sought out and used other areas to change privately, such as the football room. They have also affirmatively alleged that LCPS offered them private spaces to change, which necessarily would allow them the opportunity to avoid being in a state of undress around anyone of the opposite sex. All of this considered, it is apparent that LCPS's policies do not substantially burden Plaintiffs' religion – which they identify only as the desire to avoid being undressed in front of the opposite sex.

Additionally, as this court recognized in *Lighthouse, supra*, Virginia Code section 57-2.02 "explicitly provides that '[n]othing in this section shall prevent any governmental institution or facility from maintaining health, safety, security or discipline.' Va. Code § 57-2.02(E)." *Id.* at 440. Thus, since LCPS disciplined Plaintiffs for violation of sexual harassment and hostile environment policies, Virginia Code section 57-2.02 does not prohibit that action.

For all of the above reasons, Plaintiffs have not stated a claim for religious discrimination.

**D.    Plaintiffs have not stated a viable claim for sex discrimination (Counts VII, VIII and IX).**

Plaintiffs' claims for sex discrimination are brought under 42 U.S.C. § 1983 (Count VII), Virginia Constitution, Article I § 11 (Count VIII) and Title IX (Count IX). Count VIII must be dismissed because the constitutional provision under which it is brought is not self-executing. *See* above, argument as to Counts IV and VI.

With regard to Counts VII and IX, Plaintiffs maintain that they have established sex discrimination because when they raised concerns about Complainant using the boys' locker room, they were told that they could find an alternative place to change their clothes. ECF No. 53, ¶¶ 405-409, 415-418. However, according to Plaintiffs, LCPS did not advise Complainant that he should use a private changing area. *Id.*, ¶¶ 408, 418. It is difficult to make sense of this argument.

School Board Policy 8040, which is consistent with and mandated by *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F. 3d 586 (4th Cir. 2020), provides, in relevant part:

> All students are entitled to have access to restrooms and locker rooms that are sanitary, safe, and adequate, so that they can comfortably and fully engage in their school programs and activities. Students should be allowed to use the facility that corresponds to their consistently asserted gender identity. While some transgender students will want that access, others may want alternatives that afford more privacy. Taking into account existing school facilities, administrators should take steps to designate gender-inclusive or single-user restrooms commensurate with the size of the school.

Exhibit 1, p. 2.

Thus, ***all*** students are permitted to use the facility that corresponds with their gender identity, which includes both Complainant and Plaintiffs. Neither is treated differently in this respect. And, should any student feel uncomfortable or unsafe in such a facility, alternatives are available, regardless of a student's sex. This is consistent with *Model Policies on Ensuring Privacy, Dignity, and Respect for All Students and Parents in Virginia's Public Schools*, developed by the Virginia Department of Education ("VDOE") in 2023, ECF No. 39-4, and the Attorney

General's Opinion dated August 23, 2023, finding the model policies constitutional. ECF No. 39-5. So, to suggest that offering any student – regardless of sex – an alternative space to a single-sex locker room to ensure privacy constitutes sex discrimination is simply an argument unsupported by fact or law. All sexes are treated the same, and accommodations are made available to those who may validly desire them. This is not sex based, and it is not discriminatory.

Based on the foregoing, LCPS submits that Plaintiffs have not established a viable claim for sex-based discrimination, and Counts VII, VIII and IX should be dismissed.

### E.  Plaintiffs have not stated a claim for violation of due process (Counts X and XI), and those claims should be dismissed.

Plaintiffs' due process claims (Counts X and XI) are premised on the contention that "LCPS's policies, regulation, and related practices, including [Policy 8035 and its accompanying] Regulation 8035 and Policy 8210, are so vague, ambiguous, and/or contradictory, that ordinary citizens must guess at its [sic] meaning, will differ as to the regulation's application, and do not have a reasonable opportunity to know what is prohibited." ECF No. 53, ¶ 441, 452. Plaintiffs have only specifically referenced School Board Policy 8035, its accompanying Regulation 8035, and School Board Policy 8210, so those are the only policies and regulations to examine. The difficulty is that other than generally claiming that the policies are vague, ambiguous and/or contradictory, Plaintiffs fail to cite with any specificity to what they refer. Since School Board Policy 8035 is three (3) pages in length, ECF No. 39-2, and School Board Policy 8210 is seven (7) pages in length, ECF No. 39-3, it is difficult to understand what exactly Plaintiffs challenge within the policies. That is, what portion of the policies were purportedly unconstitutionally applied and what portions are allegedly void for vagueness?

