# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| S.W., by his parents and next friends, SETH WOLFE and AMANDA WOLFE<br><br>and<br><br>J.S., by his parents and next friends, JEFFERY SMITH and RENAE SMITH,<br><br>Plaintiffs<br><br>United States of America,<br><br>Intervenor-Plaintiffs<br><br>v.<br><br>LOUDOUN COUNTY SCHOOL BOARD<br><br>Defendant. | No. l:25cv1536 (LMB/WEF) |

## UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

### INTRODUCTION

Defendant Loudoun County School Board ("School Board") intentionally discriminated on the basis of religion in violation of the Equal Protection Clause of the Fourteenth Amendment. Section 902 of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000h-2, empowers the United States to intervene in such cases. Because discrimination on the basis of religion is abhorrent to a free society, the United States moves to intervene and protect its citizens.

As detailed in the United States' proposed Complaint in Intervention (attached as Exhibit A), the School Board unconstitutionally implemented and applied Policy 8040, "Rights of Transgender and Gender-Expansive Students," and its enacting Regulation 8040 (collectively, "Policy 8040" or "the Policy") in a discriminatory manner. Policy 8040 establishes and promotes the School Board's view of matters related to "sex, sexual orientation, transgender status, or gender identity/expression," including that students may "use their chosen name and gender pronouns that reflect their consistently asserted gender identity without any substantiating evidence"; "participate in [interscholastic, co-curricular, and extra-curricular] activities in a manner consistent with the student's gender identity"; and "use the [bathroom or locker room] facility that corresponds with their consistently asserted gender identity."

Policy 8040 requires staff and students to adopt its understanding of "gender identity" and conform their speech and behavior to fit that understanding. The School Board disfavors any view of "sex, sexual orientation, transgender status, or gender identity/expression" that does not align with its own and casts disagreement with Policy 8040—*i.e.*, using names and pronouns that align with a person's sex—as a "refus[al] to respect a student's gender identity."

S.W. and J.S. (collectively, "Plaintiffs"), who are Christian, male students at Stone Bridge High School, oppose girls accessing their intimate spaces (bathrooms and locker rooms). Plaintiffs' religious beliefs inevitably collided with Policy 8040 when one of their fellow Stone Bridge High School students, a female student who purportedly identifies as a boy ("Female Student"), entered the boys' locker room. After Plaintiffs expressed their views on this matter, which flow from their religious beliefs, the School Board punished Plaintiffs. Sanctions include: (1) "no-contact" orders regarding Female Student; (2) for each, development of a "Comprehensive Student Support Plan"

2

that is intended to change Plaintiffs' "behavior" in a way that conforms to Policy 8040; and (3) 10-day suspensions, equaling two weeks of class time.

"Unquestionably, the free exercise of religion is a fundamental right." *Johnson v. Robison*, 415 U.S. 361, 375 n. 14 (1974)). And religion is an inherently suspect classification. *See City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (acknowledging protected suspect classes as race, religion or alienage). The First Amendment prohibits the government from requiring an individual to adhere to state-favored orthodoxies. State law classifications that interfere with a fundamental right trigger strict scrutiny under the Equal Protection Clause, which requires the government action to be narrowly tailored to achieve a compelling governmental interest. *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty., Maryland*, 915 F.3d 256, 265 (4th Cir. 2019), as amended (Feb. 25, 2019) ("[W]e apply strict scrutiny under the Equal Protection Clause where (as here) the challenged action interferes with a fundamental right.").

From using preferred pronouns to sharing intimate spaces with students of the opposite sex, the School Board's policy unconstitutionally directs Plaintiffs to go against their sincere religious beliefs and practice, which require using sex-aligned pronouns and using sex-segregated intimate spaces.

LCPS applied School Board Policy 8040 to Plaintiffs in an unconstitutional manner when it attempted to limit Plaintiffs' religious expression and later punished them when they expressed their religious beliefs. LCPS's application of School Board Policy 8040 to Plaintiffs burdens their First Amendment right to free exercise.

