**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| S.W., by his parents and next friends, | ) | |
| SETH WOLFE and AMANDA WOLFE, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 1:25-cv-1536 |
| | ) | |
| LOUDOUN COUNTY SCHOOL BOARD, | ) | |
| Defendant. | ) | |

**REPLY TO PLAINTIFFS' MEMORANDUM**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

COMES NOW, Defendant Loudoun County School Board ("LCPS"), by counsel, and in reply to Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss states, as follows:

**A. The Court May Consider ECF Nos. 29-1 Through 29-5, 29-8 and 29-9 in Ruling on the Motion to Dismiss.**

Plaintiffs argue that "Defendant's main argument in its brief is that because Plaintiffs attached LCPS's Title IX findings as an exhibit to their Motion for Preliminary Injunction, those findings should be treated as true and control the outcome of this case." ECF No. 86, p. 10. To be clear, that was not LCPS's "main argument in its brief." LCPS's point regarding ECF Nos. 29-1 through 29-5, 29-8 and 29-9 was that since these documents, filed by Plaintiffs, are integral to and explicitly relied on in the Amended Complaint, and their authenticity is not disputed, the court may consider the documents without converting the motion to dismiss to a motion for summary judgment. Plaintiffs, in their opposition, have reinforced the fact that the Title IX documents are integral to and relied upon in the Amended Complaint, as they expressly state that the Amended Complaint "summarized for the Court … the entire 556-page Title IX records, the actual witness

1

statements, transcripts of the relevant videos, and [allegedly] significant errors and misrepresentations made by the Title IX hearing officers." ECF No. 86, p. 8. LCPS submits that it is proper for the court to consider the referenced documents in ruling on the motion to dismiss.

### B. Plaintiffs have Not Stated Claims for Violation of Free Speech (Counts I and II).

Astonishingly, Plaintiffs have avoided responding to arguments raised by LCPS regarding why they fail to state a claim for violation of free speech. In particular, Plaintiffs have not addressed LCPS's argument that their speech is not constitutionally protected, made any effort to distinguish *Kowalski v. Berkley County Sch.*, 652 F. 35 565 (4th Cir. 2011), or explained how their conduct did not invade the rights of the Complainant, thereby eliminating any alleged constitutional guarantee of freedom of speech. They also fail to address *Kowalski*'s holding that where speech targets a fellow classmate, as it did here, it creates "actual or nascent" substantial disruption in the school which is not entitled to First Amendment protection.[1] Instead, Plaintiffs revert to their mantra that gender identity is a sensitive political topic that is a matter of profound concern to the public. They then characterize their behavior toward Complainant as "speaking on a matter of public concern about a current event that is uniquely salient to the lives of American teenagers." ECF No. 86, p. 13. But, the fact is Plaintiffs never spoke about gender identity or School Board Policy 8040, nor do they claim to have done so. Instead, they directed hateful comments toward Complaint and him alone, which is starkly different.

In *Kluge v. Brownsburg Cmty. Sch. Corp.*, 432 F. Supp. 3d 823 (S.D. In. Jan. 8., 2020), the court addressed and rejected a similar argument to that made by Plaintiffs herein. There, the

---

[1] LCPS submits that the failure to address these arguments is a waiver and recognition that no claim has been stated for violation of free speech. *See, e.g. Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017); *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 416 (4th Cir. 2014).

plaintiff, a teacher, asserted that the School Board violated his right to freedom of speech under the First Amendment by allegedly punishing and threatening to punish him for expressing his views regarding gender dysphoria and for refusing to address students by names and genders listed in PowerSchool. *Id.*, at 836-837. In evaluating the claim, the court considered whether Kluge's choice regarding how to address a given student involved a matter of public concern. The court rejected that notion, stating:

> To be sure, issues relating to the treatment of individuals based on their gender identity are of great public importance. *See Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council* 31, 138 S. Ct. 2448, 2476, 201 L. Ed. 2d 924 (2018) . . . . However, Mr. Kluge was not conveying a message concerning such matters when he refused to call students by their names as listed in PowerSchool or referred to students by last name only, because ***the act of referring to a particular student by a particular name does not contribute to the broader public debate on transgender issues. Instead, choosing the name to call a student constituted a private interaction with that individual student and a private statement about Mr. Kluge's subjective perception of that student.*** In addition, according to Mr. Kluge's own allegations, the only point of his speech was to address students. He did not tell students that he had opinions about using transgender students' preferred names or explain why he was using last names only. [Filing No. 15 at 10.] Thus, Mr. Kluge's speech—merely stating (or refusing to state) names and pronouns without explaining that his opposition to "affirming" transgender students was the reason for doing so—adds little to the public discourse on gender identity issues, and therefore is not the kind of speech that is valuable to the public debate . . . .

*Id.*, at 839 (emphasis added); *see also Manchester v. Town of Ludlow*, 780 F. Supp. 3d 296, 310 (D. Ma. Apr. 25, 2025) (comments aimed at specific transgender individual, in contrast to broader policies, is not a matter of public concern).

