# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | | |
|---|---|---|
| **S.W., by his parents and next friends,** | ) | |
| **SETH WOLFE and AMANDA WOLFE,** *et al.*, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LOUDOUN COUNTY SCHOOL BOARD,** | ) | **Case No. 1:25-cv-1536-LMB-WEF** |
| | ) | |
| *Defendant.* | ) | |

## DEFENDANT'S OPPOSITION TO THE
## UNITED STATES' MOTION TO INTERVENE

# TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................................ 1

**BACKGROUND** ................................................................................................................. 3

**ARGUMENT** ...................................................................................................................... 6

   I.   **THE UNITED STATES LACKS STATUTORY AUTHORITY TO INTERVENE IN THE MANNER PROPOSED** ....................................................................................... 6

     A.  42 U.S.C. § 2000h-2 Permits Intervention Only When the Government Seeks to Enforce an Equal Protection Claim ................................................................. 7

     B.  The Government's Proposed Complaint Does Not Assert an Equal Protection Claim ......................................................................................................... 9

  II.  **THE UNITED STATES HAS NOT ESTABLISHED INDEPENDENT ARTICLE III STANDING FOR THE DIFFERENT AND BROADER RELIEF IT SEEKS** ........ 12

     A.  The United States Seeks Different Relief from Plaintiffs ........................................... 12

     B.  The United States Has Not Established Article III Standing ...................................... 13

 III.  **PERMISSIVE INTERVENTION SHOULD LIKEWISE BE DENIED** .................. 15

**CONCLUSION** ................................................................................................................. 17

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                 **Page(s)**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez,*
    458 U.S. 592 (1982)..........................................................................................................14

*Allen v. Cnty. Sch. Bd. of Prince Edward Cnty.,*
    28 F.R.D. 358 (E.D. Va. 1961) .....................................................................................16

*Am. All. for Equal Rts. v. Raoul,*
    795 F. Supp. 3d 1073 (N.D. Ill. 2025), *appeal pending* ..................................12, 14

*Antietam Battlefield KOA v. Hogan,*
    501 F. Supp. 3d 339 (D. Md. 2020), *aff'd in part, appeal dismissed in part,*
    2022 WL 1449180 (4th Cir. May 9, 2022) ...................................................................12

*B.P.J. ex rel. Jackson v. W. Va. State Bd. of Educ.,*
    98 F.4th 542 (4th Cir. 2024), *cert. granted*, 2025 WL 1829164 (July 3, 2025) .................1, 10

*Bruce & Tanya & Assocs. v. Bd. of Supervisors of Fairfax Cnty., Va.,*
    2018 WL 10425625 (E.D. Va. Oct. 2, 2018)..................................................................15

*In re Chapman,*
    166 U.S. 661 (1897)...........................................................................................................8

*Chesapeake Ranch Water Co. v. Bd. of Comm'rs of Calvert Cnty.,*
    401 F.3d 274 (4th Cir. 2005) .............................................................................................7

*Com. of Va. v. Westinghouse Elec. Corp.,*
    542 F.2d 214 (4th Cir. 1976) ...........................................................................................16

*Farm Lab. Org. Comm. v. Stein,*
    2018 WL 3999638 (M.D.N.C. Aug. 21, 2018)..............................................................16

*Frederick Douglass Found., Inc. v. District of Columbia,*
    82 F.4th 1122 (D.C. Cir. 2023)........................................................................................11

*Grimm v. Gloucester Cnty. Sch. Bd.,*
    972 F.3d 586 (4th Cir. 2020)..............................................................................................3

*Johnson v. Knight,*
    2019 WL 4572807 (S.D. Ind. Sept. 19, 2019) ...............................................................10

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992).........................................................................................................13

*Melendres v. Arpaio,*
    2015 WL 11071095 (D. Ariz. Aug. 13, 2015).................................................................7

*Morrison v. Garraghty*,
239 F.3d 648 (4th Cir. 2001) ........................................................................................11

*N.C. State Conf. of NAACP v. Cooper*,
332 F.R.D. 161 (M.D.N.C. 2019) ..................................................................................16

*New Process Steel, L.P. v. N.L.R.B.*,
560 U.S. 674 (2010) ........................................................................................................9

*North Dakota v. Heydinger*,
2013 WL 593898 (D. Minn. Feb. 15, 2013) ..................................................................16

*Ohio Valley Env't Coal., Inc. v. McCarthy*,
313 F.R.D. 10 (S.D. W. Va. 2015) ................................................................................15

*Primerica Life Ins. Co. v. Cruz*,
2023 WL 373886 (N.D. Tex. Jan. 24, 2023), *appeal dismissed*, 2023 WL
6237270 (5th Cir. June 14, 2023) ....................................................................................9

*Stuart v. Huff*,
706 F.3d 345 (4th Cir. 2013) .........................................................................................15

*Stuhr v. United States Army Corps of Eng'rs*,
2024 WL 1880462 (D.S.C. Apr. 29, 2024) ...................................................................15

