# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |
|---|---|---|
| S.W., by his parents and next friends,<br>    SETH WOLFE and AMANDA WOLFE<br><br>and<br><br>J.S., by his parents and next friends,<br>    JEFFERY SMITH and RENAE SMITH,<br><br>Plaintiffs<br><br>United States of America,<br><br>Intervenor-Plaintiffs<br><br>v.<br><br>LOUDOUN COUNTY SCHOOL BOARD<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. l:25cv1536 (LMB/WEF) |

## UNITED STATES' REPLY IN SUPPORT OF MOTION TO INTERVENE

### INTRODUCTION

Pursuant to Rule 24(a)(1) and Section 902 of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000h-2, the United States has an absolute, unconditional right to intervene in a case to seek relief from the denial of equal protection of the laws under the Fourteenth Amendment to the Constitution on account of religious discrimination. In response to the United States' Motion to Intervene ("Motion") (ECF 80), Loudoun County School Board ("Defendant" or "School Board") has filed an Opposition (ECF 100) that amounts to a thinly veiled motion to dismiss. Because

Defendant's filing fails to address the standard that applies to the Government's Motion, it is procedurally improper.[1]

Whether the United States may intervene in this case is a straightforward inquiry: Has the United States met the requirements for statutory intervention? These requirements are twofold: (1) a plaintiff seeks relief from the denial of equal protection of the laws under the Fourteenth Amendment to the Constitution on account of religion, and (2) the Attorney General certifies that the case is one of general public importance. The United States satisfies both requirements, a fact Defendant cannot—and does not—dispute in its Opposition.

Defendant's Opposition frames the United States' intervention in this case as unusual or outside of the relevant statutory authority. This characterization is false, and this Reply cites several examples of similar interventions and legal precedent supporting the United States' well-established authority to intervene under these circumstances. The Court should grant the United States' Motion to Intervene.

## ARGUMENT

Defendant's Opposition: A) describes the United States' statutory intervention rights as "limited" and contends that the United States has not asserted a qualifying Equal Protection claim; B) characterizes the United States' position as too different from Plaintiffs' to qualify for permissive intervention under Rule 24(b); and C) frames the United States' intervention in this

---

[1] Setting aside the issue of standing, which the United States acknowledges the Court could consider *sua sponte*, *see Doe by Doe v. South Carolina*, No. 25-1787, 2025 WL 2375386, *6 n.9 (4th Cir. Aug. 15, 2025), the balance of Defendant's procedurally improper filing should require no response. Nevertheless, to the extent the Court intends to construe Defendant's Opposition as a motion to dismiss, the United States addresses the premature points raised therein to avoid concession. *United Supreme Council v. United Supreme Council of Ancient Accepted Scottish Rite for 33 Degree of Freemasonry*, 329 F. Supp. 3d 283, 292 (E.D. Va. 2018) ("Failure to respond to an argument made in a dispositive pleading results in a concession of that claim.").

case as unusual, implying it is unprecedented. Defendant's framing is faulty and its contentions are either false or misrepresentations of legal and historical precedent.

    A.    <u>The United States has an unconditional, absolute right to intervene in this case and seek the proposed relief.</u>