24

Presumably, Plaintiffs take issue with LCPS's use of the term "gender identity" in School Board Policy 8210, *see* ECF No. 39-3, p. 5, ¶ 12. It remains unclear, however, what exactly they challenge in School Board Policy 8035. To be clear, though, Plaintiffs state no claim. LCPS's policies are both constitutional and clear.

First, contrary to what Plaintiffs assert, the law is well-established that discrimination based on "gender identity" is discrimination based on sex under Title IX. *See Doe v. Hanover Cnty. Sch. Bd.*, 2024 U.S. Dist. LEXIS 146940, * 19 (E.D. Va. Aug. 16, 2024) (citing *B.P.J. v. W. Va. State Bd. of Educ.*, 98 F.4th 542, 563 (4th Cir. 2024)); *Grimm*, 97 F.3d at 616 (bathroom policies precluding a transgender teenager from using their preferred bathroom violated Title IX); *Kadel v. Folwell*, 100 F.4th 122, 163-64 (4th Cir. 2024) (gender identity discrimination violates the Affordable Care Act, which incorporates Title IX's antidiscrimination provision); *Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1049 (7th Cir. 2017) ("A policy that requires an individual to use a bathroom that does not conform with his or her gender identity punishes that individual for his or her gender non-conformance, which in turn violates Title IX."); *Soule v. Conn. Ass'n of Sch.*, 90 F.4th 34, 74 n.5 (2d Cir. 2023) (en banc) (Perez, J., concurring) ("Near-universal authority suggests that Title IX permits or even requires funding recipients to accommodate students who are transgender according to their gender identities.") (collecting cases). This is so because "it is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex." *Grimm*, 972 F.3d at 616 (quoting *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 659, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020)). Thus, to the extent that Plaintiffs contend that LCPS's policies are unconstitutional in application or vague because "sex" and "gender identity" are inherently in

conflict, or because discriminating against an individual based on gender identity is not sexual harassment under Title IX, that argument has been flat rejected.[12]

If it is Plaintiffs' contention that "gender identity," as used in School Board Policy 8210, is vague, that argument has also been rejected. *See Reynolds v. Talberg*, 2020 U.S. Dist. LEXIS 202418, * 32 (W.D. Mi. Oct. 30, 2020) (citing *Hyman v. City of Louisville*, 132 F. Supp. 2d 528, 545-47 (W.D. Ky. 2001), *vacated on other grounds*, 53 F. App'x 740 (6th Cir. 2002) (finding phrases like "sexual orientation" and "gender identity" sufficiently definite to foreclose vagueness challenges); *see also Tingley v. Ferguson*, 47 F.4th 1055, 1089-1090 (9th Cir. Sept. 6, 2022) (holding that "gender identity" is not unconstitutionally vague, but is a "common legal term[] that appear[s] in multiple provisions of Washington law,[13] federal statutes and caselaw" and has a common meaning that is clear to a regular person.).

Considering the above, Plaintiffs have not stated a due process claim, and Counts X and XI should be dismissed.

### F.    Plaintiffs have not stated a claim for civil conspiracy under § 1983[14] (Count XII).

---

[12] School Board Policy 8040, ECF No. 39-1, also makes clear that "[t]he use of gender-neutral pronouns are appropriate. Inadvertent slips in the use of names or pronouns may occur; however, staff or **students who intentionally and persistently refuse to respect a student's gender identity by using the wrong name and gender pronoun are in violation of this policy**." *Id.*, p. 1 (emphasis added). This is what occurred here, and Plaintiffs were in violation of School Board Policy 8040, as well as School Board Policy 8035.: Title IX, Sex-Based Discrimination, Sexual Harassment.

[13] A cursory search in Virginia's Legislative Information System ("LIS") similarly shows that the term "gender identity" is used with regularity; i.e., almost 100 times.

[14] The press release and timeline which Plaintiffs rely upon for their civil conspiracy claim are available at the following link: https://www.loudoun4all.com/title-ix-investigation-1. Notably, the press release is critical of Plaintiffs' parents, rather than Plaintiffs. Plaintiffs' parents are not parties to this case, though they are referenced throughout the Amended Complaint to have suffered from the alleged conspiracy.