Plaintiffs face irreparable harm from the School Board's conduct. Plaintiffs will endure significant educational and social harms if they miss ten days of school simply for exercising their constitutionally protected rights. Significantly, the School Board's decision will remain on

3

Plaintiffs' respective school and disciplinary records, which they will have to disclose when applying to colleges, enlisting in the military, or searching for gainful full-time employment. *See Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 535 (4th Cir. 2022) (quoting *Goss v. Lopez*, 419 U.S. 565, 575 (1975) (acknowledging that disciplinary measures that remain in a student's permanent record "could . . . interfere with later opportunities for higher education and employment"). In addition, imposition of a "no-contact order" insinuates that Plaintiffs pose a danger to others—and it is undisputed they do not—which damages their character and reputations. *See id.* (quoting *Goss*, 419 U.S. at 575) (also acknowledging that misconduct charges "could seriously damage [a] student[]'s standing with [his] fellow pupils and [his] teachers").

Because Plaintiffs assert an Equal Protection Claim, the United States has a statutory right to intervene in this case under Federal Rule of Civil Procedure 24(a)(1) and Section 902 of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000h-2. Section 902 grants the United States an unconditional right to intervene in cases "seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of . . . religion . . . upon timely application if the Attorney General certifies that the case is of general public importance." 42 U.S.C. § 2000h-2.

Plaintiffs filed suit on September 15, 2025, and the Attorney General has certified that the case is of general public importance. *See* Certificate of the Attorney General, attached as Exhibit B. The requirements for intervention as of right are thus met here. The United States also meets the factors for permissive intervention under Federal Rule of Civil Procedure 24(b).

**ARGUMENT**

**A.  Rule 24(a)(1) Grants the United States a Right to Intervene**

This Court should grant the United States' Motion to Intervene under Rule 24(a)(1) because the United States satisfies the requirements for intervention as of right. Under Rule 24(a)(1), "[o]n

4

timely motion, the court must permit anyone to intervene who . . . is given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1); *see also Brandt v. Gooding*, 636 F.3d 124, 136 (4th Cir. 2011) (stating that Rule 24(a)(1) allows "intervention as of right when a statute of the United States confers an unconditional right to intervene") (citation omitted).

Here, Section 902 of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000h-2, gives the United States an unconditional statutory right to intervene. Section 902 provides as follows:

> Whenever an action has been commenced in any court of the United States seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of race, color, *religion*, sex or national origin, the Attorney General for or in the name of the United States may intervene in such action upon timely application if the Attorney General certifies that the case is of general public importance. In such action the United States shall be entitled to the same relief as if it had instituted the action.

42 U.S.C. § 2000h-2 (emphasis added).

Many courts, including the Supreme Court, have recognized that this statute entitles the United States to intervene in Equal Protection cases. *See, e.g.*, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 258 (2009) (acknowledging Section 902 allows the Attorney General to intervene in private Equal Protection suits); *Air Lines Steward & Stewardesses Ass'n, Local 550 v. American Airlines, Inc.*, 455 F.2d 101, 103 n.2 (7th Cir. 1972) (finding Attorney General can intervene as of right in Equal Protection suits). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has recognized that Section 902 "empower[s] the Attorney General to intervene in private suits." *U.S. v. Hunter*, 459 F.2d 205, 217-18 (4th Cir. 1972).

**B.      The United States Meets the Permissive Intervention Standard under Rule 24(b)**

Alternatively, this Court should permit the United States to intervene because the United States meets the requirements for permissive intervention under Rule 24(b). For permissive intervention, Rule 24(b) provides as follows:

5

>
> **(1) *In General.*** On timely motion, the court may permit anyone to intervene who:
>
> . . .
>
> **(B)** has a claim or defense that shares with the main action a common question of law or fact.
>
> . . .
>
> **(3) *Delay or Prejudice.*** In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b).