Here, like in *Kluge*, Plaintiffs addressed their speech toward Complainant and Complainant alone. In doing so, they did not raise with that student, or the audience of students who were present, any issue or concern with transgender students using the locker room or School Board Policy 8040. As they verbally attacked the Complainant, they did not suggest that they had religious or moral objections to the Complainant using the locker room. Thus, Plaintiffs' speech

3

toward or about the Complainant did not add to the public debate on transgender issues, School Board Policy 8040, or anything valuable to public debate despite Plaintiffs' after-the-fact characterization of what they purportedly intended by their speech. Plaintiffs have not stated a claim for violation of freedom of speech guaranteed by the First Amendment and Count I should be dismissed.

Regarding the claim that LCPS violated Plaintiffs' rights under the Virginia Constitution, Count II, Plaintiffs recognize that Article I, Section 12 of the Virginia Constitution is generally coextensive with the First Amendment, such that the claims rise or fall together. Plaintiffs then criticize LCPS for "fail[ing] to mention the [purported] recent exception the Supreme Court of Virginia explained in *Vlaming v. West Point Sch. Bd.*, 302 Va. 504 (2023)." ECF No. 86, p. 13. Plaintiffs characterize the "exception" as "'[w]hen religious liberty merges with free-speech protections,' the government may only restrict that speech where it 'invariably posed some substantial threat to public safety, peace or order. 302 Va. at 540-41." *Id.* Plaintiffs' reading of *Vlaming* and attempt to characterize this case as similar thereto and controlling is flawed.

The quote which Plaintiffs have cobbled together from *Vlaming* pertains to a compelled-speech claim. Vlaming asserted that the School Board fired him because he refused to affirmatively use a masculine pronoun to refer to Doe, a biologically female student. Had he done so, Vlaming claimed, he would have violated his sincerely held religious beliefs. He asked for an accommodation to use Doe's preferred name and avoid using any third-person pronouns to refer to Doe. The School Board, according to Vlaming, rejected this accommodation and compelled him to use government-approved pronouns instead of using only Doe's preferred name. *Id* at 540. In evaluating this claim, which had been dismissed on demurrer, the Virginia Supreme Court stated:

When religious liberty merges with free-speech protections, as it does in this case, mere "objectionable" and "hurtful" religious speech or, as in this case, nonspeech, is not enough to meet this standard. *Id*. at 1924. "In an open, pluralistic, self-governing society, the expression of an idea cannot be suppressed simply because some find it offensive, insulting, or even wounding." *Id*. A lawful government "is not free to interfere with speech for no better reason than promoting an approved message or discouraging a disfavored one, however enlightened either purpose may strike the government." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos*., 515 U.S. 557, 579, 115 S. Ct. 2338, 132 L. Ed. 2d 487 (1995). "Government may neither compel affirmation of a repugnant belief," Sherbert correctly declared, "nor penalize or discriminate against individuals or groups because they hold religious views abhorrent to the authorities." 374 U.S. at 402.

*Id*. at 541.

This quote has no bearing on the freedom of speech claims raised by Plaintiffs in Count II, which is not a compelled-speech claim. In *Ibanez v. Albermarle Cnty. Sch. Bd.*, 80 Va. App. 169 (2024), the Court of Appeals of Virginia rejected a compelled-speech claim that purportedly followed from *Vlaming*. The reason was that Plaintiffs failed to plead that the School Board coerced them to mouth support for religious, political, or ideological views that they do not believe. *Id*. at 206 (citation omitted). That is, Plaintiffs were not compelled to declare any belief. *Id*. at 207. *Ibanez* is especially instructive here as, again, the freedom of speech claim set forth in Count II is not a compelled-speech claim. Thus, Plaintiffs' contention that somehow *Vlaming* provides an "exception" which dictates that this court analyze Count II differently than Count I, is flawed and should be rejected. Just as Plaintiffs have failed to state a claim for violation of First Amendment free speech in Count I, so, too, have they failed to state a claim for violation of freedom of speech under the Virginia Constitution (Count II).

## C. Plaintiffs Have Not Stated a Claim for Religious Discrimination (Counts III, IV, V and VI).

Count III is a claim for religious discrimination brought against the School Board under 42 U.S.C. § 1983. In their opposition, Plaintiffs now characterize this claim as an "equal protection

religious discrimination claim." ECF No. 86, p. 14. Plaintiffs ignore the fact that to state a claim under 42 U.S.C. § 1983 against a school board for violation of the Equal Protection Clause, a plaintiff must assert the alleged discrimination resulted from a "municipal custom, policy, or practice." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257-58, 129 S. Ct. 788, 797, 172 L. Ed. 2d 582 (2009) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978)); *see also Roe v. Charlotte-Mecklenburg Bd. of Educ.*, 2020 U.S. Dist. Lexis 173949, at * 26 (W.D.N.C. Sept. 22, 2020). Plaintiffs have not stated facts which indicate that LCPS's actions as it pertains to them were the product of a custom, policy or practice of the School Board. This omission is fatal to Count III.