*Town of Chester v. Laroe Ests., Inc.*,
581 U.S. 433 (2017) ................................................................................................2, 9, 12

*United States v. City of Phila.*,
644 F.2d 187 (3d Cir. 1980) ..........................................................................................14

*United States v. Mattson*,
600 F.2d 1295 (9th Cir. 1979) .......................................................................................14

*United States v. Solomon*,
419 F. Supp. 358 (D. Md. 1976), *aff'd*, 563 F.2d 1121 (4th Cir. 1977) .....................14

*Washington v. FDA*,
108 F.4th 1163 (9th Cir. 2024) ...................................................................................9, 13

*White v. Gaston Cnty. Bd. of Educ.*,
2017 WL 220134 (W.D.N.C. Jan. 18, 2017) .................................................................12

*Zentgraf v. Texas A & M Univ.*,
509 F. Supp. 183 (S.D. Tex. 1981) ..................................................................................8

**Pleadings**

*Am. All. for Equal Rts. v. Raoul,*
No. 1:25-cv-00669, Dkt. No. 17-2 (N.D. Ill. filed Mar. 4, 2025)............................................8

*Etienne v. Ferguson,*
No. 3:25-cv-5461, Dkt. No. 122 (W.D. Wash. filed June 23, 2025).......................................8

*NAACP v. Fitch,*
No. 3:23-cv-272, Dkt. 69-2 (S.D. Miss. filed July 12, 2023) .................................................8

*Pedersen v. South Dakota High Sch. Activities Assoc.,*
No. 4:00-cv-04113, Dkt. No. 26 (D.S.D. filed Nov. 15, 2000) ...............................................8

*Tangipa v. Newsom,*
No. 2:25-cv-10616, Dkt. 28-2 (C.D. Cal. filed Nov. 13, 2025)...............................................8

**Statutes**

20 U.S.C. § 1681, *et seq.*..................................................................................................1, 8

28 U.S.C. § 1345 .....................................................................................................................8

42 U.S.C. § 2000h-2 ...................................................................................................... *passim*

52 U.S.C. § 10308(d) ..............................................................................................................8

U.S. Const. amend. I ..................................................................................................... *passim*

U.S. Const. amend. XIV .................................................................................................1, 7, 8, 11

U.S. Const. art. III ........................................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 24(a) .................................................................................................6, 7, 10, 12

Fed. R. Civ. P. 24(b) ........................................................................................................3, 15

**Other Authorities**

Asst. Att'y Gen. Dhillon (@AAGDhillon), X (Dec. 9, 2025, 20:08 ET),
https://x.com/AAGDhillon/status/1998560496602263626 .................................................6, 11

Department of Justice, Office of Public Affairs, Press Release, (Monday, Dec. 8,
2025), https://www.justice.gov/opa/pr/justice-department-sues-loudoun-
county-violating-equal-protection-christian-students ..................................................2, 5, 6, 10

Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1914 (3d ed.)........................................................9

iv

## INTRODUCTION

This case involves fact-specific claims concerning the Loudoun County School Board's ("School Board") decision, in accordance with school policies and regulations, to discipline two students for their inappropriate and harassing conduct.  The Government's intervention motion seeks to transform the case into a wide-ranging national policy dispute focused on different and much broader questions of constitutional law.  The United States has limited authority to intervene in cases raising equal protection claims, and what the Government proposes here far exceeds that authority.  In opposing intervention, the School Board merely asks that the Court act within the bounds of its discretion to enforce the law.

Through 42 U.S.C. § 2000h-2, a provision of the Civil Rights Act of 1964, Congress gave the United States Attorney General the power, subject to certain conditions, to intervene as of right in litigation raising Fourteenth Amendment equal protection claims.  The United States has invoked this provision for over six decades.  Yet what the Government seeks to do here is unusual, and improper.  Rather than using this provision to advance its own equal protection claims alongside those of the underlying litigants, the United States seeks to leverage this statutory authority to intervene with an altogether different claim—a claim that challenges a public school system policy not on equal protection grounds but because the policy allegedly "burdens the[] First Amendment right to free exercise [of religion]."  ECF 80-1, Proposed Compl. ¶ 193.  According to the Government's proposed complaint, School Board Policy 8040 is "unconstitutional" because it limits "religious expression" and punishes "religious beliefs."  *Id.* ¶ 192.  Fourteenth Amendment equal protection claims can arise in the context of rights protected by the First Amendment, including where individuals or groups are "*treated differently*" on the basis of religion or religious expression.  *B.P.J. ex rel. Jackson v. W. Va. State Bd. of Educ.*, 98 F.4th 542, 555 (4th Cir. 2024)

(emphasis added), *cert. granted*, 2025 WL 1829164 (July 3, 2025) (No. 24-43). But the United States here wrongly suggests that *any* "government action that . . . burdens a fundamental right" implicates the Equal Protection Clause, a position for which the Government cites no legal support. ECF 80-1, ¶ 185.