    *1.*    *The United States has satisfied Rule 24(a)(1) and Section 902.*

Section 902 grants the United States an unconditional right to intervene in cases "seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of . . . religion . . . upon timely application if the Attorney General certifies that the case is of general public importance." 42 U.S.C. § 2000h-2. Thus, there are only two requirements which must be— and have been—met here: (1) Plaintiffs have commenced an action seeking relief from the denial of equal protection of the laws under the Fourteenth Amendment to the Constitution on account of religion (*see* Pls.' Am. Compl. at ¶¶ 1, 15-16, 367-81 (ECF 53)) and (2) the Attorney General has certified that this case is one of general public importance. *See* Mot. to Intervene, Ex. B (ECF 80-2). Upon such a timely[2] showing, "[t]he right to intervention by the United States as provided in Sec. 902 is an absolute and not a permissive one." *Spangler v. U.S.*, 415 F.2d 1242, 1244 (9th Cir. 1969); *accord Air Lines Stewards & Stewardesses Ass'n Local 550 v. American Airlines, Inc.*, 455 F.2d 101, 103 n.2 (7th Cir. 1972). *See also Canterino v. Wilson*, 538 F. Supp. 62, 64 (W.D. Ky. 1982) (intervention proper where two requirements met and application was timely); *Carter v. Sch. Bd. of W. Feliciana Par.*, 569 F. Supp. 568, 571 (M.D. La. 1983) (United States' intervention motion "must be granted" when requirements are met); *Melendres v. Arpaio*, No. CV-07-2513-PHX-GMS, 2015 WL 11071095, at *1 (D. Ariz. Aug. 13, 2015) (citing Rule

---

[2] The timeliness of the United States' Motion to Intervene is not contested in this case.

24(a)(1) and stating that courts "must permit intervention under the Civil Rights Act of 1964 so long as the United States' application was timely").

Courts routinely grant motions to intervene by the United States. *See e.g.*, *U.S. v. Skrmetti*, 605 U.S. 495, 507-08 (2025) (noting the United States' intervention under 42 U.S.C. § 2000h-2); *Bazemore v. Friday*, 478 U.S. 385, 391 (1986) (same); *Smith v. Bd. of Ed. of Morrilton Sch. Dist. No. 32*, 365 F.2d 770, 776 (8th Cir. 1966) (noting the "pertinent fact that the United States has the right to intervene in a case of this kind and, indeed, has here presented the necessary certificate and effectuated its intervention"); *Faulkner v. Jones*, 858 F. Supp. 552, 562 (D.S.C. 1994) (noting that the United States "properly intervened as a plaintiff pursuant to 42 U.S.C. § 2000h-2").

Further, federal courts across the country have consistently recognized that the United States' right to intervene under Section 902 is an "unconditional" right. *See e.g.*, *Jones v. Caddo Par. Sch. Bd.*, 735 F.2d 923, 925 (5th Cir. 1984) (noting its previous holding that the United States is "entitled" to intervene pursuant to 42 U.S.C. § 2000h-2); *Fuel Oil Supply & Terminating v. Gulf Oil Corp.*, 762 F.2d 1283, 1286 at n.5 (5th Cir. 1985) (listing 42 U.S.C. § 2000h-2 among "[e]xamples of statutes that courts have held confer an unconditional right to intervene under Rule 24(a)(1)"); *U.S. v. Marsten Apartments, Inc.*, 175 F.R.D. 265, 269-70 (E.D. Mich. 1997) (noting that courts interpreting 42 U.S.C. § 2000h-2 concluded that it provides the United States an absolute right to intervene under Rule 24(a)(1)); *In re Wexler*, 477 B.R. 709, 712 (Bankr. N.D. Ill. 2012) (stating, "[w]hen Congress wants to confer an unconditional right to intervene, it knows how to do so" and citing 42 U.S.C. § 2000h-2 as an example); *L.W. by & through Williams v. Skrmetti*, No. 3:23-cv-00376, 2023 WL 3513302, at *1 (M.D. Tenn. May 16, 2023) (noting that Rule 24(a)(1) provides that a court "must permit" anyone to intervene who has been given an unconditional right to do so via federal statute and stating that "[i]t is widely recognized that §

4

2000h-2 confers such an unconditional right to intervene upon the United States"). *See also* Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1906 (3d ed.) ("The United States also has an unconditional statutory right to intervene in actions seeking relief from the denial of equal protection of the laws under the Fourteenth Amendment to the Constitution on account of race, color, religion, or national origin."). Simply put, when the United States makes the required showing, "the motion to intervene must be granted" and "[t]he complaint in intervention . . . [should be] authorized to be filed." *Carter.*, 569 F. Supp. at 571.