To state a claim for conspiracy under § 1983, a plaintiff must establish that: (1) defendants acted jointly in concert; and (2) that some overt act was done; (3) in furtherance of the conspiracy; (4) which resulted in the plaintiff's deprivation of a constitutional right. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996) (citation omitted). "While [a plaintiff] need not produce direct evidence of a meeting of the minds, [he] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Id*. The Complaint must "reasonably lead to the inference that [the defendant] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id; see also Brown v. Angelone*, 938 F. Supp. 340, 346 (W.D. Va. 1996) ("The plaintiff must allege facts which show that the defendants shared a 'unity of purpose or common design' to injure the plaintiff . . . The mere fact that each of [the] actors played a part in the events is not sufficient to show such a unity of purpose." (quoting *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810, 66 S. Ct. 1125, 90 L. Ed. 1575 (1946))). Further, a plaintiff "'must allege and prove both a conspiracy *and an actual deprivation of rights*; mere proof of a conspiracy is insufficient to establish a section 1983 claim…. The gist of the (section 1983) cause of action is the deprivation and not the conspiracy.'" *Noble v. Chambers,* 2013 U.S. Dist. LEXIS 93192, * 14-15 (E.D. Va. July 2, 2013) (citing *Landrigan v. Warwick*, 628 F.2d 736, 742 (1st Cir. 1980)) (emphasis in original). The plaintiff bears "a weighty burden to establish a civil rights conspiracy." *Hinkle*, 81 F.3d at 421.

Here, the civil rights conspiracy claim is easily disposed of by looking first at prong 4 – actual deprivation of a constitutional right. The only constitutional right which Plaintiffs identify as it pertains to their conspiracy claim, is their "right[] to petition the government for redress of grievances by filing a Title IX complaint and filing a lawsuit in this Court." ECF No. 53, ¶ 457. While the right to petition government for redress of grievances is clearly protected by the First

Amendment, *Kirby v. City of Elizabeth City*, 388 F.3d 440, 448 (4th Cir. 2004), what is completely lacking in the Amended Complaint is any allegation that the alleged conspiracy between LCPS and Loudoun4 All actually deprived Plaintiffs of their right to seek redress. In fact, as the Amended Complaint makes clear, Plaintiffs filed both a Title IX complaint and a lawsuit in this court. Having done so, there has been no violation of a constitutional right, and a conspiracy claim has not been stated. *Noble,* *15-16 (finding plaintiff failed to state a claim for conspiracy to violate the right to seek legal redress because, "[r]ather than alleging that the Defendants' conspiracy … actually hindered him in pursuing legal action …, the only injury Plaintiff alleges is that '[a]s a direct and proximate result of the Sheriffs' intentional actions, [Plaintiff] was forced to endure great pain, fear, mental suffering and humiliation.' Even accepting Plaintiff's claims as true, such emotional distress does not indicate that the doors of the courthouse have actually been closed to Plaintiff ….").[15]

In addition, Plaintiffs' "conspiracy claim under § 1983 also fails because [Plaintiffs have] not plausibly alleged [a] the members of the conspiracy or [b] a conspiratorial objective." *Moschetti v. Nixon Peabody, LLP*, 2024 U.S. Dist. LEXIS 95757, * 35 (E.D. Va. May 29, 2024). In *Moschetti*, the plaintiff claimed that two identified individuals conspired with "persons in former Governor Ralph Northam's Office and other Democratic leaders, including Democratic legislators." *Id.* The court found the allegations insufficient to state a civil conspiracy claim, in part, due to the plaintiff's failure to identify the alleged conspirators with particularity. The same flaw exists in this case. Plaintiffs allege that the conspirators are two organizations – LCPS and

---

[15] Here, too, the only injury alleged as a result of LCPS's purported conspiracy with Loudoun4 All is that Plaintiffs have suffered "significant distress" and "fear retribution and retaliation from members of Loudoun4 All and other allies of the school board…." ECF No. 53, ¶ 343.

Loudoun4 All. Plaintiffs must establish that someone from each organization came to a mutual understanding to accomplish a common and unlawful plan. Without identifying anyone within either organization who purportedly did so, a meeting of the minds has not been established.