Here, Plaintiffs S.W. and J.S. assert an Equal Protection claim regarding religious discrimination. *See* Am. Compl. ¶¶ 367–81, ECF 53. The United States also alleges an Equal Protection claim, namely that Defendant engaged in intentional discrimination on the basis of religion, in violation of the Equal Protection Clause. The United States' claim shares common questions of law and fact with Plaintiffs' claims. Indeed, the United States' proposed Complaint in Intervention largely tracks Plaintiffs' Amended Complaint.

The United States' motion is timely. In determining the timeliness of intervention, trial courts in the Fourth Circuit are "obliged to assess three factors: first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014) (denying motion to intervene where proceedings had reached an advanced stage (*i.e.*, seven other parties had long ago requested and received permission to intervene; motions to dismiss were fully briefed, argued, and denied; the case had been stayed once; the court's scheduling order had been extended twice; and summary judgment briefing had commenced)) (citation omitted). "The purpose of the timeliness exception is to "prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Id.*

Plaintiffs S.W. and J.S. commenced this action on September 15, 2025. *See* Compl., ECF 1. On October 10, 2025, the Court held a hearing and granted Plaintiffs' Motion for Preliminary Injunction. *See* Order, ECF 45. On October 29, 2025, Plaintiffs filed their Amended Complaint. *See* Am. Compl., ECF 53. On November 26, 2025, Defendant filed its Motion to Dismiss Plaintiffs' Amended Complaint ("Motion"), with accompanying Memorandum in Support. ECF 69-70. As noted above, the United States' proposed Complaint largely tracks Plaintiffs' Amended Complaint. The United States also files its motion before briefing has been completed on the pending motion to dismiss. Under these circumstances, the United States' participation would neither unduly delay the proceedings nor prejudice the existing parties' rights. Given that the litigation is in its very early stages, this lawsuit is not "within sight of the terminal." *Alt*, 758 F.3d at 591. *See also U.S. v. Cunningham*, No. 3:08-cv-709, 2009 WL 3350028, at *3 (E.D. Va. Oct. 15, 2009) (where procedural history reflects that the court granted the United States' motion to intervene, which was filed on November 14, 2008—seven days after the original defendants moved to dismiss on November 6, 2008[1]). Thus, the United States meets the requirements for permissive intervention under Rule 24(b).

---

[1] The *Cunningham* docket also indicates that the U.S.' motion to intervene was filed *after* briefing on the motion to dismiss had been completed with the filing of the November 7, 2008 memorandum in opposition, but *before* the court had ruled on the motion.

## CONCLUSION

For the reasons set forth above, the Court should grant the United States' Motion to Intervene.

| | |
|---|---|
| DATED: December 8, 2025 | Respectfully submitted, |
| | |
| LINDSEY HALLIGAN | HARMEET K. DHILLON |
| United States Attorney and | Assistant Attorney General |
| Special Attorney | |
| Eastern District of Virginia | JESUS A. OSETE |
| | Principal Deputy Assistant Attorney General |
| | |
| | JEFFREY MORRISON |
| | Acting Chief, Educational Opportunities Section |
| | |
| | */s/ Brian L. Repper* |
| | JORDAN K. CARPENTER (TN No. 035074) |
| | Counsel |
| | BRIAN L. REPPER (VA No. 90254) |
| | LADAWN BURNETT (MO No. 68881) |
| | Trial Attorneys |
| | Civil Rights Division |
| | U.S. Department of Justice |
| | 950 Pennsylvania Ave. NW |
| | Washington, DC 20530 |
| | Telephone: (202) 514-3847 |
| | Email: brian.repper@usdoj.gov |
| | |
| | ATTORNEYS FOR PLAINTIFF |
| | UNITED STATES OF AMERICA |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2025, I filed the foregoing through the Court's CM/ECF electronic filing system, which will transmit a Notice of Electric Filing (NEF) to all counsel of record in the case.

*/s/ Brian L. Repper*
BRIAN L. REPPER
Attorney for the United States