Plaintiffs also fail to sufficiently plead facts to establish a violation of the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "It is 'essentially a direction that all persons similarly situated should be treated alike.'" *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 606 (4th Cir. 2020) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)). To establish a violation of the Equal Protection Clause, "a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus."[2] *Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011).

---

[2] LCPS addresses this argument as Plaintiffs have raised it. But it remains the case that Count III must pass muster under a *Monell* analysis, which is impossible as Plaintiffs do not appear to understand that and have not pled facts to establish discrimination by LCPS based on a custom, policy or practice of the School Board.

Here, Plaintiffs contend that they have pled facts to establish that they were similarly situated to Respondent 3 but were treated differently. *See* ECF No. 86, pp. 14-15.[3] In making this argument, Plaintiffs ignore the Title IX documents which are before the court, and which may be considered without converting the motion to dismiss into a motion for summary judgment. As LCPS argued in its opening brief, although the allegations against Respondent 3 originally mirrored the allegations against Plaintiffs, the findings did not support a claim against Respondent 3. First, in contrast to the vast witness testimony and audio/video supporting Complainant's allegations against Plaintiffs, not a single witness or piece of evidence supported any claim that Respondent 3 made any comment to or about Complainant in the boys' locker room on March 21, 2025, or at any time. To the extent that it was alleged that Respondent 3 made a single comment that Complainant, was "a disappointment to humanity," in a classroom, he denied doing so and not a single corroborating witness was located. The Complainant also later clarified that it was not Respondent 3 who had threatened to "beat his ass." ECF No. 29-4, p. 7. Thus, LCPS determined, and Plaintiffs were advised, "that the lack of corroborating evidence related to [Respondent 3] was distinguishable from the volume of evidence against the appealing Respondents[/Plaintiffs], which included corroboration of the alleged misconduct by their own statements and statements of others." ECF No. 29-4, p. 7. These facts make clear that there is insufficient support to establish that Plaintiffs and Respondent 3 were similarly situated or "in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992).

---

[3] In its motion to dismiss, LCPS challenged Plaintiffs' claim for equal protection religious discrimination based on the assertion that they were similarly situated to Complainant and treated differently. ECF No. 70, p. 20. Plaintiffs fail to address this in their briefing, which amounts to a waiver of the claim. *See, e.g. Grayson O Co.,* 856 F.3d at 316; *Stevenson*, 743 F.3d at 416.

Further, Plaintiffs plead no facts to plausibly demonstrate that any unequal treatment was the result of intentional or purposeful discrimination. None of the allegations in the Amended Complaint suggest that LCPS acted with an intent to discriminate against Plaintiffs because of their Christian beliefs. *See Burke v. Clarke*, 842 F. App'x 828, 838 (4th Cir. 2021) (affirming the dismissal of an equal protection claim where the plaintiff's allegations failed to establish that the VDOC applied a policy with discriminatory intent against Rastafarians); *Fluker v. King*, 679 F. App'x 325, 329 (5th Cir. 2017) (concluding that prison officials were properly granted summary judgment on an equal protection claim since the plaintiff did "not point[] to any evidence indicating that [the defendants'] motivation for treating him differently was invidious religious discrimination"). Plaintiffs must recognize this omission because in their opposition brief, they do not even argue that they have pled facts to establish that LCPS's alleged unequal treatment of them as compared to Respondent 3 was the result of intentional or purposeful discrimination. Plaintiffs' conclusory assertions of discrimination based on religion are insufficient to withstand dismissal for failure to state a claim. *See Pronin v. Johnson*, 628 F. App'x 160, 164 (4th Cir. 2015) ("Though a valid claim for a violation of equal protection need not allege discrimination as the defendant's sole motive, it must allege the requisite discriminatory intent with more than mere conclusory assertions.").

Count IV arises under Article I, Section 11 of the Virginia Constitution. LCPS has challenged this claim because, among other reasons, this provision is not self-executing and does not authorize a private cause of action. Plaintiffs respond by citing a recent case from the Court of Appeals of Virginia which held that the first paragraph of § 11 is self-executing. *See Ibanez,* 80 Va. App. at 191. The *Ibanez* decision was based on the Court of Appeals' evaluation of § 11 in light of the factors enunciated in *Robb v. Shockoe Slip Found.*, 228 Va. 678, 324 S.E.2d 674 (1985).