Although it uses "equal protection" language and labels, the sole count pled by the Government's proposed complaint fundamentally does not complain of differential treatment. As the Government's own press release states, Policy 8040 applies to "*all students, regardless of their religious beliefs*." Press Release, Dep't of Justice, *Justice Department Sues Loudoun County for Violating Equal Protection of Christian Students* (Dec. 8, 2025) ("DOJ Press Release") (emphasis added).[1] At bottom, the Government is attacking what the proposed complaint acknowledges to be a "facially neutral" policy, ECF 80-1, ¶ 197, on the grounds that it burdens religious rights. This is a First Amendment claim, not a claim "seeking relief from the denial of equal protection of the laws," 42 U.S.C. § 2000h-2.

There is also a significant standing issue here. A party seeking to intervene as of right need not demonstrate independent Article III standing if, in entering the case, it seeks to make the same claims and request the same relief as an existing party. *See Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017) ("an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing"). Where this is not the case—including where, as here, the Government seeks to intervene as of right in order to seek different or broader relief than that requested by the underlying parties—the intervenor has the burden of establishing independent Article III standing. *See id.* Here, Plaintiffs' claims challenge

---

[1] Available at https://www.justice.gov/opa/pr/justice-department-sues-loudoun-county-violating-equal-protection-christian-students.

the discipline imposed *on them* by the School Board pursuant to School Board Regulation 8035. By contrast, the United States alleges that a distinct School Board policy—Policy 8040—violates federal law, ECF 80-1, ¶ 143, and seeks to enjoin the School Board from enforcing Policy 8040 against *anyone* "similarly situated" to Plaintiffs. *Id.*, Prayer for Relief (b)(1). This proposed relief far exceeds what Plaintiffs seek, and the United States therefore must demonstrate independent Article III standing, which, even as a pleading matter, it has failed to do. In combination, the inapplicability of the statute to the United States' contemplated First Amendment claim and the Government's failure to establish Article III standing for the relief it seeks require that this Court deny intervention as of right.

Perhaps recognizing the manifold problems inherent in its reliance upon 42 U.S.C. § 2000h-2, the United States separately requests permissive intervention under Federal Rule 24(b). This request too should be denied. Contrasted with Plaintiffs' suit, the Government's single-count proposed complaint raises different, far broader legal and remedial questions. Intervention would needlessly complicate and delay the Court's resolution of the present litigation, and is wholly unjustified. While allowing intervention could prejudice the parties to the litigation, denying intervention will not prejudice the Government, which has other avenues and vehicles besides this case to advocate for desired changes in applicable law.

## BACKGROUND

Policy 8040 is the Loudoun County School Board's policy governing the rights and treatment of transgender students in its schools. It applies to all students and faculty. Consistent with applicable case law,[2] it permits "transgender students to use their chosen name and gender pronouns that reflect their consistently asserted gender identity," and provides further that any

---

[2] *See Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020).

"students who intentionally and persistently refuse to respect a student's gender identity by using the wrong name and gender pronoun are in violation of th[e] policy." ECF 39-1, § A. The policy also permits transgender students to use bathrooms and locker room facilities that "correspond[] to their consistently asserted gender identity." *Id.* § C.

Regulation 8035 governs the operation of a distinct School Board policy concerning sexual harassment. Among other things, it defines sexual harassment, outlines the procedures for reporting and evaluating allegations of harassment, and outlines available remedies for instances in which harassment is found to have occurred, including "suspension out of school." *See generally* ECF 29-1, § E(2)(1). Plaintiffs are two male Loudoun County high school students who were found by the School Board, after an extensive investigation, to have harassed a transgender student who identifies as a boy during several interactions over the course of a school year. *See* ECF 29-2, 29-3. The School Board found that Plaintiffs violated Regulation 8035, *see id.*, and imposed a ten-school-day suspension. *See* ECF 29-8, 29-9.

Plaintiffs have challenged the School Board's disciplinary conclusions in this Court, which temporarily enjoined the suspension. *See* ECF 1, 29, 45. In the operative complaint, Plaintiffs assert 12 counts, most of which complain of infringements on religious exercise, but two of which sound in equal protection. *See generally* ECF 53. In the latter regard, Plaintiffs principally allege that that they, as Christians, were *treated differently* from a Muslim student accused of harassing the same transgender student, and they allege that the difference in treatment was based on a religious

distinction.[3]  *Id.* ¶¶ 367-84.  The Plaintiffs request an injunction "retract[ing] and expung[ing]" the School Board's "punishments and adverse findings against Plaintiffs."  *Id.*, Request for Relief (c).[4]

On December 8, 2025, the United States filed with this Court a motion to intervene in this case pursuant to 42 U.S.C. § 2000h-2.  ECF 79, 80, 80-1.  The Government's proposed complaint lists one count labeled "Violation of Equal Protection Clause First Amendment Right to Free Exercise of Religion."  ECF 80-1, at 28.  In substance, the proposed complaint focuses on Policy 8040 and its effect on Plaintiffs' "sincerely held religious beliefs."  *Id.* ¶ 198.  Per the proposed complaint:

- Loudoun County School Board policy "burden[s] Plaintiffs' free exercise of religion," *id.* ¶ 203;

- it "coerces Plaintiffs to affirm School Board-favored gender ideology," *id.* ¶ 201;

- the School Board "attempted to limit Plaintiffs' religious expression and later punished them when they expressed their religious beliefs," *id.* ¶ 192;

- the "application of School Board Policy 8040 to Plaintiffs burdens [Plaintiffs'] First Amendment right to free exercise," *id.* ¶ 193; and

- Policy 8040 generally "require[s] students and faculty to affirm and promote an understanding of gender identity that may be contrary to their sincerely held religious beliefs," *id.* ¶ 198.