The School Board does not dispute that the United States meets the explicit statutory requirements, nor does it assert that the Government's motion is untimely.[3] Instead, Defendant first invents a standard for intervention pursuant to Section 902 and then claims the Government does not meet it. Defendant cites no authority to support its novel legal theory. Each argument about pleading standards or standing made by Defendant in its Opposition departs from the instant question, *i.e.*, whether the United States may intervene in this case. In fact, every case cited by Defendant in its brief either supports the Government's case for intervention at the motion-to-intervene stage or addresses arguments made pursuant to motions to dismiss or motions for summary judgment on facts that are notably absent here. Moreover, Defendant cites cases that purportedly support its characterization of a proper Equal Protection claim, but those cases do not address the question of intervention, much less place limits on the United States' intervention authority. The School Board's improper arguments fail even as applied to the United States' Proposed Complaint in Intervention, but they are wholly inapplicable to the Motion to Intervene

---

[3] By failing to rebut the United States' contention that its intervention is timely, Defendant has conceded this point. *See Intercarrier Communications, LLC v. Kik Interactive, Inc.*, No. 3:12-cv-771-JAG, 2013 WL 4061259, *3 (E.D. Va. Aug. 9, 2013) (failure to include an argument in an opposition amounts to a concession).

now before the Court. Because the United States has fulfilled the requirements for intervention, its Motion to Intervene must be granted.

> 2. *The United States has standing to enforce the Equal Protection Clause against Defendant by challenging Policy 8040.*

The Supreme Court has recognized that "when an agency in its governmental capacity is meant to have standing, Congress says so." *Dir., Off. of Workers' Comp. Programs, Dep't of Labor v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 129 (1995) (emphasis omitted). Specifically, the Supreme Court has acknowledged that trial courts have "based standing of the United States upon an explicit provision of . . . 42 U.S.C. § 2000h-2." *Id.* at 133 (citing *Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 427 (1976)). Lower courts operated under the same reasoning. *See e.g.*, *White v. Crook*, 251 F. Supp. 401, 403 (M.D. Ala. 1966) ("The plaintiff-intervenor is the United States of America; its standing to intervene is established by 42 U.S.C. § 2000h-2 and Rule 24(b) of the Federal Rules of Civil Procedure.").

Indeed, the Supreme Court's decision in *Pasadena* forecloses Defendant's attack on the United States' standing. In *Pasadena*, the Supreme Court held that the United States' intervention under Section 902 in a lawsuit to desegregate Pasadena schools sufficed to maintain a "case or controversy" under Article III even though, but for the United States' intervention, the case would have been moot. 427 U.S. at 429-430. Because the individual plaintiffs had graduated, they no longer had a stake in the action. But by holding that the United States' presence preserved the Article III case or controversy, the Court necessarily concluded that the United States—the only remaining party opposing the school district—had standing. *See id.* at 431 ("[W]e think [42 U.S.C. 2000h-2] is properly read to authorize the United States to continue as a party plaintiff in this action, despite the disappearance of the original plaintiffs . . . so long as such participation serves

the statutory purpose, and that the presence of the United States as a party ensures that this case is not moot.").

From its reliance on cases that are entirely inapposite on their facts and procedural posture, to inviting this Court to follow the reasoning of *American Alliance for Equal Rights*—the sole outlier on Section 902, which is currently on appeal in the Seventh Circuit[4]—Defendant's attack on the United States' standing fails. Contending (wrongly) that "an asserted interest in defending the rights of groups of allegedly injured citizens is typically not enough," (Opp. at 19) Defendant cites three cases that are procedurally and factually irrelevant. *U.S. v. Solomon* and *U.S. v. Mattson* involved motions to dismiss claims by the United States regarding the constitutional rights of mentally retarded citizens. 419 F. Supp. 358, 361 (D. Md. 1976); 600 F.2d 1295, 1297 (9th Cir. 1979). *U.S. v. City of Philadelphia*, another motion to dismiss challenge, concerned the United States' assertion that the criminal provisions of the Civil Rights Acts of 1866 and 1870 gave it an implied private right of action. 644 F.2d 187, 189 (3d Cir. 1980). None of these cases concerns the United States' right to intervene under Section 902 (or any other intervention, statutory or otherwise), and none of them involves the United States seeking relief from the denial of equal protection of the laws under the Fourteenth Amendment to the Constitution on account of any of the five protected classifications (i.e., race, color, religion, sex or national origin).