Additionally, there are no facts from which it can be shown that LCPS and Loudoun4 All shared a 'unity of purpose or common design' to injure Plaintiffs and deprive them of constitutional rights. In fact, the arguments advanced by Plaintiffs are non-sensical. Plaintiffs aver that, "[on] or about October 14, 2025, LCPS conspired with Loudoun4 All to injure, oppress, threaten, and/or intimidate the Plaintiffs in their free exercise and/or enjoyment of their rights, including their rights to petition the government for redress of grievances by filing a Title IX complaint and filing a lawsuit in this Court." ECF No. 53, ¶ 329. However, prior to October 14, 2025, Plaintiffs had already filed their Title IX complaints and the pending lawsuit. Obviously, any discussion between LCPS and Loudoun4 All which purportedly occurred on October 14, 2025, could not have been for the purposes of preventing Plaintiffs from doing that which they had already done. Furthermore, Plaintiffs have not alleged with any specificity the persons who agreed to the alleged conspiracy, specific communications among the conspirators, or the manner in which any such communications occurred. Instead, Plaintiffs attempt to cobble together a claim based on nothing more than speculation and conjecture. This is not sufficient to withstand a 12(b)(6) motion to dismiss. *See A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011) (finding that plaintiff's allegations were insufficient to support a meeting of the minds because the plaintiff "fail[ed] to allege with any specificity the persons who agreed to alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made"); *Marshall v. Marshall*, 523 F. Supp. 3d 802, 829 (E.D. Va. 2021) ("[C]onclusory allegations of a conspiracy will not suffice.").

To the extent – through paragraphs 458 and 459 – Plaintiffs attempt to assert a claim for conspiracy to retaliate for exercising First Amendment rights to petition the government for redress of grievances, such a claim must also fail. That is because, in addition to not identifying the alleged conspirators or establishing 'a unity of purpose or common design' to injure Plaintiffs, "where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory.'" *Munive v. Fairfax Cty. Sch. Bd.*, 2019 U.S. Dist. LEXIS 94757, * 18 (E.D. Va. June 5, 2019) (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676,687 (4th Cir. 2000). Here, the only purported retaliation which Plaintiffs have identified is false and defamatory statements published by Loudoun4 All. There is no assertion that any of those statements threatened, coerced, or intimated that punishment, sanction or adverse regulatory action would imminently follow. As such, as a matter of law, the statements which Plaintiffs label defamatory and retaliatory do not adversely affect Plaintiffs' First Amendment rights, and no claim has been stated.

For the above reasons, Count XII – civil conspiracy under § 1983 should be dismissed.

## IV.    CONCLUSION

WHEREFORE, considering the arguments set forth herein, Defendant, Loudoun County School Board, respectfully requests that the court grant its motion and dismiss all claims with prejudice.

**LOUDOUN COUNTY SCHOOL BOARD**
By Counsel

_____/s/_____
Heather K. Bardot, Esquire
VSB No. 37269
Anna G. Zick, Esquire
VSB No. 86057
McGAVIN, BOYCE, BARDOT
 THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
Telephone:     (703) 385-1000
Facsimile:     (703) 385-1555
hbardot@mbbtklaw.com
azick@mbbtklaw.com
Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of November, 2025, I electronically filed the foregoing
pleading with the Clerk of Court using the CM/ECF system, which will then send a notification of
such filing (NEF) to the following:

Andrew Block
Ian Prior
Nicholas R. Barry
Robert A. Crossin
America First Legal Foundation
611 Pennsylvania Avenue, SE, #231
Washington, D.C. 20003
(202) 836-7958
andrew.block@aflegal.org
ian.prior@aflegal.com
nicholas.barry@aflegal.com
bobby.crossin@aflegal.com
Counsel for Plaintiff

Joshua A. Hetzler, Esq. (VSB No. 89247)
Michael B. Sylvester, Esq. (VSB No. 95023)
FOUNDING FREEDOMS LAW CENTER
707 E. Franklin Street
Richmond, VA 23219
michael@foundingfreedomslaw.org
josh@foundingfreedomslaw.org
Co-Counsel for Plaintiff

31

Ellis L. Bennett
Dunlap Bennett & Ludwig PLLC
211 Church Street SE
Leesburg, Virginia 20175
ebennett@dbllawyers.com
Co-Counsel for Plaintiff

_____/s/_____
Heather K. Bardot, Esquire
VSB No. 37269
Anna G. Zick, Esquire
VSB No. 86057
McGAVIN, BOYCE, BARDOT
  THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
Telephone:    (703) 385-1000
Facsimile:    (703) 385-1555
hbardot@mbbtklaw.com
azick@mbbtklaw.com
Counsel for Defendant