The very same day that *Ibanez* was decided, the Western District of Virginia decided *McKiver v. Ireland*, 2024 U.S. Dist. LEXIS 28650 (W.D. Va. Feb. 20, 2024). In *McKiver*, also applying the *Robb* factors, the court held that Article I, Section 11 is not self-executing because "'it merely recites principles, [and] provides no 'rules by means of which those principles may be given the force of law.' *Gray v. Rhoads*, 2001 Va. Cir. LEXIS 300, 2001 WL 34037320, at *5 (Va. Cir. 2001)." *Id.* at 15-16; *see also Askew v. Rosado*, 2025 U.S. Dist. LEXIS 231093, at * 16 (E.D. Va. Nov. 24, 2025) (dismissing claim brought under Article 1, § 11 of the Virginia Constitution because the provision is not self-executing). While decisions of the highest state court based on issues arising under a state constitution may be binding on federal courts, *see Hinkle v. Skeen*, 117 F. Supp. 846, 848 (N.D. W.Va. Jan. 20, 1954), the same is not true of decisions from inferior state court tribunals. *Ibanez*, which is not from the state's highest court, is not binding on this court, and LCPS submits that the reasoning of *McKiver* and *Askew*, which are fully supported by the many other cases cited by LCPS, makes clear that Article I, Section 11 of the Virginia Constitution is not self-executing, and Plaintiffs may not bring a private cause of action based upon it.

Count V is brought under Virginia Code § 57-2.02. LCPS has challenged the claim, and Plaintiffs again ignore the substance of that challenge, instead arguing that LCPS "ignores the most recent decisions in *Vlaming* and *Loudoun Cnty. Sch. Bd. v. Cross, 2021 WL 9276274* (Va. Aug. 30, 2021)." ECF No. 86, p. 15. Plaintiffs maintain that if those decisions are applied here, Count V withstands a motion to dismiss. Plaintiffs are incorrect.

The facts of *Vlaming* and this case are markedly different. In *Vlaming*, the main allegation was that Vlaming was fired as a teacher for referring to a biologically female student only by the student's preferred name instead of by both the preferred name and government-mandated masculine pronouns. Vlaming alleged that he could not comply with the compelled-speech

mandate because it coerced him into violating his conscience by endorsing an ideology at odds with his sincerely held religious beliefs. The court held that "[t]his allegation, when placed in the context of all other supporting facts and supporting inferences in Vlaming's 39-page complaint, asserts a prima facie claim of a statutory violation of Code § 57-2.02(B)." *Id*. at 561. Here, the facts are not similar at all. There is no assertion that LCPS compelled Plaintiffs to refer to Complainant in a certain way or coerced Plaintiffs to engage in any activity which endorsed an ideology at odds with sincerely held religious beliefs. They were simply not permitted to verbally attack Complainant, and they were permitted to use a locker room which afforded them privacy if they opposed Complainant using the boys' locker room. Plaintiffs have not pled facts which show that LCPS substantially burdened the free exercise of religion as was the case in *Vlaming*, which is a necessary element of a claim under the Virginia Religious Freedom Restoration Act ("VRFRA").

Plaintiffs also mischaracterize the holding of *Loudoun Cnty. Sch. Bd. v. Cross*, 2021 Va. LEXIS 141 (Va. Aug. 30, 2021). Plaintiffs contend that the opinion – ruling on an interlocutory appeal of a circuit court decision granting a preliminary injunction – "held that an LCPS teacher, who was suspended for speaking out against Policy 8040 and its implementation, had sufficiently alleged entitlement to relief under § 57-2.02(B) because 'his views and expression related to gender-identity education policy are motivated by his sincerely held religious beliefs, are avenues through which he exercises his religious faith, and constitute a central component of his sincerely held religious beliefs.'" ECF No. 86, p. 16. There was no such holding. The quote which Plaintiffs

cite is a summation of Cross's claims, not a ruling by the court, and the Court made no finding

whether a claim had been adequately established under Virginia Code section 57-2.02.[4]

Plaintiffs, in a footnote, also take issue with LCPS's argument that Va. Code § 57-2.02(E)

permits LCPS to discipline Plaintiffs for violating sexual harassment and hostile work environment

policies without running afoul of Va. Code § 57-2.02(E). *See* ECF No. 86, p. 16, fn. 5. Plaintiffs

maintain that this argument was "flatly rejected" in *Vlaming*. Plaintiffs' argument is without merit.

In *Vlaming*, the School Board argued that, as a matter of law, VRFRA categorically exempts some

government actions from its reach. *Vlaming*, 302 Va. at 561. The Virginia Supreme Court rejected

that argument without determining the meaning or scope of Va. Code § 57-2.02(E). *Id*. at 562-563.

Instead, the Virginia Supreme Court held, "[w]e need not demark with specificity the conceptual

boundaries of Code § 57-2.02(E) to answer [the issue before the court].... Whatever the outer

reaches of Code § 57-2.02(E), we find little difficulty in concluding that the School Board's

termination of Vlaming's employment (assuming, as we must, that his allegations are true) does

not qualify under subsection E as a wholesale exemption from the VRFRA's reach." *Id*. at 563.