In a press release published the same day as the motion to intervene, the Department of Justice ("DOJ") described the intervention motion and characterized the United States' proposed claims.  The press release acknowledged that Policy 8040 is facially neutral in that it "requires all students, *regardless of their religious beliefs*, to adopt the Loudoun County School Board's

---

[3] Plaintiffs also imply that the School Board's choice to pursue the Regulation 8035 claims against them, but not against the harassment victim, was somehow "discriminatory."  ECF 53, ¶ 81.

[4] Presumably on the basis of their free exercise of religion claims, Plaintiffs also ask the Court for an injunction "to prohibit students from using the locker rooms of the opposite sex."  ECF 53, Request for Relief (d).

understanding of 'gender identity.'" DOJ Press Release (emphasis added). In describing the United States' proposed claims, DOJ's press release contended that the challenged policy had the effect of "recasting constitutionally protected activity as 'sex-based discrimination' and 'sexual harassment,'" and claimed that, as enforced, the policy "violates the boys' right to free exercise of religion at school." *Id.* The Government has also recently posted about its intervention motion on social media, again characterizing its claims as being about "students' religious liberty." Asst. Att'y Gen. Dhillon (@AAGDhillon), X (Dec. 9, 2025, at 20:08 ET).[5]

Notably, the United States' proposed complaint makes no mention of any alleged distinctions drawn between Christian and Muslim students on the basis of religion, a claim that features significantly in Plaintiffs' equal protection allegations, and it also requests no relief concerning Regulation 8035, which Plaintiffs were found to have violated. The Government's proposed complaint requests a declaratory judgment that Policy 8040 violated Plaintiffs' constitutional rights, and it requests that the School Board be enjoined from enforcing School Board Policy 8040 and its regulations regarding gender identity against Plaintiffs and "*any*" student "*similarly situated*" to them. ECF 80-1, Prayer for Relief (b)(1) (emphasis added). It is unclear precisely what the United States means in referring to "similarly situated" students; the proposed complaint does not say.

## **ARGUMENT**

## I.    **THE UNITED STATES LACKS STATUTORY AUTHORITY TO INTERVENE IN THE MANNER PROPOSED.**

Intervention as of right is a procedural privilege available only when specific criteria are met. As relevant here, Federal Rule of Civil Procedure 24(a)(1) limits intervention to

---

[5] Available at https://x.com/AAGDhillon/status/1998560496602263626.

circumstances in which the litigant has "an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). Because the statutory authority the United States relies upon, 42 U.S.C. § 2000h-2, does not provide the Government with a right to intervene in the manner proposed, the Government's motion should be denied.

### A.    42 U.S.C. § 2000h-2 Permits Intervention Only When the Government Seeks to Enforce an Equal Protection Claim.

42 U.S.C. § 2000h-2 grants the Attorney General a limited right to intervene "in the name of the United States" in equal protection cases pending in federal court, and (as amended in 1972), provides in full as follows:

> Whenever an action has been commenced in any court of the United States seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of race, color, religion, sex or national origin, the Attorney General for or in the name of the United States may intervene in such action upon timely application if the Attorney General certifies that the case is of general public importance. In such action the United States shall be entitled to the same relief as if it had instituted the action.

*Id.* As this language makes clear, the statute only permits the Government to intervene as of right in federal court cases in which a party "seek[s] relief from the denial of equal protection." *Id.*

As courts have observed, the Government's authority to intervene under this provision is meant to serve a specific purpose; it is meant to allow the United States to assist the underlying litigants in "promoting the strong public interest in obtaining compliance with the equal protection clause" by advancing equal protection claims alongside those asserted by the party(ies) that commenced the litigation. *Melendres v. Arpaio*, 2015 WL 11071095, at *1 (D. Ariz. Aug. 13, 2015) (citation omitted). There is no other "sensible construction" of the statutory language. *See, e.g.*, *Chesapeake Ranch Water Co. v. Bd. of Comm'rs of Calvert Cnty.*, 401 F.3d 274, 280 (4th Cir. 2005) ("nothing is better settled than that statutes should receive a sensible construction, such as

7

will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion") (quoting *In re Chapman*, 166 U.S. 661, 667 (1897)).

Reinforcing this same understanding, in *Zentgraf v. Texas A & M Univ.*, 509 F. Supp. 183 (S.D. Tex. 1981), the court considered whether § 2000h-2 authorized the United States to intervene to bring *both* an equal protection claim *and* a claim under Title IX of the Civil Rights Act, 20 U.S.C. § 1681, *et seq.* Noting that the Government's authority under § 2000h-2 is "limited," the court declined to allow the Government to use the statute as the basis for intervening with a Title IX claim, as opposed to an equal protection claim "under the Fourteenth Amendment." *Id.* at 187.