Defendant's apples-to-oranges comparison also overlooks a key factor that animates the United States' historical invocation of authority under 42 U.S.C. § 2000h-2: the desegregation of America's schools was advanced not only by intervention under Section 902, but also by the Attorney General seeking broader relief than sought by the original plaintiffs—i.e., seeking

---

[4] *American Alliance for Equal Rights v. Raoul*, 795 F. Supp. 2d 1073 (N.D. Ill. 2025), *appeal docketed*, No. 25-2487 (7th Cir. Aug. 26, 2025).

*complete* relief involving *entire* school systems. And at that time, it was understood that the Attorney General had standing to pursue an enlarged scope of relief. *See e.g.*, *Spangler*, 415 F.2d at 1244-45 (citing *Sanders v. Ellington*, 288 F. Supp. 937 (M.D. Tenn. 1968) (plaintiff sought to prevent planned expansion of University of Tennessee but United States sought (and was granted) state-wide desegregation order for entire state system of higher education); *Lee v. Macon*, 267 F. Supp. 458, 461, 475-78 (M.D. Ala. 1967) (United States allowed to intervene and challenge constitutionality of state tuition grant law, even though original plaintiffs had not challenged that statute)). Indeed, by meeting the requirements for intervention, the United States is "entitle[d] . . . 'to the same relief as if it had instituted the action.'" *Smith*, 365 F.2d at 776 (quoting 42 U.S.C. § 2000h-2). Courts "do not read [42 U.S.C. § 2000h-2's] sentence as containing words of limitation upon the rights of the United States, but as broadly stating such rights." *Spangler*, 415 F.2d at 1244, 1246 (holding that the district court erred when it precluded the government from seeking relief from racial discrimination in the entire defendant school district). Here, the School Board's gender orthodoxy as set forth in Policy 8040 necessarily informs the scope of Policy 8035, which prohibits "sex-based discrimination" and "sexual harassment." *See* Proposed Compl. ¶¶ 2-3, 16, 52-54, 57 60, 130, 152. Thus, consistent with the desegregation-era interventions, the United States has standing to challenge a *different* policy than Plaintiffs and to seek complete relief—relief that reaches beyond righting the wrong done to Plaintiffs.

Finally, the United States is always injured when a school board denies "equal protection of the law[]" to people "on account of race, color, religion, sex or national origin"—the precise circumstances when intervention is permitted under 42 U.S.C. § 2000h-2. In this way, the United States stands on different footing than a private plaintiff. As explained above, the Supreme Court has implicitly recognized as much. A violation of federal law is, on its own, an injury to the United

8

States, and violations of Americans' federal rights independently provide the United States *parens patriae* standing. *Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923).

As articulated in its Statement of Interest, the United States has a significant interest in the proper application of the United States Constitution in ensuring equal access to educational opportunities in public K-12 schools and preventing the denial of equal protection of the laws on account of religion. Statement of Interest ("SOI") at 2. ECF 92. For well over a century, the Supreme Court has repeatedly explained that the United States may invoke the jurisdiction of the federal courts to protect the public from violations of the law. Modern precedents confirm this longstanding view in the language of Article III standing doctrine. In *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000), the Court upheld the constitutionality of *qui tam* actions—suits in which a private party sues to recover money on behalf of the United States based on a fraud on the Government. In coming to this conclusion, the Court found it to be "beyond doubt" that the *Government* would have standing based solely on the defendant's "violation of [federal] laws," which constitutes "an injury to the United States," namely to its "sovereignty." *Id.* at 771.