Here, in contrast, Plaintiffs were disciplined in a school setting for violating school policies

---

[4] In fact, in reviewing the circuit court's decision granting the preliminary injunction, the Virginia
Supreme Court noted:

> The [circuit] court found Cross' likelihood of success on his free exercise claims
> was less clear because, although "intertwined" with his free speech claims, the
> "direct facts in support of th[e] claim[s] are more vague." However, the court
> determined, the Defendants had a premature and misplaced expectation that Cross
> would violate the transgender policy if it was adopted because, as the court noted
> during the hearing, Cross could conceivably avoid using gender pronouns for any
> students. After commenting that establishing a likelihood of success on the merits
> "is a relatively low threshold when compared to other legal standards that fix a
> much higher bar," the court found Cross made the requisite showing.

*Loudoun Cnty. Sch. Bd. v. Cross*, 2021 Va. LEXIS 141, at 15 (Va. Aug. 30, 2021).

prohibiting sexual harassment and for creating a hostile environment. Va. Code § 57-2.02(E) does not prohibit that action and, in fact, permits LCPS to discipline students without running afoul of the VRFRA. Were it otherwise, LCPS would be hamstrung in managing student behavior anytime a student, after-the-fact, as here, claimed that their violation of school policy had a religious element to it. This is not the law.

Plaintiffs also take issue with LCPS's argument that Count VI – a religious discrimination claim brought under Article 1, Section 16 of the Virginia Constitution – is not viable as that section is not self-executing and does not provide for a private right of action. Plaintiffs claim that LCPS's position is "unsupported by the relevant authority," disregarding an express finding to this effect from a court within this Circuit. See *Bayadi v. Clarke*, 2017 U.S. Dist. LEXIS 156356, * 23 (W.D. Va. Sept. 25, 2017) (granting a 12(b)(6) motion to dismiss a claim brought under Article 1, § 16 of the Virginia Constitution because this section is not self-executing and does not provide an independent basis for a private right of action). Plaintiffs then cite to *Vlaming* and *Cross* for support for their argument that Article 1, Section 16 of the Virginia Constitution is self-executing. But, neither case stands for that proposition. They do not so hold expressly or by implication. And, in *Askew*, decided less than a month ago, this court recognized that the Virginia Supreme Court has never addressed whether Article I, § 16 is self-executing. *Askew*, 2025 U.S. Dist. LEXIS 231093, at * 16. This is correct and completely negates Plaintiffs' argument that *Vlaming* and/or *Cross* somehow have decided this issue. Article 1, Section 16 of the Virginia Constitution is not self-executing, thus, Plaintiffs have not stated a claim under Count VI.

### D. Plaintiffs Have Not Pled Sufficient Facts to State an Equal Protection Sex Discrimination Claim (Counts VII, VIII and IX).

Plaintiffs' equal protection sex discrimination claims remain unclear and tenuous at best.[5] As LCPS pointed out in its motion to dismiss, School Board Policy 8040, which appears to be at the core of Plaintiffs' equal protection sex discrimination claim, treats all students the same. It does not provide preferential treatment to transgender students. Instead, it allows **all** students to use restrooms and locker rooms which correspond with their gender identities.[6] The policy also provides for alternative spaces for any student who seeks more privacy. Plaintiffs even plead that they were offered an alternative space when they raised concerns with Complainant exercising his right to use the boys' locker room. Contrary to what Plaintiffs assert, the policy does not give preferential treatment to students "who merely claim to be transgender or gender expansive." *See* ECF No. 86, p. 18. It is difficult to understand how Plaintiffs draw this conclusion. They point to no language in the policy which supports this argument. They also point to no case law which supports the notion that this policy violates their constitutional rights. The case law is to the contrary in this Circuit. *See Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020).[7]

---

[5] It is also worth noting that LCPS is unaware of any case in which a cisgender plaintiff has alleged or been found to state a claim that his equal protection rights were violated because he was treated less favorably than a transgender student. *See also Lee v. Poudre Sch. Dist. R-1*, 2023 U.S. Dist. LEXIS 226003, at * 54 (D. Co. Dec. 19, 2023) (also stating that it is unaware of any case in which a cisgender student has stated a claim that his equal protection rights were violated because he was treated less favorably than a transgender student).

[6] Plaintiffs may argue that the use of the term "gender identity" in School Board Policy 8040 is specific to transgender students. It is not – it is a term that applies to all students. In *Doe v. Hanover Cnty. Sch. Bd.*, 2024 U.S. Dist. LEXIS 146940 (E.D. Va. Aug. 16, 2024), this court expressly found that transgender and cisgender girls are similarly situated in that they share a gender identity. *Id.* at * 21. Thus, there can be no argument that LCPS's use of the term "gender identity" in School Board Policy 8040 is a reference only to transgender students.