DOJ's own past practice accords with this narrow understanding of what the statute authorizes. Typically, when the United States seeks to intervene pursuant to § 2000h-2, it proposes a single-count complaint alleging an equal protection violation. *See, e.g.*, Proposed Complaint, *Etienne v. Ferguson*, No. 3:25-cv-5461, Dkt. No. 122-1, at ¶¶ 39-49 (W.D. Wash. filed June 23, 2025) (single-count complaint alleging equal protection violation); Proposed Complaint, *American Alliance for Equal Rts. v. Raoul*, No. 1:25-cv-00669, Dkt. No. 17-2, at ¶¶ 17-27 (N.D. Ill. filed Mar. 4, 2025) (same); Proposed Complaint, *NAACP v. Fitch*, No. 3:23-cv-272, Dkt. 69-2, at ¶¶ 148-165 (S.D. Miss. filed July 12, 2023) (same). And when the United States brings additional counts, it typically cites independent statutory authority for the additional claim. *See, e.g.*, Proposed Complaint, *Tangipa v. Newsom*, No. 2:25-cv-10616, Dkt. 28-2, at ¶¶ 63-71 (C.D. Cal. filed Nov. 13, 2025) (filing proposed complaint in intervention pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000h-2, *and* the Voting Rights Act of 1965, 52 U.S.C. § 10308(d)); Proposed Complaint, *Pedersen v. South Dakota High Sch. Activities Assoc.*, No. 4:00-cv-04113, Dkt. No. 26, at ¶ 2 (D.S.D. filed Nov. 15, 2000) (seeking intervention pursuant to 28 U.S.C. § 1345 and 42 U.S.C. § 2000h-2).

We are aware of *no case* in which the Government has sought to intervene under § 2000h-2 without bringing an equal protection claim. *See New Process Steel, L.P. v. N.L.R.B.*, 560 U.S. 674, 683 (2010) ("That our interpretation of the [statute] is consistent with the [government's] longstanding practice is persuasive evidence that it is the correct one . . . .").

### B. The Government's Proposed Complaint Does Not Assert an Equal Protection Claim.

At odds with the statute and case law discussed above, the Government here seeks to circumvent the limits on its statutory authority by proposing to intervene *not* "seeking relief from [an asserted] denial of equal protection of the laws," 42 U.S.C. § 2000h-2, but rather seeking relief from an asserted First Amendment violation. The Court has discretion, if not an obligation, in these circumstances to satisfy itself that the Government's proposed claim falls within the scope of what the law allows, and even a cursory review of the proposed complaint shows that it does not.

In evaluating a motion to intervene, courts are empowered to review the proposed complaint to confirm that the standards for intervention are met. *See, e.g.*, *Primerica Life Ins. Co. v. Cruz*, 2023 WL 373886, at *8 (N.D. Tex. Jan. 24, 2023) (denying motion to intervene where "a review of the [proposed complaint]" showed that certain claims were "not . . . actionable" and that the "remaining, actionable claims . . . do not appear to share common questions of law or fact with the main action in this case"), *appeal dismissed*, 2023 WL 6237270 (5th Cir. June 14, 2023). *See generally Town of Chester*, 581 U.S. at 440 (on review of a denial of a motion to intervene, examining the complaint as "the best evidence of the relief" sought); Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1914 (3d ed.) (reviewing court should confirm proposed complaint states "good claim for relief"). "In so doing, [courts] consider not just the legal form of the parties' claims, but also their ultimate objectives." *Washington v. FDA*, 108 F.4th 1163, 1173 (9th Cir. 2024).

9

The Government's proposed complaint contains an equal protection claim in name only and therefore fails to satisfy both 42 U.S.C. § 2000h-2 and Rule 24(a)(1). The United States alleges that "Defendant's policies and actions substantially burden Plaintiffs' free exercise of religion, are presumptively unconstitutional, and trigger strict scrutiny," ECF 80-1, ¶ 203, and that "Defendant seeks to continue its unconstitutional infringement of Plaintiffs' right to free exercise through the implementation of a 'Comprehensive Student Support Plan.'" *Id.* ¶ 205.