Here, the United States alleges that the School Board implemented and applied Policy 8040 in a discriminatory manner. Just as when an individual violates federal statutes, the United States suffers an injury to its sovereignty when state actors flout the United States Constitution. That is sufficient for standing. Moreover, the School Board has asserted—incorrectly—that its discriminatory actions are mandated by Title IX. *See* Def.'s Mem. in Supp. of Motion to Dismiss at 25. ECF 70. The United States has a substantial legal interest in ensuring that the proper parameters of Title IX enforcement are well-understood by its citizens and consistently applied throughout the country, particularly within the nation's public schools. The disposition of this

9

action without the participation of the United States may impede the United States' ability to protect these interests by creating adverse stare decisis effects. *Alt v. U.S. EPA*, No. 2:12-cv-42, 2012 WL 12892210, *5 (N.D. W. Va. Oct. 9, 2012) (granting Rule 24(a)(2) motion to intervene as of right). *See also United States v. Union Elec. Co.*, 64 F.3d 1152, 1170-71 (8th Cir. 1995) (reversing denial of Rule 24(a)(2) motion to intervene as of right); *Jansen v. City of Cincinnati*, 904 F.2d 336, 344 (6th Cir. 1990) (same). The United States has an interest in the effective enforcement of federal civil rights laws, and a decision rendered in this case could adversely affect the scope and nature of the United States' future prosecution of claims of religious discrimination under the Fourteenth Amendment.

Besides the United States' sovereign interest in enforcing federal law, the Government has *parens patriae* standing to protect Americans' constitutional rights. *Parens patriae* standing requires that the Government bring suit to pursue a quasi-sovereign interest, which includes the "health and well-being—both physical and economic—of its residents in general." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*, 458 U.S. 592, 607 (1982). In *United States v. Raines*, the Supreme Court rejected the argument that the United States cannot seek an injunction to protect its citizens from unconstitutional racial discrimination. 362 U.S. 17 (1960) (civil suit by the United States to secure voters' Fifteenth Amendment rights). The *Raines* Court explained that "there is the highest public interest in the due observance of all the constitutional guarantees" and that Congress acts well within its authority in "authoriz[ing] the United States to be the guardian of that public interest in a suit for injunctive relief." *Id.* at 27. *See also Commonwealth of Pennsylvania v. Glickman*, 370 F. Supp. 724, 728 (W.D. Pa. 1974) (holding that Commonwealth of Pennsylvania had *parens patriae* standing to enjoin City of Pittsburgh Bureau of Fire for unlawful racial discrimination in firefighter recruitment, testing, and hiring). The Nation's quasi-

sovereign interest in protecting Americans' religious free exercise rights under the Fourteenth Amendment is equally strong.

For these reasons, the United States has met the requirements for intervention under 42 U.S.C. § 2000h-2 and Rule 24(a)(1); its Motion to Intervene should be granted.

B.    The United States has met the Rule 24(b) permissive intervention standard.

In determining the timeliness of intervention, trial courts in the U.S. Court of Appeals for the Fourth Circuit ("Fourth Circuit") are "obliged to assess three factors: first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014). The Fourth Circuit has endorsed the Seventh Circuit's explanation that "[t]he purpose of the [timeliness] requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001), rev'd on other grounds, *Devlin v. Scardelletti*, 536 U.S. 1 (2002) (quoting *United States v. S. Bend Cmty. Sch. Corp.*, 710 F.2d 394, 396 (7th Cir. 1983)); *Alt*, 758 F.3d at 591.

Defendant's lone argument regarding permissive intervention under Rule 24(b), asserts, in conclusory fashion, that allowing the United States' participation would "vastly expand the issues to be decided, complicate and prolong discovery, and needlessly delay the Court's resolution of the lawsuit." Opp. at 16. Although the Court may consider the issues of delay and prejudice under Rule 24(b)(3), Defendant's speculation on these issues is baseless. The Fourth Circuit has taken a different view, commenting that the involvement of intervenors can *improve* judicial efficiency since "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*,

11

802 F.2d 722, 729 (4th Cir. 1986) (holding denial of intervention as of right under Rule 24(a)(2) was reversible error) (citation omitted) (quotation marks omitted).