[7] Plaintiffs criticize LCPS's reliance on *Grimm*, stating in a footnote that "LCPS fails to acknowledge that *Grimm* faces a significant risk of being overturned by the Supreme Court this term when it hears arguments in January in the case of *B.P.J.*, …." ECF No. 86, p. 19, fn. 7. LCPS has no idea how the Supreme Court may rule in *B.P.J.*, nor do Plaintiffs. What LCPS does know, as the Fourth Circuit stated expressly in *Doe v. South Carolina*, 2025 U.S. App. LEXIS 20849 (4th

13

Plaintiffs also argue that LCPS misunderstands *Grimm* and applies it too broadly. It goes without saying that LCPS and Plaintiffs are not likely to ever reach agreement on the holding of *Grimm*. But the very first paragraph of the opinion provides a clear holding:

> At the heart of this appeal is whether equal protection and Title IX can protect transgender students from school bathroom policies that prohibit them from affirming their gender. We join a growing consensus of courts in holding that the answer is resoundingly yes.

*Id.* at 593.

This holding makes clear that when a school district has policies in place – whether they be bathroom or locker room[8] policies – which prohibit transgender students from affirming their gender, equal protection and Title IX are implicated. To avoid equal protection and Title IX violations, policies, like School Board Policy 8040, which allow each and every student the same right – to use a bathroom or locker room that conforms with gender identity – are legally required.

Plaintiffs also maintain that they have stated an equal protection violation in that LCPS fully investigated Complainant's Title IX complaint but dismissed their complaint for conduct that occurred during the same time frame. ECF No. 86, p. 21. Plaintiffs suggest that since they have established the complaints were made during the same time frame, they have pled enough to withstand a motion to dismiss. They are incorrect.

"To succeed on an equal protection claim, a plaintiff must . . . demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment

---

Cir. Aug. 15, 2025), is that "*Grimm* remains the law of this Circuit and is thus binding on all the district courts within it." *Id.* at * 19 (citing *Gibbons v. Gibbs*, 99 F.4th 211, 213 (4th Cir. 2024)).

[8] Plaintiffs suggest that even if *Grimm* is controlling law in this Circuit, it only applies to policies relating to bathroom use, not locker rooms. *Grimm* does not so state, and the fact that it cites to and relies on cases involving locker room policies when finding Grimm was subjected to sex discrimination because he was viewed as failing to conform to sex stereotype propagated by the school board policy severely undercuts Plaintiffs' argument. *Grimm*, 972 F.3d at 608-609.

was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). To demonstrate that a plaintiff and the comparator are "similarly situated," the plaintiff "'must show an extremely high degree of similarity between [himself] and the persons to whom [he] compare[s]'" himself." *Willis v. Town of Marshall, N. Car*olina, 275 F. App'x 227, 233 (4th Cir. 2008) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).

Here, Plaintiffs fail to make such a showing in their Amended Complaint. That is because the allegations which Complainant made against Plaintiffs were starkly different than the retaliatory Title IX complaints which Plaintiffs filed against Complainant. Complainant asserted that, for a prolonged period of time, culminating with the incident in the locker room where Complainant captured a video, Plaintiffs attacked him due to his gender identity. This claim is one which implicates Title IX as "it is impossible to discriminate against a person for being … transgender without discriminating against that individual based on sex." *Grimm*, 972 F.3d at 616. In contrast, what Plaintiffs complained about, which did not implicate Title IX, is that Complainant, on a singular occasion, captured a video in the locker room. There is no allegation that Complainant's actions were motivated by sex, nor are there allegations that the video captured Plaintiffs (or anyone else) in a state of undress or served to sexually harass Plaintiffs. As a result, since Plaintiffs' complaints did not implicate Title IX, they were not investigated as potential Title IX violations. Plaintiffs have failed to plausibly plead facts which demonstrate that their complaints were treated differently from complaints which were similar. So, too, Plaintiffs fail to plead facts which show that the difference in treatment was the result of intentional or purposeful discrimination. In fact, in their briefing, Plaintiffs do not even advance this argument.

With respect to Count VIII, which is brought under Virginia Constitution, Article I § 11, Plaintiffs contend that LCPS is wrong in arguing that this must be dismissed because this provision

is not self-executing. Plaintiffs present no compelling argument in opposition to LCPS's position. Instead, they point again to *Vlaming*, which does not address this issue, and a transcript purportedly from a circuit court case in Fairfax, Virginia, *Doe v. Fairfax Cnty. Sch. Bd.*, No. 24-3171 (Fairfax Cnty. Cir. Ct. Dec. 6, 2024), which they have neither filed nor shared with the court or counsel. Regardless of whatever that transcript might state, it has no binding effect. Instead, this court should follow *McKiver v. Ireland*, 2024 U.S. Dist. LEXIS 28650 (W.D. Va. Feb. 20, 2024), and *Askew v. Rosado*, 2025 U.S. Dist. LEXIS 231093, at * 16 (E.D. Va. Nov. 24, 2025), both of which hold that claims brought under Article 1, § 11 of the Virginia must be dismissed because that provision is not self-executing and provides for no private cause of action.