Nowhere in the Government's proposed complaint does it allege "[t]he essence of an equal protection claim," which "is that at least one person has been *treated differently* from another without sufficient justification." *B.P.J. ex rel. Jackson*, 98 F.4th at 555 (emphasis added); *see also Johnson v. Knight*, 2019 WL 4572807, at *1 (S.D. Ind. Sept. 19, 2019) (dismissing in part because plaintiff "does not allege that the defendants . . . treated him differently from anyone else" and, "[a]ccordingly, he has failed to state an equal protection claim"). Indeed, the thrust of the Government's complaint is that School Board Policy 8040 broadly applies to *all* students and faculty *in the same manner*, including those who may hold sincere religious beliefs at odds with the policy. *See, e.g.*, ECF 80-1, ¶ 198 ("By adopting and implementing Policy 8040, the School Board and [Loudoun County Public Schools] *require students and faculty* to affirm and promote an understanding of gender identity that may be contrary to their sincerely held religious beliefs.") (emphasis added); *id.* ¶ 201 ("School Board Policy 8040 coerces Plaintiffs to affirm School Board-favored gender ideology and suppress sharing their own beliefs"); *see also* DOJ Press Release ("Policy 8040 *requires all students, regardless of their religious beliefs*, to adopt the Loudoun County School Board's understanding of 'gender identity'—including its practical application that *affects all students'* use of intimate spaces, such as bathrooms and changing facilities.") (emphasis added). The Government's public statements likewise point to the conclusion that this is a First

10

Amendment free exercise claim, not an equal protection claim. *See* Asst. Att'y Gen. Dhillon (@AAGDhillon), X (Dec. 9, 2025, at 20:08 ET) ("Schools which choose to infringe their students' religious liberty should be on notice!").

The Government's proposed complaint itself acknowledges that the "Equal Protection violation" it asserts "is *based on* a First Amendment claim." ECF 80-1, ¶ 195 (emphasis added). It would be more accurate to say that the purported equal protection claim here is based "*entirely*" on alleged First Amendment violations. The proposed complaint goes on to assert that "[w]hen an Equal Protection violation is based on a First Amendment claim, courts fuse the First Amendment into the Equal Protection Clause and analogize the claim under the First Amendment." *Id.* This assertion, for which the Government cites no authority, is potentially misleading. To the extent the Government means to suggest that Fourteenth Amendment equal protection standards and First Amendment free exercise standards are the same, this is plainly incorrect. "The First Amendment and equal protection standards are conceptually and doctrinally distinct." *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1144 (D.C. Cir. 2023); *see also Morrison v. Garraghty*, 239 F.3d 648, 656 (4th Cir. 2001) (rejecting defendants' request that the court analyze the equal protection claim the same as the free exercise claim and explaining the "contrast" between the two types of claims).

While it is possible to bring an equal protection claim that complains of a *difference in treatment* that burdens protected First Amendment rights, that is not what the Government has done here. Rather, the Government—in order to take advantage of the intervention right conferred by § 2000h-2—is seeking to convert a First Amendment claim into a Fourteenth Amendment claim without any bona fide allegation that a party's equal protection rights were denied. This effort to circumvent the Government's limited statutory intervention rights should not be allowed. *Cf.*

*Antietam Battlefield KOA v. Hogan*, 501 F. Supp. 3d 339, 346-47 (D. Md. 2020) (dismissing equal protection claim where "[t]he substance" of such claims "complain[ed only] of barriers to the exercise of . . . religion" and did "not reference a specific suspect classification"), *aff'd in part, appeal dismissed in part*, 2022 WL 1449180 (4th Cir. May 9, 2022); *White v. Gaston Cnty. Bd. of Educ.*, 2017 WL 220134, at *4 (W.D.N.C. Jan. 18, 2017) (dismissing equal protection claim where the claims asserted were "more properly alleged as a [First Amendment] cause of action").

In the absence of any equal protection claim, the Government cannot satisfy the conditions imposed by 42 U.S.C. § 2000h-2, and thus lacks the statutory authority necessary to intervene under Rule 24(a)(1). For that reason, the motion to intervene as of right should be denied.

## II. THE UNITED STATES HAS NOT ESTABLISHED INDEPENDENT ARTICLE III STANDING FOR THE DIFFERENT AND BROADER RELIEF IT SEEKS.

42 U.S.C. § 2000h-2 confers statutory standing for claims brought by the Government as an intervenor only where it seeks the same relief as the underlying plaintiff(s). Where, as here, the Government seeks different or broader relief, it must demonstrate independent Article III standing. *See Town of Chester*, 581 U.S. at 440; *American Alliance for Equal Rts. v. Raoul*, 795 F. Supp. 3d 1073, 1088 (N.D. Ill. 2025) (dismissing the Government's complaint after intervening pursuant to § 2000h-2 without opposition where it sought relief "broader than and different from" the underlying plaintiff yet the Government failed to "establish its own Article III standing"), *appeal pending*. The United States here seeks different and broader relief but has not established Article III standing, which further requires that the motion to intervene be denied.

### A. The United States Seeks Different Relief from Plaintiffs.

Plaintiffs in this action allege that a fellow student who is Muslim engaged in similar alleged harassing behavior but received no discipline because of his different faith. ECF 53, ¶¶ 367-81. No such equal protection claim is asserted by the Government's proposed complaint.

Indeed, as discussed above, the Government does not allege an equal protection claim at all, but at most a First Amendment claim. Moreover, whereas Plaintiffs' equal protection claim challenges the School Board's allegedly "intentional, discriminatory" enforcement of Regulation 8035, *id.* ¶ 381, the Government's claim is directed against Policy 8040, which it claims imposes unconstitutional burdens on the "First Amendment right to free exercise" of religion. *See* ECF 80-1, ¶ 193. These distinctions in the Government's "legal theory" are enough in themselves to show that the Government here "'seeks different relief,'" *Washington*, 108 F.4th at 1173, but the Government's proposed prayer for relief also makes this exceedingly clear.