The United States' Motion is timely (and in any event, Defendant's failure to argue otherwise resolves this factor in the United States' favor). Moreover, Defendant relies on a cobbled-together series of cases that are inapposite in every meaningful way—from the basis for intervention to their underlying facts. As with those distinguished above, none of these cases concern intervention pursuant to 42 U.S.C. § 2000h-2 by the United States. In addition, all of Defendant's cases involve circumstances that are entirely absent here. First, Defendant cites cases in which private individuals and organizations sought to intervene when the federal government was already defending the law at issue or asserting its compliance with the same, and was best positioned to do so.[5] Indeed, Defendant's reliance on *Stuart v. Huff* is particularly misplaced as the United States "seek[s] to intervene as [a] plaintiff[], not [a] defendant[]." *See League of Women Voters of N.C. v. North Carolina*, No. 1:13cv660, 2014 WL 12770081, at *3 (M.D.N.C. Jan. 27, 2014) (granting Rule 24(b) request for permissive intervention by five 20-year-old registered voters). "[U]nlike in *Stuart*," the United States is not "seeking to intervene with existing parties who are represented by a government agency in defense of a statute, but [is] seeking to intervene with private parties." *Id.* These factors are all material considerations that counsel against denying the United States' intervention under Rule 24(b).

---

[5] *See Stuhr v. U.S. Army Corps of Engineers*, No. 2:23-cv-3357-RMG, 2014 WL 1880462, *3 (D.S.C. Apr. 29, 2024) (denying asset management company intervention request where its personal interest in mitigation bank's success was irrelevant to the sole issue, which was whether the federal government complied with administrative law in authorizing the project); *Farm Labor Organizing Committee v. Stein*, No. 1:17cv1037, 2018 WL 3999638, *22 (Aug. 21, 2018) (in suit defended by the Department of Justice, denying labor union's permissive intervention request where its desire to "defend itself against reputational harm" and its members against accusations of program violations "h[e]ld little relevance to whether the Farm Act violates [the] [p]laintiffs' constitutional and statutory rights").

Second, Defendant offers cases where allowing intervention would have opened the floodgates to multiple intervenors or the litigation of irrelevant issues, which would, understandably, result in duplicative briefing or otherwise complicate discovery.[6] Given that the United States would be the sole intervenor, and its challenge to School Board Policy 8040 is relevant to the litigation, no such concerns exist here. Third, Defendant relies on *Allen v. Cnty. Sch. Bd. of Prince Edward Cnty.*, a pre-Civil Rights Act of 1964 desegregation case in which the United States sought to add defendants and pursue vast relief that would have included closing all public schools in the state of Virginia[7]—the relief the United States seeks here is nowhere near comparable. Fourth, Defendant points the Court to cases in which allowing intervention would morph the litigation from a constitutional question to a policy issue or otherwise involve dueling

---

[6] *See Stuart*, 706 F.3d 345, 355 (4th Cir. 2013) (three groups of proposed intervenors included pro-life physicians, pregnancy centers, and former abortion patients where North Carolina Attorney General was defending state informed consent law regarding abortion procedures); *Ohio Valley Env't Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 31 (S.D. Va. 2015) (denying coal company association intervention where allowing its party-participation would invite its "members to individually petition for permissive intervention" and "dealing with this flood of foreseeable motions for intervention would cost substantial judicial resources"); *Commonwealth of Virginia. v. Westinghouse Electric Corp.*, 542 F.2d 214, 217 (4th Cir. 1976) (state of Virginia denied intervention where its party-participation would "provide incentive for [at least 13] other states to seek intervention" and cause "potential unmanageability" for suit between two electric companies); *Farm Labor Organizing Comm. v. Stein*, No. 1:17cv1037, 2018 WL 3999638, *22 (M.D.N.C. Aug. 21, 2018) (denying intervention to labor union that represented 35,000 farming families because litigating its issues (which were not relevant to the constitutionality of the Farm Act) would "necessarily consume extensive time and resources"), *report and recommendation adopted*, 2018 WL 4518696 (Sept. 20, 2018).