### E. Plaintiffs Have Not Pled Sufficient Facts to State a Claim Under Title IX (Count IX).

Plaintiffs contend that LCPS violates Title IX by having a policy in place which does not guarantee them a locker room available only to cisgender males. That is, Plaintiffs continue to maintain that so long as students are permitted to use locker rooms which correspond to gender identity, which allows a transgender student to access the boys' locker room, Plaintiffs' Title IX rights are violated. LCPS disputes this notion based on the abundant case law it has cited which makes clear that discrimination based on gender identity is discrimination based on sex under Title IX. That means that LCPS must have policies in place which allow just what Plaintiffs oppose – the right for all student to access facilities that correspond with their gender identity. LCPS has cited the legal authorities in its opening brief which make clear that this point is well-settled.

Plaintiffs do not point to any caselaw which contradicts LCPS's position, but instead suggest that because the Supreme Court is slated to hear argument in *West Virginia v. B.P.J.* next month, the issue of whether Title IX protections extend beyond biological sex is unsettled. That

argument is flawed. The fact that the Supreme Court will hear argument which may (or may not) impact the law as it now stands does not excuse LCPS or courts in this Circuit from following binding law. The Fourth Circuit made this clear in *Doe v. South Carolina*, 2025 U.S. App. LEXIS 20849 (4th Cir. Aug. 15, 2025), where it stated that "*Grimm* remains the law of this Circuit and is thus binding on all the district courts within it." *Id.* at *19.

## F. Plaintiffs Have Not Pled Sufficient Facts to State a Due Process Claim (Counts X and XI).

In responding to LCPS's motion to dismiss the due process claims, Plaintiffs attempt to incorporate, for the first time, a criticism of School Board Policy 8040. However, as LCPS stated in its opening brief, the only policies or regulations at which Plaintiffs take aim are School Board Policy 8035, its accompanying Regulation 8035, and School Board Policy 8210. "[I]t is axiomatic[, however,] that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1107 (7th Cir. 1984) (citing *Jacobson v. Peat, Marwick, Mitchell & Co*., 445 F. Supp. 518, 526 (S.D.N.Y. 1977)). Thus, a due process attack on School Board Policy 8040 is not before the court.

Plaintiffs also do not attempt to address LCPS's argument that the Amended Complaint fails to identify with any specificity what provisions of School Board Policy 8035, its accompanying Regulation 8035, and School Board Policy 8210 are purportedly so vague, ambiguous and/or contradictory that ordinary persons must guess at their meaning, will differ as to the regulation's application, and do not have a reasonable opportunity to know what is prohibited. Instead, apparently recognizing that the Amended Complaint is deficient in this respect, they attempt, through their briefing, to rectify the omission. Again, this is not permitted. *Id.*

Plaintiffs also fail to address any of the caselaw upon which LCPS relied on in its motion to dismiss to establish that the term "gender identity" is discrimination based on sex under Title IX and is not unconstitutionally vague. Instead, Plaintiffs launch into a convoluted argument as to why – in their subjective opinion – a high school student of ordinary intelligence would not understand that launching ad hominem attacks at a particular transgender student would violate School Board Policy 8035 and Title IX. Plaintiffs cite to no supporting caselaw, and their arguments are without merit, especially given the caselaw which LCPS has relied upon in its briefing. Plaintiffs' legally unsupported arguments should be rejected, and the due process claims (Counts X and XI) should be dismissed as they do not state claims which are plausible.

### G. Plaintiffs Have Not Stated a Claim for Conspiracy Premised on First Amendment Retaliation (Count XII).

Count XII is labeled "Conspiracy (42 U.S.C. § 1983)." It asserts that LCPS conspired with Loudoun4All "to injure, oppress, threaten, and/or intimidate the Plaintiffs in the free exercise and/or enjoyment of their rights, including their rights to petition the government for redress of grievances by filing a Title IX complaint and filing a lawsuit in this Court." ECF No. 53, ¶ 457. Plaintiffs make passing reference to "retaliation" in paragraph 458 of the Amended Complaint, but it was not clear that they were pursuing a First Amendment retaliation claim, as they never stated so directly. In their briefing, ECF No. 86, p. 27, Plaintiffs clarify that the conspiracy claim is, in fact, a First Amendment retaliation claim. In light of this, it is inexplicable why Plaintiffs ignore LCPS's argument that ""where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory.'" *Munive v. Fairfax Cty. Sch. Bd.*, 2019 U.S. Dist. LEXIS

94757, * 18 (E.D. Va. June 5, 2019) (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676,687 (4th Cir. 2000). Here, the only alleged retaliation is false and defamatory statements published by Loudoun4All, none of which threaten, coerce or intimate that punishment, sanction or adverse regulatory action would imminently follow. As such, as a matter of law, the statements which Plaintiffs label defamatory and retaliatory do not adversely affect Plaintiffs' First Amendment rights, and no First Amendment retaliation claim has been stated. This should lead the court to dismiss the conspiracy claim easily and swiftly.