In terms of relief, Plaintiffs request a declaration "that [the School Board] violated the U.S. Constitution's Free Speech and Equal Protection Clauses" and "[t]emporary, preliminary, and permanent injunctive relief ordering [Loudoun County Public Schools], and/or its agents and employees, to retract and expunge its punishments and adverse findings *against Plaintiffs*." ECF 53, Request for Relief (b), (c) (emphasis added). By contrast, the Government seeks a wholesale bar on enforcing Policy 8040 as against Plaintiffs "*and any other similarly situated student*." ECF 80-1, Prayer for Relief (b)(1) (emphasis added). The Government also seeks a declaratory judgment that all of "Policy 8040 and its regulations regarding gender identity" violate Plaintiffs' constitutional rights. *Id.*, Prayer for Relief (a). These requests are fundamentally different.

## B.    The United States Has Not Established Article III Standing.

Because the United States is seeking different and broader relief, it can intervene only if it can establish Article III standing to seek such relief. Yet the Government's proposed complaint does not plead facts that would supply Article III standing for the relief it seeks. To establish injury in fact, for instance, the Government would be required to show an "invasion of a legally protected interest" that is both (a) "concrete and particularized," and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The United

13

States generally experiences an injury in fact only when its sovereign, proprietary, or "quasi-sovereign" interests are inhibited, and there is no such allegation here. *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 600-08 (1982).[6]

The proposed complaint makes no injury-in-fact allegations at all. The most the proposed complaint alleges with respect to standing is that "[t]he law authorizes the United States to stand up for Plaintiffs' rights." ECF 80-1, ¶ 22. That may be true in a case where the United States, as a would-be intervenor, seeks the same relief as the underlying party(ies). But where, as here, the parties and the Government request different relief, the United States must do far more to establish its own standing. To establish its own independent standing, the Government must rely upon something "apart from the interests of particular private parties." *Alfred L. Snapp*, 458 U.S. at 607. Even an asserted interest in defending the rights of groups of allegedly injured citizens is typically not enough. *See, e.g.*, *United States v. Solomon*, 419 F. Supp. 358, 372 (D. Md. 1976) (finding no standing based on an asserted sovereign interest in protecting the constitutional rights of impacted citizens), *aff'd*, 563 F.2d 1121 (4th Cir. 1977); *United States v. Mattson*, 600 F.2d 1295, 1297-1301 (9th Cir. 1979) (same); *United States v. City of Phila.*, 644 F.2d 187, 190-99 (3d Cir. 1980) (finding no standing based on an asserted interest in challenging a city's "pattern or practice of depriving persons of rights protected by the due process clause").

Having failed to establish independent Article III standing for the relief it seeks, the Government's request to intervene as of right should be denied. *See Amer. All.*, 795 F. Supp. 3d at 1088.

---

[6] The classic sovereign, non-sovereign, and quasi-sovereign interests are: the sovereign's authority to create and enforce a legal code, the demand for recognition from other sovereigns, proprietary interests, and *parens patriae*. *See Alfred L. Snapp*, 458 U.S. at 600-08. None applies here. *Cf. American Alliance*, 795 F. Supp. 3d at 1088 (denying *parens patriae* standing for claim brought pursuant to intervention under 42 U.S.C. § 2000h-2).

## III.    PERMISSIVE INTERVENTION SHOULD LIKEWISE BE DENIED.

On a timely motion to intervene, a court "*may*" permit a party to intervene if the party "has a claim or defense that shares with the main action a common question of law or fact," and "intervention will [not] unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), (b)(3) (emphasis added).  However, even if those elements are met the decision to allow intervention nevertheless remains within the Court's "sound discretion."  *Bruce & Tanya & Assocs. v. Bd. of Supervisors of Fairfax Cnty., Va.*, 2018 WL 10425625, at *1 (E.D. Va. Oct. 2, 2018) (internal quotation marks and citations omitted).

As discussed above, the Government's proposed complaint diverges materially from Plaintiffs' claims, both in terms of the focus of the allegations and the relief being sought.  Plaintiffs are fundamentally seeking to be made whole for what they claim to be improper decisions by the School Board in enforcing Regulation 8035; the United States, by contrast, is seeking to declare that Policy 8040 is unconstitutional and cannot be enforced against anyone "similarly situated" to Plaintiffs.  ECF 80-1, Prayer for Relief (b)(1).  Even if these claims may overlap, such overlaps do not warrant permissive intervention where allowing another to join the litigation "would necessarily complicate the discovery process and consume additional resources of the court and the parties."  *Stuart v. Huff*, 706 F.3d 345, 355 (4th Cir. 2013); *see also Ohio Valley Env't Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 30 (S.D. W. Va. 2015) (holding that even "assum[ing] . . . that [prospective intervenor] has a claim or defense that shares a common question of law or fact with this action, permissive intervention is not proper because it would unduly delay resolution of this action and burden judicial resources"); *Stuhr v. U.S. Army Corps of Eng'rs*, 2024 WL 1880462, at *3 (D.S.C. Apr. 29, 2024) ("[T]he Court sees no reason to complicate the present suit by permitting [prospective intervenor] to intervene.").