[7] *See* 28 F.R.D. 358, 365 (E.D. Va. 1961) (denying intervention complaint that included three additional defendants, which was a "material difference" compared to the original plaintiffs' amended supplemental complaint). In alluding to what would eventually become Section 902 of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000h-2, the court noted that "[t]he Government does not contend that is has a statutory right to intervene in this suit" but "several bills have been introduced in the Congress of the United States and some are now pending, specifically granting unto the Attorney General of the United States the right to intervene in suits of this type as a party plaintiff."

politicians.[8] Given that the United States is squarely focused on the constitutionality of the School Board's actions, no such derailment or politicization is threatened here.

For these reasons, the United States meets the requirements for permissive intervention under Rule 24(b), and its Motion to Intervene should be granted.

    C.    <u>The United States' Intervention in this case is routine and consistent with historical and legal precedent.</u>

The Equal Protection Clause of the Fourteenth Amendment provides, "No State shall ... deny to any person within its jurisdiction the equal protection of the laws," U.S. Const. amend. XIV, § 1, which is "essentially, a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). An Equal Protection claim may target actions that "disadvantage a 'suspect class,' *or* that impinge upon the exercise of a 'fundamental right.'" *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982) (treating any such classification as "presumptively invidious") (emphasis added). In order to "enforce the mandate of equal protection," courts must require the government entity to "demonstrate that its [action] has been precisely tailored to serve a compelling governmental interest." *Id.* at 217.

Further, as the Fourth Circuit has articulated, when an alleged equal protection violation is based on a First Amendment claim, courts will "fuse[] the First Amendment into the Equal Protection Clause." *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 442 (4th Cir. 2013)

---

[8] *See North Dakota v. Heydinger*, No. 11-cv-3232 (SRN/SER), 2013 WL 593898, *6 (D. Minn. 2013) (denying intervention request from five nonprofit environmental policy organizations as their "presence . . . would simply serve to delay and overcomplicate th[e] matter" where their "intervention would change the complexion of th[e] case—transforming it from a constitutional question to an environmental policy issue"); *N.C. State Conference of NAACP v. Cooper*, 332 F.R.D. 161, 172 (M.D.N.C. 2019) (denying request for intervention by the President Pro Tempore of the North Carolina Senate and the Speaker of the North Carolina House of Representatives (both Republicans) regarding constitutionality of state voter identification law, which was defended by the state Attorney General (a Democrat) because the "[p]laintiffs will likely suffer prejudice in having to address dueling defendants, purporting to all represent the interest of the State").

(quoting *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 384-85 n. 4 (1992); citing *Barr v. Lafon*, 538 F.3d 554, 575-76 (6th Cir. 2008)). In so doing, courts "acknowledg[e] . . . that the First Amendment underlies [their] analysis." *R.A.V.*, 505 U.S. at 384-85 n. 4 (citing *Police Dep't. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)). Indeed, numerous equal protection violations stem from government action that tramples on First Amendment rights. *See e.g.*, *Niemotko v. Maryland*, 340 U.S. 268, 272 (1951) ("The right to equal protection of the laws, in the exercise of those freedoms of speech and religion protected by the First and Fourteenth Amendments, has a firmer foundation than the whims of personal opinions of a local governing body."); *Mosley*, 408 U.S. at 95 (ordinance prohibiting only nonlabor picketing violated the Equal Protection Clause because "the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content"); *Carey v. Brown*, 447 U.S. 455, 459-60 (1980) (Illinois statute violated the Equal Protection Clause by making an impermissible distinction between peaceful labor picketing and other peaceful picketing). *See also Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 540 (1993) ("In determining if the object of a law is a neutral one under the Free Exercise Clause, we can also find guidance in our equal protection cases."); *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 714-15 (1994) ("[T]he Religion Clauses—the Free Exercise Clause, the Establishment Clause, the Religious Test Clause, Art. VI, cl. 3, and the Equal Protection Clause as applied to religion—all speak with one voice . . . . [a]bsent the most unusual circumstances, one's religion ought not affect one's legal rights or duties or benefits.") (O'Connor, J., concurring in part); *Henrico Pro. Firefighters Ass'n Loc. 1568 v. Bd. of Sup'rs of Henrico Cnty.*, 649 F.2d 237, 241 (4th Cir. 1981) ("Governmental action permitting some to speak, but denying the opportunity to others, raises an 'equal protection claim

15

(that) is closely intertwined with First Amendment interests.") (citation omitted) (quotation marks omitted).