Plaintiffs additionally fail to recognize that to state a First Amendment retaliation claim against the government, they must demonstrate that claim arose from an official policy, statement, ordinance, regulation or decision pursuant to *Monell. See Greensboro Pro. Fire Fighters Ass'n, Loc. 3157 v. City of Greensboro,* 64 F.3d 962, 964-65 (4th Cir. 1995); *I.P. by Newsome v. Pierce,* No. 5:19-CV 228-M, 2020 WL 1231809, at *6 (E.D.N.C. Mar. 9, 2020) (citations omitted). Plaintiffs identify no official policy, statement, ordinance, regulation or decision by LCPS which serves as the basis for their retaliation claim. This, too, dooms the First Amendment retaliation claim under 42 U.S.C. § 1983.

Plaintiffs further maintain that by naming two corporate entities as co-conspirators, they have met their obligation to adequately identify the alleged conspirators. After all, according to Plaintiffs, corporations are persons under the law, and a conspiracy only requires two or more persons. ECF No. 86, p. 29. Not surprisingly, this argument is not supported by any legal authority. In contrast, LCPS has cited to legal authority which makes clear that a party claiming a conspiracy must identify the alleged conspirators with some particularity. *See A Soc'y Without a Name v. Virginia,* 655 F.3d 342, 347 (4th Cir. 2011) and *Moschetti v. Nixon Peabody, LLP,* 2024 U.S. Dist. LEXIS 95757, * 35 (E.D. Va. May 29, 2024); *see also Ghiles v. City of Chi. Heights,* 2016 U.S.

Dist. LEXIS 17685, at * 7 (N.D. Il. Feb. 12, 2016) (finding inadequate a conspiracy claim which named a municipal entity as the co-conspirator and did not identify the individuals within the conspiracy); *Harris v. Kessler*, 2020 U.S. Dist. LEXIS 223159, at * 8 (W.D. Va. Nov. 30, 2020) (granting 12(b)(6) motion to dismiss where complaint failed to allege **with specificity** the persons who agreed to the alleged conspiracy). The notion put forth by Plaintiffs that naming two corporate entities as co-conspirators is sufficient to identify with specificity who allegedly conspired is inconsistent with well-established caselaw and does not suffice to state a conspiracy claim.

Plaintiffs also erroneously state that "LCPS does not argue that the Plaintiffs have not plausibly alleged that LCPS and Loudoun for All acted jointly and in concert and that an act was done in furtherance of the conspiracy." ECF No. 86, p. 20. LCPS makes these arguments expressly. *See* ECF No. 70, pp. 28-29. The fact is that the Amended Complaint falls far short of establishing a viable claim for First Amendment retaliation. Instead, Plaintiffs attempt to cobble together a claim based on nothing more than speculation and conjecture, which is not sufficient to withstand a 12(b)(6) motion to dismiss. *See A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011) (finding that plaintiff's allegations were insufficient to support a meeting of the minds because the plaintiff "fail[ed] to allege with any specificity the persons who agreed to alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made"). The conspiracy claim (Count XII) is woefully deficient, and it should be dismissed.

WHEREFORE, considering the arguments set forth in its opening brief and above, Defendant, Loudoun County School Board, respectfully requests that the court grant its motion and dismiss all claims with prejudice.

**LOUDOUN COUNTY SCHOOL BOARD**
By Counsel


_____/s/_____
Heather K. Bardot, Esquire
VSB No. 37269
Anna G. Zick, Esquire
VSB No. 86057
McGAVIN, BOYCE, BARDOT
  THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
Telephone:      (703) 385-1000
Facsimile:      (703) 385-1555
hbardot@mbbtklaw.com
azick@mbbtklaw.com
Counsel for Defendant


## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of December, 2025, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Andrew Block
Ian Prior
Nicholas R. Barry
Robert A. Crossin
America First Legal Foundation
611 Pennsylvania Avenue, SE, #231
Washington, D.C. 20003
(202) 836-7958
andrew.block@aflegal.org
ian.prior@aflegal.com
nicholas.barry@aflegal.com
bobby.crossin@aflegal.com
Counsel for Plaintiff

Joshua A. Hetzler, Esq. (VSB No. 89247)
Michael B. Sylvester, Esq. (VSB No. 95023)
FOUNDING FREEDOMS LAW CENTER
707 E. Franklin Street
Richmond, VA 23219
michael@foundingfreedomslaw.org
josh@foundingfreedomslaw.org
Co-Counsel for Plaintiff

Ellis L. Bennett
Dunlap Bennett & Ludwig PLLC
211 Church Street SE
Leesburg, Virginia 20175
ebennett@dbllawyers.com
Co-Counsel for Plaintiff

        _____/s/_____
        Heather K. Bardot, Esquire
        VSB No. 37269
        Anna G. Zick, Esquire
        VSB No. 86057
        McGAVIN, BOYCE, BARDOT
         THORSEN & KATZ, P.C.
        9990 Fairfax Boulevard, Suite 400
        Fairfax, Virginia 22030
        Telephone:    (703) 385-1000
        Facsimile:    (703) 385-1555
        hbardot@mbbtklaw.com
        azick@mbbtklaw.com
        Counsel for Defendant