15

Allowing the Government to intervene here would vastly expand the issues to be decided, complicate and prolong discovery, and needlessly delay the Court's resolution of the lawsuit. *See Com. of Va. v. Westinghouse Elec. Corp.*, 542 F.2d 214, 215 (4th Cir. 1976); *N.C. State Conf. of NAACP v. Cooper*, 332 F.R.D. 161, 172 (M.D.N.C. 2019) (denying intervention that would "hinder, rather than enhance, judicial economy," introduce "unnecessar[y] complicat[ion]  and delay," and create "significant concern" that intervenors would "detract from, rather than enhance, the timely resolution, clarity, and focus on, solely the weighty and substantive issues to be addressed") (citation omitted); *Farm Lab. Org. Comm. v. Stein*, 2018 WL 3999638, at \*22 (M.D.N.C. Aug. 21, 2018) (denying intervention that would "needlessly complicate and unduly delay the adjudication of the existing parties' rights []" and "needlessly consume both the parties' and the Court's resources"), *report and recommendation adopted*, 2018 WL 4518696 (Sept. 20, 2018); *Allen v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 28 F.R.D. 358, 365-66 (E.D. Va. 1961) (denying United States' motion to intervene where injection of broader and more complex issues into the case would "materially delay the adjudication of the private constitutional rights asserted by the individual plaintiffs").

As the court has previously noted, this is a fundamentally local dispute "dealing with two kids and their futures." Hr'g Tr. 20:16-21, Oct. 10, 2025. The School Board has every interest in seeking an efficient disposition of this case, without exposing any students to further unwanted attention. Including the United States will only make that goal more elusive. *See North Dakota v. Heydinger*, 2013 WL 593898, at \*6 (D. Minn. Feb. 15, 2013) (denying intervention where additional party "would simply serve to delay and overcomplicate this matter" by "chang[ing] the complexion of this case—transforming it from a constitutional question to an environmental policy issue").

16

## CONCLUSION

For the reasons discussed above, the School Board respectfully urges the Court to deny the

Government's motion to intervene.

Dated: December 22, 2025

By: /s/ *Anna G. Zick*
Heather K. Bardot, VSB No. 37269
Anna G. Zick, VSB No. 86057
McGAVIN, BOYCE, BARDOT
THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
Phone: (703) 385-1000
hbardot@mbbtklaw.com
azick@mbbtklaw.com
*Counsel for Defendant*

M. Sean Royall, *pro hac vice pending*
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, DC 20006
Phone: (202) 626-2994
sroyall@kslaw.com

Benjamin S. Softness, *pro hac vice pending*
KING & SPALDING LLP
50 California Street
Suite 3300
San Francisco, CA 94111
Phone: (415) 318-1200
bsoftness@kslaw.com

Rachel Craft, *pro hac vice pending*
KING & SPALDING LLP
1290 Avenue of the Americas
14th Floor
New York, NY 10104
Phone: (212) 556-2100
rcraft@kslaw.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2025, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all attorneys who have noticed their appearance in this case.

Andrew Block
Ian Prior
Nicholas R. Barry
Robert A. Crossin
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Avenue, SE, #231
Washington, D.C. 20003
Phone:  (202) 836-7958
andrew.block@aflegal.org
ian.prior@aflegal.com
nicholas.barry@aflegal.com
bobby.crossin@aflegal.com

Joshua A. Hetzler, Esq. (VSB No. 89247)
Michael B. Sylvester, Esq. (VSB No. 95023)
FOUNDING FREEDOMS LAW CENTER
707 E. Franklin Street
Richmond, VA 23219
michael@foundingfreedomslaw.org
josh@foundingfreedomslaw.org

Ellis L. Bennett
DUNLAP BENNETT & LUDWIG PLLC
211 Church Street SE
Leesburg, Virginia 20175
ebennett@dbllawyers.com
*Counsel for Plaintiffs*

Brian Lawrence Repper
Jordan Carpenter
U.S. DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
Educational Opportunities Section
950 Pennsylvania Avenue, NW
Washington, D.C. 20579
Phone:  (771) 202-1494
brian.repper@usdoj.gov
jordan.carpenter2@usdoj.gov
*Counsel for Prospective Intervenor the United States*

By: /s/ *Anna G. Zick*
    Heather K. Bardot, VSB No. 37269
    Anna G. Zick, VSB No. 86057
    McGAVIN, BOYCE, BARDOT
    THORSEN & KATZ, P.C.
    9990 Fairfax Boulevard, Suite 400
    Fairfax, Virginia 22030
    Phone:  (703) 385-1000
    hbardot@mbbtklaw.com
    azick@mbbtklaw.com
    *Counsel for Defendant*