Contrary to Defendant's claims that the United States' intervention in this case is unusual, the United States has previously intervened pursuant to Section 902 in cases involving religious discrimination in educational settings. *See, e.g.*, *Hearn v. Muskogee School Public District 020*, No. 6:03-cv-00598 (E.D. Okla. 2004) (involving school's discrimination against hijab-wearing Muslim student by enforcement of a dress code). In the *Hearn* case, the district court granted intervention under nearly identical circumstances. The Muskogee School District, through its dress code prohibiting head coverings, punished a Muslim student for wearing a hijab in school. When the student sued the school district for religious discrimination, the court granted the United States' motion to intervene and directed the clerk to file its Equal Protection claim. *See Hearn*, No. 6:03-cv-00598 (E.D. Okla. April 12, 2004) (ECF 42: Minute Order granting intervention).

Defendant has flatly mischaracterized the United States' Proposed Complaint, which contains a properly pleaded Equal Protection claim that is well-within the boundaries of the specific authorization granted by Section 902. The United States' Proposed Complaint asserts that the School Board violated the Equal Protection Clause in two ways: (1) by treating Christian Plaintiffs differently from their similarly situated Muslim classmate, K.C., without justification (Proposed Compl. ¶¶ 1, 10-11, 14-15, 20, 61, 63-64, 66-68, 85-86, 89-92, 128, 130-345, 137-38, 142-45) and (2) by impinging on Plaintiffs' right to freely exercise their Christian beliefs, which is a fundamental right. Proposed Compl. ¶¶ 14-15, 60, 88, 93-94. Both violations fall squarely within Equal Protection jurisprudence. Accordingly, allowing the United States to exercise its right to intervene in this case would not be "unusual" or "improper" as alleged in Defendant's Opposition.

16

      D.     <u>The United States should be granted leave to amend its Proposed Complaint to address any perceived deficiencies.</u>

As the Government's Motion to Intervene is still pending, the Court has not yet directed that its Proposed Complaint in Intervention be filed. This is principally why Defendant's motion to dismiss (styled as its Opposition to the Motion to Intervene) is improper. If the Government is granted leave to file its Intervention Complaint, Defendant will have an opportunity to challenge the allegations therein.

In any event, to the extent the Court is of the view that the allegations in the Government's Proposed Complaint in Intervention are lacking, the United States requests leave to file an amended Proposed Complaint. "[A] request to amend should only be denied if one of three facts is present: the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 379 (4th Cir.2012) (internal quotation marks omitted). Where, as here, "there is at present no basis in the record for th[e] [C]ourt to conclude that any efforts to amend would be futile or otherwise improper," a request for "[l]eave to amend a complaint should generally be freely granted. *U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 920 (4th Cir. 2013).

**CONCLUSION**

For the reasons set forth above, the Court should grant the United States' Motion to Intervene.

17

DATED: January 5, 2026

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

JESUS A. OSETE
Principal Deputy Assistant Attorney General

JEFFREY MORRISON
Acting Chief, Educational Opportunities Section

*/s/ Brian L. Repper*
JORDAN K. CARPENTER, *admitted pro hac vice*
Counsel
LADAWN BURNETT, *admitted pro hac vice*
BRIAN L. REPPER (VA No. 90254)
Trial Attorneys
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 514-3847
Email: brian.repper@usdoj.gov

ATTORNEYS FOR PLAINTIFF
UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2026, I filed the foregoing through the Court's CM/ECF electronic filing system, which will transmit a Notice of Electric Filing (NEF) to all counsel of record in the case.

/s/ *Brian L. Repper*
BRIAN L. REPPER
Attorney for the United States